**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **PATRICIA A. TRAVERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:12-cv-617** |
| | ) | |
| **CELLCO PARTNERSHIP d/b/a** | ) | **Judge Campbell** |
| **VERIZON WIRELESS,** | ) | **Magistrate Judge Bryant** |
| | ) | |
| **Defendant.** | ) | **Jury Demand** |

---

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT**

---

## I. Introduction

Despite numerous warnings and discipline, Plaintiff, a former Senior Continuity Marketing Operations Representative, repeatedly violated the Code of Business Conduct of Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless"). Almost one month after receiving a Final Written Warning for engaging in similar behavior, Plaintiff proactively waived a mail in rebate for a customer and failed to disclose her proactive waiver to the customer. Verizon Wireless believed Plaintiff's actions, for which she had been previously disciplined, had once again violated its Code of Business Conduct, and her employment was terminated.

Plaintiff, however, contends – based on nothing other than her own subjective belief – that Verizon Wireless discriminated and retaliated against her based on an alleged disability, interfered with and retaliated against her for exercising her rights under the Family and Medical Leave Act ("FMLA"), and retaliated against her based on an alleged refusal to remain silent

about or participate in illegal activity: her termination. Despite her litany of allegations, Plaintiff's claim focuses solely on the timing of and her disagreement with her discharge. Timing alone is insufficient for her claims to survive, and her disagreement with Verizon Wireless's legitimate, nondiscriminatory, non-retaliatory business decision is irrelevant. There are no genuine issues of material fact in dispute. Her claims are without merit, and Verizon Wireless is entitled to summary judgment.

## II. Factual Background[1]

### A. Plaintiff Becomes an Employee of Verizon Wireless and Learns about the Code of Business Conduct.

Plaintiff began working for Verizon Wireless as a Senior Continuity Marketing Operations Representative ("CMO Representative") in May 2008. Deposition of Patricia Travers ("Travers Dep.") (cited excerpts attached to the Motion as Exhibit A) at 26, 86. As a new hire, Plaintiff received a copy of Verizon Wireless's Code of Business Conduct ("COBC"), which set out, among other responsibilities, Verizon Wireless's policies regarding employee expectations, conduct, and behavior. Travers Dep. at 58-60, 62; Deposition of Phillip Trank ("Trank Dep.") (cited excerpts attached to the Motion as Exhibit B) at 19. Plaintiff concedes that she received training on the COBC during her new hire orientation. Travers Dep. at 63, 67, & Ex. 5.

Section 1.1 of the COBC contains Verizon Wireless's "Diversity and Equal Opportunity Commitment," which informs employees that Verizon Wireless provides equal opportunity to all persons without regard to any protected category under applicable law, including disability. Travers Dep. at 60-61 & Ex. 4. Section 1.2 explains Verizon Wireless's "zero tolerance" for discrimination or harassment. *Id.*

---

[1] Pursuant to L.R. 56.01(b), Verizon Wireless has submitted a separate Statement of Undisputed Material Facts in Support of Summary Judgment contemporaneously with its Motion. The facts contained in this section provide additional background.

## B.     Selling with Integrity Is a Key Component of Verizon Wireless's Reputation.

Verizon Wireless's credo and COBC explain to employees the importance of "selling [Verizon Wireless's services] with integrity."  Travers Dep. at Ex. 4.  Specifically, Section 4.1 emphasizes Verizon Wireless's reliance on employee accountability for trustworthiness because Verizon Wireless's customers "expect and deserve fair, honest and respectful service."  Travers Dep. at 63-64 & Ex. 4.  Pursuant to these customer's expectations, Verizon Wireless requires employees to "fully, clearly and directly inform [its] customers of the terms and conditions of [their] services" and to follow "strict rules regarding sales and promotions . . . *without exception*."  *Id.* at Ex. 4 (emphasis added).   The purpose behind these rules is to ensure customers receive consistent, full, and complete disclosure of the terms of their services, regardless of whether the failure to disclose information benefits the customer or not.  Trank Dep. at 127-28, 141, 143-44, 156-57, 173.

Plaintiff knew the COBC required employees to sell with integrity.  Travers Dep. at 165.  She also knew that if an employee did not sell with integrity, those actions would be a violation of the COBC.  *Id.*  Despite this, Plaintiff admits she did not inform every customer fully, clearly, and directly about the terms and conditions of Verizon Wireless's services.  *Id.* at 66.

## C.     Plaintiff Knew Verizon Wireless's FMLA and Leave Policies.

Verizon Wireless utilizes a third-party administrator to handle employee leave requests.  Deposition of LaJuana Miller ("Miller Dep.") (cited excerpts attached to the Motion as Exhibit C) at 43; Deposition of Minyarn Pratt ("Pratt Dep.") (cited excerpts attached to the Motion as Exhibit D) at 26, 31.  MetLife made all FMLA approval or denial decisions.  Pratt Dep. at 25-26, 28, 31; Travers Dep. at 93.  Verizon Wireless employees do not make FMLA leave decisions, and they do not receive specific information from MetLife on the reasons why an employee has made an FMLA leave request.  Miller Dep. at 43; Pratt Dep. at 25-26, 31.  The only information provided by

10807377.7

MetLife to Verizon Wireless is the date an employee has made a claim, whether that claim is approved or denied, and if approved, the dates for the approved leave. Miller Dep. at 43; Pratt Dep. at 26. MetLife does not provide any medical information to Verizon Wireless. Miller Dep. at 43, 138-39; Pratt Dep. at 26.

During new hire orientation, Plaintiff received training on Verizon Wireless's FMLA policy, leave guidelines, and workplace arrangements process. Travers Dep. at 82-84 & Ex. 8; Miller Dep. at 48-49, 51-52. Plaintiff knew that if she had questions about those benefits she could speak with her supervisors or search Verizon Wireless's online information. *Id.* at 84; Pratt Dep. at 8, 31-33.

### D. Plaintiff Was Required to Abide by the COBC in Her Interactions with Customers, which Included the Proper Use of Promotional Campaigns.

As a CMO Representative, Plaintiff's responsibilities were to handle customers' orders pursuant to current promotions and campaigns from the CMO Department. Trank Dep. at 170-71; Deposition of Denise Gowler ("Gowler Dep.") (cited excerpts attached to the Motion as Exhibit E) at 16-18, 42-43. Management kept employees apprised of the promotional campaigns and offers. Travers Dep. at 73.

As part of its promotional campaigns, Verizon Wireless offers "mail in rebates" to customers. Travers Dep. at 68-69. The "mail in" rebate requires the customer to fill out a form and return it to Verizon Wireless to receive a rebate or discount. *Id.* at 69-70. If a customer called a CMO Representative and mentioned that he/she had a rebate offer, the employee could offer it to the customer as an "instant" rebate. *Id.* at 66, 68; Gowler Dep. at 41. If made "instant," the customer did not need to return the rebate to receive it. Travers Dep. at 69; Gowler Dep. at 41-42.

CMO Representatives, however, were not allowed to proactively waive mail in rebates without the customer requesting it. Travers Dep. at 66-67, 72; Trank Dep. at 173; Gowler Dep. at 41, 106; Plaintiff's Responses to Verizon Wireless's First Requests for Admission ("Plaintiff's

4

Admissions") (cited excerpts attached to the Motion as Exhibit F) at Request No. 3. Plaintiff knew she was not to proactively waive mail in rebates. Travers Dep. at 72.

### E. Plaintiff's Disciplinary Actions Display a Complete Disregard for the COBC.

On June 4, 2009, Plaintiff received a Verbal Warning for "General Behavior/Conduct and Business Practices," pursuant to the COBC, for call avoidance. Travers Dep. at 148, 150, & Ex. 20. Plaintiff accumulated numerous messages in her voicemail and was spending an excessive amount of time checking them. *Id.* at Ex. 20. In doing so, Plaintiff was making herself unavailable to take incoming phone calls from customers. *Id.* Gowler addressed the issue and warned Plaintiff to consider the severity of the warning and to adhere to all company guidelines in the future. *Id.*

A few months later, on September 4, 2009, Plaintiff received a Written Warning, pursuant to the COBC, for "Integrity" based on her behavior during several telephone calls. Travers Dep. at 152-53 & Ex. 21. Verizon Wireless requires all terms and conditions of services to be disclosed to the customer without "hidden" charges – meaning, "[t]he customer must be clearly informed of all activation fees, access fees, airtime rates, contract terms, early cancellation fees, and any extra charges . . . ." *Id.* at Ex. 21. It is for these reasons that Verizon Wireless requires its employees to follow the rules regarding sales and promotions "without exception." *Id.* CMO Manager Denise Gowler ("Gowler") and Human Resources Manager LaJuana Miller ("Miller") did not believe Plaintiff did so after they reviewed calls where she was observed doing the following:

- On July 8, 2009, Plaintiff proactively offered to waive a mail in rebate without the customer requesting it. *Id.* at Ex. 21; Trank Dep. at 125. Her supervisor warned her not to do it, but she did so again on two other calls. Travers Dep. at Ex. 21; Trank Dep. at 125.

- On August 28, 2009, Plaintiff was observed telling a customer a phone was "free" when the phone actually required a rebate. *Id.* Plaintiff did not disclose to the customer that the customer had to return a mail in rebate to get a discount. *Id.*

5

CMO Supervisor Phillip Trank ("Trank") and another manager met with Plaintiff and reviewed the calls with her. Trank Dep. at 7, 130-31. Plaintiff was warned that she needed to refrain from behavior that violated the COBC and that failure to adhere to policy may lead to further corrective action, up to and including termination. Travers Dep. at Ex. 21; Trank Dep. at 131.

Plaintiff received her 2009 Performance Appraisal on February 12, 2010, in which Trank reminded Plaintiff of her prior COBC violations and encouraged her to focus on "making sure all guidelines [were] followed in regards to selling with integrity." Travers Dep. at Ex. 17. Less than one month after this reminder, Plaintiff again proactively waived a mail in rebate. *Id.* at Ex. 22. On March 19, 2010, Plaintiff received her Final Written Warning for "General Behavior/Conduct and Business Practices." Travers Dep. at Ex. 22; Trank Dep. at 131-32; Gowler Dep. at 82. Verizon Wireless requires its employees to "act with fundamental honesty and integrity in all Company dealings and comply with all Company policies." *Id.* Gowler and Miller did not believe Plaintiff did so after they reviewed calls where she was observed doing the following:

- On March 9, 2010, a customer was adding a line of service that required a credit card for the cost of the phone minus promotional discounts. *Id.*; Trank Dep. at 133-35; Gowler Dep. at 79-80. When the customer told Plaintiff he would have to call back with the number, Plaintiff proactively waived the mail in rebate, thus eliminating the need for the customer to call back. Trank Dep. at 134; Gowler Dep. at 79-80. Plaintiff did not seek supervisor approval for her actions. Trank Dep. at 135 & Ex. 10; Gowler Dep. at 79-80.

- Approximately one week later, on March 17, 2010, Plaintiff improperly used a "Free Month" promotional offer to "assist" a customer with equipment charges. Travers Dep. at Ex. 22; Trank Dep. at 146. The "Free Month" promotional offer was only to be used as a way to assist with the close of a sale, not as a bonus after the customer had already agreed to the sale. Travers Dep. at Ex. 22; Trank Dep. at 146-48; Gowler Dep. at 87; Plaintiff's Admissions at Request No. 4.

Gowler met with Plaintiff and reviewed the calls in question with her. Gowler Dep. at 84. She reminded Plaintiff to be clear in her sale of all products and services, including mail in rebate requirements. Travers Dep. at Ex. 22. She also informed Plaintiff that failure to adhere to the

6

COBC could result in further disciplinary action, up to and including termination of employment. *Id.* Plaintiff has no evidence to show she did not proactively offer the rebates as stated. *Id.* at 180.

### F. Plaintiff Requests and Receives FMLA Leave.

In November 2009, Plaintiff requested and received FMLA leave from MetLife for migraines. Travers Dep. at 85, 99-100, & Ex. 10. She did inform her supervisor, Trank, that she suffered from migraines, but she cannot recall whether she told him prior to requesting FMLA leave. Travers Dep. at 33, 154. Trank, like Plaintiff, also suffered from migraines and had taken FMLA leave for them. Trank Dep. at 45-46, 48-49. Plaintiff took intermittent FMLA leave in November 2009, January 2010, and February 2010 for her migraines. Miller Dep. at 71 & Ex. 1 (showing Plaintiff's attendance and leave).

On March 24, 2010, five days after receiving her Final Written Warning, Plaintiff requested and received FMLA leave from MetLife for a "heart condition." Travers Dep. at 105 & Ex. 12. Plaintiff informed "[her] management" – Trank, Gowler, and Pratt – about her heart condition, but she cannot identify when she told them. Travers Dep. at 24-30, 33. Neither Trank, Gowler, nor Pratt recall knowing of Plaintiff's heart condition. Trank Dep. at 49; Gowler Dep. at 54-55; Pratt Dep. at 65; Miller Dep. at 56. Plaintiff worked in March and April 2010 but also took leave in April, May, and June 2010. Miller Dep. at Ex. 1.

### G. Plaintiff Again Proactively Offers to Waive a Mail In Rebate and Is Discharged for Her Repeated Behavior.

On April 21, 2010, Trank received a customer complaint about rude behavior. Trank Dep. at 176-77 & Ex. 11. He reviewed the customer's account, saw Plaintiff was the last Verizon Wireless employee to handle it, and listened to the call. *Id.* Trank did not hear any rude behavior from Plaintiff during the call. *Id.* Instead, he heard Plaintiff yet again proactively waive a mail in

7

rebate for a customer. *Id.* at 155-56, 182, & Ex. 11. Trank informed Gowler, who listened to it and determined Plaintiff's actions violated the COBC. *Id.* at Ex. 11; Gowler Dep. at 63-64, 67, 109-10.

Because Plaintiff was on a Final Written Warning for the same behavior, Gowler recommended Plaintiff's termination. Gowler Dep. at 63-64, 76, 91-93, 108. Gowler informed Miller of her recommendation, who agreed after listening to the call in question. Miller Dep. at 10-11, 98, 101, 124-25, 139. Miller and Gowler then made the decision to discharge Plaintiff, and Miller requested a termination request form be completed. *Id.* at 119, 121, 125-27, & Ex. 13.

At the time Verizon Wireless reviewed the April 21, 2010 call, Plaintiff was on FMLA leave. Miller Dep. at Ex. 1; Gowler Dep. at 95-96. Verizon Wireless, therefore, could not speak to her about it until she returned from leave, which was on June 1, 2010. Gowler Dep. at 95-96, 112; Miller Dep. at 104-05 & Ex. 1. When Gowler and Trank met with Plaintiff on June 1, they reviewed the call with her, gave her an opportunity to explain her actions, and informed her that she was under termination review because she had already received several warnings for the same conduct. Gowler Dep. at 93, 95, & Ex. 3. The discharge decision was later approved by Miller's supervisor, Nyla Wright. Miller Dep. at 122-23.

Plaintiff went out on leave again June 2, 2010, and did not return to work until June 21, 2010. Miller Dep. at Ex. 1; Travers Dep. at 20. When Plaintiff returned from leave, she met with CMO Manager Kimberly Gibson-Harris ("Gibson-Harris") and Pratt. Travers Dep. at 20-21; Gowler Dep. at 90; Declaration of Kimberly Gibson-Harris ("Gibson-Harris Decl.") at ¶¶ 3-4. During the meeting, Gibson-Harris informed Plaintiff she was being discharged from Verizon Wireless for her repeated violations of the COBC. Travers Dep. at 21, 178; Gibson-Harris Decl. at ¶ 5.

8

### H.  Plaintiff's Files an EEOC Charge and Federal Lawsuit.

On September 23, 2011, Plaintiff filed a Charge of Discrimination with the EEOC alleging disability discrimination based on her termination.  Travers Dep. 189-91 & Ex. 24.  Her Charge contained no ADA accommodation or retaliation allegations, and she never requested a reasonable accommodation.  *Id.* at 202, 206-07, & Exs. 24, 26.

### III.  <u>Argument</u>

### A.  Plaintiff Was Not a Whistleblower.

Plaintiff alleges that Verizon Wireless violated the Tennessee Public Protection Act ("TPPA") and common law when it terminated her "in retaliation for exercising her rights under the FMLA and ADA."  Compl. at ¶ 38.  It is well-settled that Tennessee adheres to the doctrine of employment at will.  *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997).  Despite this well-established doctrine, Tennessee common law protects employees from being discharged for refusing to violate a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision.  *Mason v. Seaton*, 942 S.W.2d 470, 475 (Tenn. 1997).  This "public policy" exception "is a narrow one, and must be applied sparingly, so that the exception will not consume the rule."  *Dieters v. Home Depot U.S.A., Inc.*, 842 F. Supp. 1023, 1026 (M.D. Tenn. 1993); *see also Fleming v. Xerox Connect, Inc.*, 50 Fed. Appx. 211, 212 (6th Cir. 2002) ("Under the whistleblower variant of the public policy exception, employees are protected from discharge in retaliation for speaking out about illegal activities if such conduct furthers an important public policy interest embodied in the law.").

The TPPA provides that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities."  Tenn. Code Ann. § 50–1–304(a).  The purpose of the TPPA is to prevent an employee from having to choose

10807377.7

between reporting workplace illegalities to the proper authorities and remaining employed. *Henderson v. Corrections Corp. of Am.*, 918 F. Supp. 204, 210 (E.D. Tenn. 1996). Plaintiff was not required to make any such choice.

### 1. Plaintiff's Claims Are Time-Barred.

A retaliatory discharge claim under the TPPA is governed by a one-year statute of limitations and accrues when the Plaintiff "knew or should have known that an injury has been sustained." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 460 (6th Cir. 2001). A common law claim for retaliatory discharge is also governed by a one-year statute of limitations and accrues "when the employee is given unequivocal notice of the employer's termination decision." *Clark v. Hoops, LP*, 709 F. Supp. 2d 657, 669 (W.D. Tenn. 2010) (quoting *Fahrner v. SW Mfg.*, 48 S.W.3d 141, 144 (Tenn. 2001)) (internal quotation marks omitted). Plaintiff's time on both claims, therefore, began to run on the date of her discharge.

It is undisputed that Verizon Wireless discharged Plaintiff on June 21, 2010, and "any possible retaliatory discharge claim must have been based on upon that separation." *Bilyeu v. Metro. Gov't of Nashville & Davidson Cnty.*, 2010 WL 1408614, at *3 (M.D. Tenn. Mar. 10, 2010), *report & recommendation adopted by* 2010 WL 1408887, at *1 (M.D. Tenn. Apr. 1, 2010) (Campbell, J.). She, therefore, had one year from her discharge to pursue her retaliatory discharge claim but did not file the instant lawsuit until June 15, 2012 – almost two years *after* her discharge. *See*, Compl. at 1 (Docket Entry No. 1). Plaintiff's TPPA and common law claims are, accordingly, time-barred and should be dismissed.

### 2. Plaintiff Cannot Establish a Prima Facie Case under the TPPA or Common Law.

To establish a *prima facie* case under the TPPA, Plaintiff must show: (1) she was an employee of Verizon Wireless; (2) she refused to participate in, or to remain silent about, illegal

10

activities; (3) Verizon Wireless discharged her; and (4) there was an exclusive causal relationship between her refusal to participate in or remain silent about illegal activities and her termination. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 437 (Tenn. 2011).[2] Courts have recognized "that the plaintiff has indeed a *formidable burden* in establishing elements number two and four of the cause of action." *Darnall v. A+ Homecare, Inc.*, 1999 WL 346225, at *5 (Tenn. Ct. App. June 2, 1999) (internal citations omitted) (emphasis added).

Here, Plaintiff cannot overcome her "formidable burden." She admits she did not refuse to participate in or remain silent about illegal activities. Travers Dep. at 210. Instead, Plaintiff attempts to "double dip" her FMLA and ADA retaliation claims, but the Court "cannot assume that any violation of a statutory or regulatory scheme implicates fundamental public policy concerns." *Clark*, 709 F. Supp. 2d at 670. Her argument is meritless, and her claims must be dismissed.

> a.  *Plaintiff Did Not Refuse to Remain Silent about Illegal Activity, and She Cannot Establish Any Causal Relationship Between Her Alleged Protected Activity and Her Discharge.*

For a TPPA or common law retaliatory discharge claim to be actionable, Plaintiff must allege that she refused to participate in or remain silent about an illegal activity and that she was terminated for that refusal. *McAllister*, 2012 WL 3042972, at *3 (dismissing a TPPA claim where the plaintiff claimed the "illegal activity" was her termination in violation of the FMLA). Here, the only alleged illegal activity is Plaintiff's termination itself. Compl. at ¶ 38; Travers Dep. at 209. Her TPPA and common law claims, therefore, proceed as follows: (1) Plaintiff was

---

[2]  A claim for common law retaliatory discharge is coextensive with the TPPA and is analyzed under the same four elements, but the causation element differs. *Collins v. AmSouth Bank*, 241 S.W.3d 879, 884 (Tenn. Ct. App. 2007); *McAllister v. Quality Mobile X-Ray Servs., Inc.*, 2012 WL 3042972, at *5 (M.D. Tenn. Jul. 25, 2012) (quoting *Webb*, 346 S.W.3d at 437-38) (internal quotation marks omitted). Under the TPPA, Plaintiff must show "sole causation," and under the common law, she must show that her exercise of a protected right was a substantial factor in the decision to discharge her. *Collins*, 241 S.W.3d at 884.

11

an employee of Verizon Wireless; (2) she refused to participate in, or to remain silent about, her own termination in violation of the ADA and FMLA; (3) Verizon Wireless subsequently discharged her; and (4) it did so because she refused to participate in or remain silent about her own termination in violation of the ADA and FMLA. This theory of liability defies logic.

By its express terms, the TPPA protects whistleblowers – "those individuals who refuse to participate in or remain silent about an illegal activity." *McAllister*, 2012 WL 3042972, at *3. Moreover, both the statute and the common law require the whistleblowing activity to "serve[] a public purpose" and not be "merely private or proprietary." *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 537-38 & n.4 (Tenn. 2002). Plaintiff has alleged no whistleblowing activity at all. Travers Dep. at 210. Instead, Plaintiff argues that the factual allegations underlying her claims for FMLA retaliation and employment discrimination under the ADA also support a TPPA and common law cause of action. Compl. at ¶ 38. Her argument necessarily fails because the TPPA and common law require actual whistleblowing activity. *Guy*, 79 S.W.3d at 537-38; *Emerson v. Oak Ridge Research, Inc.*, 187 S.W.3d 364, 371 (Tenn. Ct. App. 2005) (requiring reporting of a "serious infraction" to either company management or law enforcement officials).

<blockquote>b.    *The FMLA Preempts Plaintiff's Retaliatory Discharge Claim.*</blockquote>

Plaintiff's retaliatory discharge claim further fails to the extent it is based on an alleged violation of the FMLA. Compl. at ¶ 38. The "central purpose" of the common law retaliatory discharge action is "to prevent employers from circumventing their statutory obligations." *Guy*, 79 S.W.3d at 538 (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 899 (Tenn. 1992)) (internal quotation marks omitted). In the instant case, there is no threat that Verizon Wireless will "circumvent[] [its] statutory obligations" because the FMLA "create[d] a cause of action for retaliation and provide[d] a detailed remedial scheme to obtain redress for statutory violations."

*McAllister*, 2012 WL 3049272, at *5. Courts have held that "[g]iven the existence of this comprehensive remedial scheme to redress violations of statutory rights, there is no need to extend the common law retaliatory discharge tort to overlap with the FMLA." *Id.*; *see also Underland-Williams v. GutterGuard, LLC*, 2011 WL 6148672, at *4 (M.D. Tenn. Dec. 9, 2011) ("This Circuit has concluded that the FMLA preempts common law claims for retaliatory discharge."). Moreover, to extend the tort as Plaintiff requests "would frustrate the remedial scheme Congress specifically created in the FMLA" because Plaintiff seeks, among other things, emotional distress and punitive damages – "remedies that are unavailable under the FMLA." *McAllister*, 2012 WL 3049272, at *6. Her TPPA claims must, accordingly, be dismissed.

**B.    Plaintiff Received All FMLA Leave to Which She Was Entitled, and She Cannot Show Her FMLA Leave Was the Reason For Her Discharge.**

Plaintiff also asserts claims of FMLA interference and retaliation stemming from her discharge, but both of her theories are unsupported by the evidence. Plaintiff's interference claim must be dismissed as a matter of law because she requested and received FMLA leave, and she took all leave to which she was entitled. Her retaliation claim likewise fails because she cannot show her discharge was in retaliation for taking FMLA leave.

**1.    *Verizon Wireless Did Not Interfere with Plaintiff's FMLA Rights.***

Plaintiff's FMLA interference claim must be dismissed because she requested and received all leave to which she was entitled. A violation of the FMLA exists "if an employer interferes with the FMLA-created right to medical leave or to reinstatement after qualified leave." *Ritenour v. Tenn. Dep't of Human Servs.*, 497 Fed. Appx. 521, 530 (6th Cir. 2012) (affirming the dismissal of the plaintiff's FMLA interference claim because it was based solely on temporal proximity). To establish a *prima facie* case of FMLA interference, Plaintiff must establish: (1) she was an eligible employee; (2) Verizon Wireless was a covered employer; (3)

Case 3:12-cv-00617   Document 21   Filed 05/20/13   Page 13 of 28 PageID #: 471

she was entitled to leave under the FMLA; (4) she gave notice of her intent to take leave; and (5) Verizon Wireless denied her FMLA benefits or interfered with FMLA rights to which she was entitled. *Jaszczyszyn v. Advantage Health Physician Network*, 2012 WL 5416616, at *6 (6th Cir. Nov. 7, 2012) (affirming summary judgment on the plaintiff's FMLA interference claim where she was given all the leave to which she was entitled) (quoting *Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F.3d 476, 482 (6th Cir. 2010)) (internal quotation marks omitted). The "mere occurrence of interference with an employee's FMLA rights is not a *per se* FMLA violation." *Ritenour*, 497 Fed. Appx. at 530 (quoting *Verkade v. U.S. Postal Serv.*, 378 Fed. Appx. 567, 575 (6th Cir. 2010)) (internal quotation marks omitted); *see also Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507-08 (6th Cir. 2006) ("[I]nterference with an employee's FMLA right does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct.").

Plaintiff fails at the last prong of the *prima facie* case because she offers no evidence that she was denied FMLA benefits. In fact, Plaintiff admits she received all FMLA leave which she requested. Travers Dep. at 204; Plaintiff's Admissions at Request No. 10. Those admissions alone gut her interference claim.

### 2. Verizon Wireless Did Not Retaliate Against Plaintiff for Taking FMLA Leave.

Plaintiff's retaliation claim fares no better. To establish a *prima facie* case of FMLA retaliation, Plaintiff must establish: (1) she was engaged in an activity protected by the FMLA; (2) Verizon Wireless knew she was exercising her rights under the FMLA; (3) she suffered an adverse employment action; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Jaszczyszyn*, 2012 WL 5416616, at *6 (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)).

Again, Plaintiff fails at the last prong of the *prima facie* case. She cannot show a causal connection between her FMLA leave and her discharge. The only evidence she offers to support her claim is the timing of her termination, which occurred after she returned from her most recent FMLA leave. Travers Dep. at 198-99, 209. What Plaintiff ignores, however, is that she received her first Written Warning for violating the COBC in September 2009, which was two months *before* she first took FMLA leave for her own serious health condition. Travers Dep. at 152-53 & Exs. 10, 21; *see also Hornberger v. Tenn.*, 2013 WL 652526, at *4 (M.D. Tenn. Feb. 21, 2013) (dismissing the plaintiff's FMLA retaliation claim where he was discharged for poor work performance, which was "well documented and existed long before Plaintiff every took any FMLA leave"). Plaintiff then received a Final Written Warning in March 2010 for the same type of behavior for which she had been disciplined before ever requesting FMLA leave. Travers Dep. at Ex. 22. Despite these warnings, Plaintiff engaged in the same behavior – proactively waiving a mail in rebate – before taking additional leave in April and May, 2010. Trank Dep. at 155-56, 182, & Ex. 1; Gowler Dep. at 63-64, 67, 109-10.

By the time the discharge decision was approved, Plaintiff was on leave, and Verizon Wireless was unable to inform her of the decision until she returned on June 21, 2010. Gowler Dep. at 95-96, 112; Miller Dep. at Ex. 1. The timing of her discharge, therefore, was based on necessity: Plaintiff went on leave after learning she was on termination review and could not be informed of the decision until she returned. Miller Dep. at 104-05. Moreover, Miller and Gowler testified that Plaintiff's FMLA leave played no part in the discharge decision. Miller Dep. at 112-13; Gowler Dep. at 91-92. Plaintiff, accordingly, cannot show any causal connection between her discharge and her FMLA leave. *See Ritenour*, 497 Fed. Appx. at 531 (finding that the employer provided a legitimate reason for the plaintiff's discharge where the

decisionmakers testified they made the recommendation for termination based on the plaintiff's failure to follow policy and nothing else).

### 3. *Plaintiff Cannot Show the Reason for Her Discharge Was Pretextual.*

Even if Plaintiff could make one or both *prima facie* showings for her interference and retaliation claims, she cannot show that Verizon Wireless's stated reason for her termination – her repeated violations of the COBC – was pretextual. *See Donald*, 667 F.3d at 762 (applying the burden-shifting framework to both FMLA interference and retaliation claims). When an employer "proves a legitimate reason unrelated to the exercise of FMLA rights for terminating the employee," such as Verizon Wireless has done here, the plaintiff "must rebut the employer's reason by showing" that the proffered reason: (1) had no basis in fact; (2) did not motivate the termination; or (3) was insufficient to warrant termination. *Ritenour*, 497 Fed. Appx. at 530 (quoting *Donald*, 667 F.3d at 762) (internal quotation marks omitted). A reason cannot "be a pretext for discrimination unless it is shown both that the reason was false, and that the discrimination was the real reason." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). Plaintiff always bears the burden of producing sufficient evidence of pretext. *Id.* Here, her attempt to rebut Verizon Wireless's stated reason for her discharge is based only on three arguments: (1) the timing of her discharge; (2) her disagreement with Verizon Wireless's decision; and (3) statements allegedly made by Gibson Harris during her termination meeting. Neither argument is compelling.

First, temporal proximity alone "cannot be the sole basis for finding pretext." *Donald*, 667 F.3d at 763; *see also Seeger*, 681 F.3d at 285. The Sixth Circuit's analysis in *Donald v. Sybra, Inc.* is instructive here. After the plaintiff in *Donald* returned from FMLA leave in 2007, the district partner allegedly told her, "you should be disabled." 667 F.3d at 759.

Approximately five months later, the plaintiff's store manager discovered irregularities in how the plaintiff was charging customers and found her cash register drawer short several dollars. *Id.* The store manager informed his supervisors, including the district partner, of his findings, investigated his suspicions, and concluded that the plaintiff improperly discounted orders and kept the difference. *Id.* Before the store manager could inform the plaintiff of his findings, she called out of work for medical reasons. *Id.* at 760. When she returned to work, she was confronted about the shortages and the investigation into her orders. *Id.* The plaintiff denied all allegations of theft but was still terminated. *Id.* The plaintiff's subsequent lawsuit focused on the timing of her discharge: the original shortage was discovered on February 14 but not mentioned to her until February 29, the day she returned from her medical absence. *Id.* at 763. The Sixth Circuit affirmed dismissal of her FMLA interference and retaliation claims because the delay was caused not by any unlawful motive but because it was the plaintiff's first day back at work after the investigation into the shortages concluded. *Id.*

Here, Plaintiff attempts to make the same failed argument. The COBC violation that led to her termination was discovered on April 21, 2010, but Plaintiff was not informed of the decision to discharge her until June 21, 2010, which was the day she returned from her most recent leave. Plaintiff overlooks that the call was discussed with her on June 1, 2010, the first day Plaintiff returned to work after Verizon Wireless learned of the April 21 call. The decision to discharge her was approved while Plaintiff was out on leave but could not be instituted until she returned to work. Plaintiff, therefore, cannot show the delay in informing her of the discharge decision was caused by any unlawful motive.

Second, the *Donald* court found no substance to the plaintiff's denials of theft. *Donald*, 667 F.3d at 763. Like Plaintiff, the plaintiff in *Donald* "vociferously denie[d] the allegation[s]"

against her. *Id.* The court found her argument unavailing and irrelevant because the Sixth Circuit has adopted the "honest belief rule," finding "it is not in the interests of justice for [the Court] to wade into an employer's decisionmaking process." *Id.* (internal citations omitted). Here, Plaintiff claims that she did not proactively waive mail in rebates and that she did not engage in behavior that violated the COBC. Travers Dep. at 180. Her argument is an attack on the credibility of Verizon Wireless's reason, thus bringing the honest belief rule into play. She has offered, however, no proof other than her own statements she did not do what Verizon Wireless stated she did. *Id.* Verizon Wireless, on the other hand, offers the testimony of Trank, Gowler, and Miller, all of whom listened to the calls for which Plaintiff was disciplined at the time of her discipline and determined, based on their review, that she engaged in behavior that violated Verizon Wireless's COBC. Trank Dep. at 155-56, 182; Gowler Dep. at 63-64, 67, 109-10; Miller Dep. at 101. The law does not require that the employer arrive at its decision in an "optimal matter but that it reasonably relied on the particularized facts that were before it *at the time the decision was made*." *Donald*, 667 F.3d at 763 (internal quotation marks and citations omitted) (emphasis added). Plaintiff's denials of engaging in the conduct for which she was disciplined and discharged is irrelevant, and her "bare assertion that [Verizon Wireless's] proffered reason has no basis in fact is insufficient to call [its] honest belief into question, and fails to create a genuine issue of material fact." *Joostberns v. United Parcel Serv.*, 166 Fed. Appx. 783, 791 (6th Cir. 2006); *see also Seeger*, 681 F.3d at 709 ("As long as the employer held an honest belief in its proffered reason, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless.").

Finally, Plaintiff attempts to save her claim by alleging that Gibson-Harris told her she was being discharged because she had missed too much work. Travers Dep. at 20-21. The only

evidence of this alleged statement is from Plaintiff. Her COBC disciplinary actions focus solely on her behavior during calls and make no mention of her absences. Travers Dep. at Exs. 21, 22. The termination request form lists the reason for Plaintiff's termination as "Integrity." Miller Dep. at Ex. 13. Moreover, Gibson-Harris, who was not a decisionmaker, denies making the statement Plaintiff attributes to her. Gibson-Harris Decl. at ¶ 6. In fact, Gibson Harris stated that the only information she had was the termination request form. *Id.* at ¶ 5. Even if Gibson Harris made the statement, it does not prove pretext because she did not make the decision to discharge Plaintiff. *See Jaszczyszyn*, 2012 WL 5416616, at *8 (affirming dismissal of the plaintiff's FMLA retaliation claim because the only evidence she alleged showed pretext was that the termination report listed "absenteeism" instead of "fraud" as the reason for her discharge where the individual who filled out the report did not make the termination decision); *Geiger v. Tower Auto.*, 579 F.3d 614, 620-21 (6th Cir. 2009) ("Any discriminatory statements must come from decisionmakers to constitute direct evidence of discrimination."); *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) ("Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus.") (alterations in original).

As is well-settled, request for FMLA leave "does not shelter [the employee] from the obligation, which is the same as that of any other [Verizon Wireless] employee, to comply with [Verizon Wireless's] employment policies." *Ritenour*, 497 Fed. Appx. at 531 (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 878 (10th Cir. 2004)). Verizon Wireless believed Plaintiff violated the COBC, and it discharged her for her actions. Her willful disregard of the fact she was disciplined both before and after requesting FMLA leave is of no import. Her FMLA interference and retaliation claims should be dismissed as a matter of law.

**C.     Verizon Wireless Did Not Violate the ADA.**

In addition to her FMLA, TPPA, and common law claims, Plaintiff alleges she was a qualified individual with a disability and/or perceived as an individual with a disability. Compl. at ¶ 30. To make out a *prima facie* case of disability discrimination, Plaintiff must show: (1) she is disabled; (2) she was otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment action; (4) Verizon Wireless knew or had reason to know of her alleged disability; and (5) the position remained open while Verizon Wireless sought other applicants or the disabled individual was replaced. *Medlin v. Honeywell Analytics, Inc.*, 2012 WL 511997, at *4 (M.D. Tenn. Feb. 15, 2012) (citing *Whitfield v. Tenn.*, 639 F.3d 253, 258-59) (6th Cir. 2011)) (Campbell, J.) (dismissing the plaintiff's ADA claims where he could not show the reason for his dismissal was pretext). If Plaintiff can make out a *prima facie* case, the familiar *McDonnell-Douglas* burden shifting framework is triggered. *Whitfield*, 639 F.3d at 259. Plaintiff's burden to show Verizon Wireless's proffered reason is pretext is particularly high in the context of the ADA because a plaintiff alleging disability discrimination must offer evidence to show that she was discharged "because of" her disability. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315 (6th Cir. 2012). In other words, the relevant inquiry is: "whether the employer would have taken the same adverse employment action even if the plaintiff were not disabled." *Saley v. Caney Fork, LLC*, 886 F. Supp. 2d 837, 853 (M.D. Tenn. 2012). In the present case, the undisputable answer is, yes.

### 1.     Verizon Wireless Did Not Perceive Plaintiff as Disabled.

Plaintiff argues that Verizon Wireless "perceived [her] as an individual with a disability," but she fails to alleged in what major life activity Verizon Wireless believed she was substantially limited. Compl. at ¶ 30. The ADA's "regarded as" provision is designed to "stamp

out the stereotyping of and discrimination against persons with disabilities in all their forms." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001). An employer regards an employee as disability "if [it] ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties." *Id.*

Plaintiff asserts that her supervisors and managers were aware of her medical conditions. Travers Dep. at 24-30, 33, 154. That her supervisors and managers knew or recognized that Plaintiff had medical problems does not satisfy the "regarded as" prong. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1106 (6th Cir. 2008). Rather, Plaintiff has to show either (1) that Verizon Wireless mistakenly believed she had a limiting impairment when in fact she did not (an argument Plaintiff does not make) or (2) that Verizon Wireless believed she had a limiting impairment when that impairment, in fact, was not so limiting (she does not argue that Verizon Wireless believed she was incapable of working in the call center due to her impairment). *Id.* The record contains no evidence Verizon Wireless ascribed to Plaintiff an inability to perform the functions of her job. In fact, Plaintiff admits she does not know whether Verizon Wireless regarded her as disabled. Travers Dep. at 196. Therefore, she has failed to show she was "regarded as" disabled.

### 2. *Plaintiff Cannot Establish Pretext.*

Assuming *arguendo*, and only for the purposes of summary judgment, that Plaintiff could make out a *prima facie* case of discrimination,[3] Verizon Wireless has articulated a legitimate, non-discriminatory reason for its decision to terminate her employment – Gowler and Miller's

---

[3] Verizon Wireless does not concede that Plaintiff will be able to establish a *prima facie* case at trial. Specifically, Verizon Wireless does not concede that Plaintiff is "disabled" under the ADAAA. However, it assumes, *arguendo*, that Plaintiff will be able to create a genuine issue of fact as to the elements of her *prima facie* case and, therefore, does not dispute the *prima facie* case for the purposes of summary judgment.

10807377.7

honest belief that Plaintiff repeatedly violated the COBC – and thereby satisfied its obligation under the second prong of the burden shifting analysis. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) (explaining that "the employer's burden is satisfied if he simply explains what he has done or produces evidence of legitimate nondiscriminatory reasons"); *see also* Travers Dep. at Exs. 21, 22; Miller Dep. at Ex. 13.

Plaintiff believes only that she was discharged for "missing work," not for migraines or a heart condition. Travers Dep. at 197. Though Plaintiff disputes all of her COBC disciplinary actions, saying only that she did not engage in the conduct, she offers no evidence supporting her disagreement and admits she cannot dispute what others perceived her actions to be on those calls. *Id.* at 158, 180. Moreover, Plaintiff was disciplined before and after requesting FMLA leave.

At its core, Plaintiff's case is about her disagreement with Verizon Wireless's business decisions. A debate over the propriety of Plaintiff's discipline is insufficient, however, to avoid summary judgment. Time and time again, the Sixth Circuit has stated that it is not the judiciary's role to second guess an employer's business decisions. *See, e.g.*, *Johnson v. Metro. Gov't of Nashville & Davidson Cnty.*, 2012 WL 4945607, at *15 (6th Cir. Oct. 18, 2012) (It is not proper for the court to "act as a super personnel department, overseeing and second guessing employers' business decisions.") (quoting *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006)); *Lee v. City of Columbus, Ohio*, 636 F.3d 245, 258 (6th Cir. 2011) ("[I]t is not within the province of the courts to . . . act as super personnel departments to second guess an employer's facially legitimate business decisions.") (internal citations omitted). The "key question" in assessing whether an employer holds an honest belief regarding an adverse action "is whether the employer made a reasonably informed and considered decision before taking the

complained-of action." *Medlin*, 2012 WL 511997, at *4. The evidence in the instant case supports this conclusion.

It is well established that "[a] case alleging discrimination 'is not a vehicle for litigating the accuracy of the employer's grounds for termination. Instead, the employee also must offer some evidence that not only were the employer's reasons false, but that [discrimination] was the real reason for the adverse action.'" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). Plaintiff has no such evidence, especially where she emphatically believes she was only discharged for missing work. Plaintiff cannot refute Verizon Wireless's legitimate, nondiscriminatory, non-retaliatory reason for terminating her employment. *See also* Section III.B.3, *supra*.

### 4. Plaintiff's Reasonable Accommodation and ADA Retaliation Claims Fail as a Matter of Law.

#### a. Plaintiff Did Not Administratively Exhaust Her Reasonable Accommodation or ADA Retaliation Claims.

Plaintiff includes, almost as an afterthought, a vague allegation that Verizon Wireless "made no effort to engage in an interactive process with [her] after being informed of her medical condition to determine whether she could perform the essential functions of her job" and that Verizon Wireless retaliated against her based on a disability. Compl. at ¶¶ 32, 37-38.[4] Plaintiff's attempts to impose a burden on Verizon Wireless not required by law aside, she did not administratively exhaust any reasonable accommodation or retaliation claim.

The exhaustion of administrative remedies is a condition precedent to an ADA claim. *Hill v. Nicholson*, 2010 WL 2640261, at *3 (6th Cir. Jun. 24, 2010). Though Plaintiff was not

---

[4] It is unclear from the Complaint and Plaintiff's allegations whether she intends to assert an ADA retaliation claim. In the Complaint, Plaintiff lists "Count III-Retaliation (Common Law Wrongful Termination/TPPA/ADA Retaliation)," but she does not include any specific ADA retaliation claims. Compl. at ¶¶ 37-38. To the extent Plaintiff intends to assert a separate ADA retaliation claim, that claim was not administratively exhausted. *See, infra,* Section III.C.4.

required to "attach the correct legal conclusions to the allegations in the charge, conform to legal technicalities, or use the exact wording which might be required in a judicial pleading," she must still "fil[e] charges on a particular discrimination claim before suing in federal court." *Jones v. Sumser Retirement Village*, 209 F.3d 851, 853 (6th Cir. 2000) (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)) (internal quotation marks omitted). To exhaust administrative remedies, the claim "must grow out of the investigation or the facts alleged in the charge must be sufficiently related to the claim such that those facts would prompt an investigation of the claim." *Id.* The "liberal construction" given charges filed by lay employees "pertains to legal and procedural technicalities. It cannot extend to include facts and claims not alleged." *Id.* (reversing jury verdict on an employee's reasonable accommodation claim because she failed to administratively exhaust it where she only alleged a termination claim in her EEOC charge).

In the instant case, Plaintiff's EEOC Charge only specifically alleged a termination claim, contained no reasonable accommodation or retaliation language, and listed the dates of discrimination as June 21, 2010, the date of her discharge. Travers Dep. at Ex. 24. At most, Plaintiff is alleging Verizon Wireless retaliated against her for taking FMLA leave, a claim that is not under the EEOC's jurisdiction. Further, Plaintiff admitted in her EEOC Intake Questionnaire that she never requested nor required a reasonable accommodation, and she failed to check the box for "retaliation" on her Questionnaire and in her Charge. *Id.* at 24, 26. A termination claim "differs in kind and date from an accommodation claim," *Jones*, 209 F.3d at 854, because the "failure to accommodate a disability is a discrete discriminatory act, which is subject to the reporting requirement." *Erbel v. Johanns*, 2007 WL 1387331, at *7 (E.D. Tenn. May 8, 2007). Plaintiff made no mention of any reasonable accommodation in her EEOC

Charge, and it is axiomatic to assume the EEOC would have investigated such a discrete allegation without knowing Plaintiff was asserting it.

                 *b.*      *Plaintiff Never Requested a Reasonable Accommodation.*

In order to succeed on an accommodation claim, Plaintiff must have actually requested an accommodation. *Cash v. Siegel-Robert, Inc.*, 2012 WL 3683466, at *12 (W.D. Tenn. Aug. 24, 2012) ("The EEOC has placed the initial burden of requesting an accommodation on the employee; if the employee fails to do so, he or she cannot satisfy this burden."); *Lockard v. Gen. Motors Corp.*, 52 Fed. Appx. 782, 788 (6th Cir. 2002) (affirming dismissal of the plaintiff's accommodation claim where the plaintiff failed to present evidence showing she requested an accommodation); *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046 (6th Cir. 1998) ("There is no question that the EEOC has placed the initial burden of requesting an accommodation on the employee."). If the employee establishes she requested an accommodation and the accommodation is possible, the burden shifts to the employer to prove that the accommodation is unreasonable and imposes an undue burden. *Id.* Here, the burden never shifts to Verizon Wireless because Plaintiff never requested an accommodation. Travers Dep. at 200, 202-03, & Ex. 26. She does not even allege what reasonable accommodation she would have required. Compl. at ¶ 32. Instead, she alleges that "it would have been nice to know what [her] options were," even though was able to perform the essential functions of her job. Travers Dep. at 200-04.

Failure to engage in the interactive process, in and of itself, is not a violation of the ADA. *See Wardia v. Justice & Pub. Safety Cabinet Dep't of Juvenile Justice*, 2013 WL 28094, at *4 n.1 (6th Cir. Jan. 3, 2013) ("[A]n interactive-process argument simply does not create an independent ground to support an ADA violation beyond standard reasonable-accommodation

analysis."). To survive summary judgment, Plaintiff must show that she requested an accommodation, that it was reasonable, and that she could have been accommodated but for Verizon Wireless's alleged failure to participate in the interactive process. *Denczak v. Ford Motor Co.*, 215 Fed. Appx. 442, 446 (6th Cir. 2007); *see Melange v. City of Center Line*, 482 Fed. Appx. 81, 86 (6th Cir. 2012) (finding that the employer must abide by the ADA's requirement to – "after an employee has requested a reasonable accommodation" – engage in an "interactive process"); *Erbel*, 2007 WL 1387331, at *7 ("An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied.").

Plaintiff has offered no evidence she informed anyone at Verizon Wireless that she required an accommodation or that she could not perform the essential functions of her position without an accommodation. Verizon Wireless "is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999) (affirming dismissal of the plaintiff's reasonable accommodation claim where the plaintiff offered no proof that he requested a reasonable accommodation while employed); *Gantt*, 143 F.3d at 1046-47 (same). Plaintiff simply never needed nor requested an accommodation, and she cannot impose liability on Verizon Wireless for "failing" to give her something she did not need.

## IV. Conclusion

The law is clear, and the material facts are undisputed. Plaintiff was discharged after repeatedly engaging in behavior – including proactively waiving mail in rebates – that Verizon Wireless believed violated its COBC. She has offered nothing more that her disagreement with Verizon Wireless's business decision, and this disagreement without more is insufficient to

survive summary judgment. Plaintiff cannot establish a *prima facie* case of statutory or common law retaliatory discharge because her claims are time-barred and she did not oppose any unlawful activity. She likewise cannot establish a *prima facie* case of FMLA interference or retaliation because she admits she requested and received all the FMLA leave to which she was entitled, and she has no proof that Verizon Wireless's discharge decision was based on her FMLA leave – especially where she was disciplined for COBC violations *prior to requesting any FMLA leave*. Finally, Plaintiff's ADA claims fail because she did not administratively exhaust her accommodation claim, and she cannot show her discharge was pretext for disability discrimination. Verizon Wireless is entitled to summary judgment on Plaintiff's claims, and the Complaint should be dismissed as a matter of law.

s/ Bahar Azhdari
Andrew S. Naylor (BPR No. 017128)
Bahar Azhdari (BPR No. 028045)
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
(615) 244-6380
(615) 244-6804 (facsimile)
andy.naylor@wallerlaw.com
bahar.azhdari@wallerlaw.com

*Attorneys for Defendant Cellco Partnership d/b/a Verizon Wireless*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via electronic mail upon:

Heather Moore Collins, Esq.
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215

*Attorney for Plaintiff*

on this the 20th day of May, 2013.

s/ Bahar Azhdari