IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| PATRICIA A. TRAVERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:12-cv-617 |
| | ) | |
| CELLCO PARTNERSHIP d/b/a | ) | Judge Campbell |
| VERIZON WIRELESS, | ) | Magistrate Judge Bryant |
| | ) | |
| Defendant. | ) | Jury Demand |

**DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

Realizing the weakness – and futility – of her statutory and common law whistleblower retaliatory discharge claims, Plaintiff has voluntarily dismissed them. She also appears to have dismissed her ADA retaliation and reasonable accommodation claims because she fails to address them in her response. Now having abandoned those claims, Plaintiff attempts to advance three remaining claims: (1) Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") interfered with her rights under the FMLA; (2) Verizon Wireless retaliated against her for exercising her rights under the FMLA; and (3) Verizon Wireless discriminated against her based on her alleged disability when it disciplined and later discharged her for violating its Code of Business Conduct ("COBC"). Verizon Wireless asks the Court to finish what Plaintiff started and dismiss her remaining claims.

The first half of Plaintiff's Response, made up of her introduction and "Factual Background," is filled with hyperbole, incorrect characterizations of testimony, and factual assertions with no basis in the record citations used to support them. Verizon Wireless has fully responded to Plaintiff's "facts" in response to her Additional Statement of Material Facts (Docket

1

Entry No. 33), and the "Factual Background" portion of her response offers nothing separate from that statement.

The remainder of Plaintiff's Response fails to do the one thing she must to overcome summary judgment: show Verizon Wireless's legitimate, nondiscriminatory, non-retaliatory reason for her discharge was pretext. She cannot when she *admits* she was not supposed to proactively waive mail-in rebates. Instead, Plaintiff attempts to confuse the issues by discussing Verizon Wireless's policies regarding FMLA and unscheduled absences and claiming, without support, that Verizon Wireless punishes employees for "using too much sick time." Plaintiff's Response at 4-5. Nothing in the record or her argument supports this assertion. Moreover, Plaintiff's leave played no role in either her disciplinary actions or her discharge. Gowler Dep. at 91-92; Miller Dep. at 112-13.[1] Indeed, none of Verizon Wireless's employees testified her leave was considered in the discharge decision and her disciplinary actions for her COBC violations do not discuss attendance. *See, e.g.*, Travers Dep. at Exs. 20-22. Further, Plaintiff's last corrective action for attendance occurred in April 2009 – over one year *before* her termination for repeated violations of the COBC. Pratt Dep. at Ex. 4. Her myopic focus on such an unrelated issue only highlights the strength of Verizon Wireless's stated basis for termination.[2] There are no genuine issues of material fact in dispute, and summary judgment is warranted for Verizon Wireless as a matter of law.

### I. Plaintiff Has Not Met Her Burden to Show Verizon Wireless Interfered with Her FMLA Rights or Retaliated Against Her for Exercising Them.

Even though Plaintiff admits she received all FMLA leave she requested (Travers Dep. at 204 & Ex. 27 at Admission No. 10), she claims Verizon Wireless interfered with her FMLA

---

[1] Cited deposition excerpts and exhibits are attached to Verizon Wireless's Notice of Filing.
[2] Plaintiff also attempts to distract with Court with arguments on Verizon Wireless's "progressive discipline" policy. Verizon Wireless's policies regarding discipline for attendance, performance, and conduct are all separate, and none are relevant or material to the issue of whether Verizon Wireless had an honest, good faith belief Plaintiff engaged in actions that violated its Code of Business Conduct. To the extent it is relevant, Verizon Wireless has responded to Plaintiff's claims in its response to her Additional Statement of Material Facts.

2

10936848.2
Case 3:12-cv-00617   Document 36   Filed 07/11/13   Page 2 of 11 PageID #: 976

rights because no one told her she could apply for FMLA after she informed her management, at some unspecified time, of her health conditions and she had to leave work in an ambulance in July 2009. Plaintiff's Response at 21-22. As a threshold, a "health condition" is not necessarily a "serious health condition" for purposes of the FMLA. *See* 29 C.F.R. § 825.113 (defining "serious health condition"). Simply having a health condition, therefore, does not mean an employee requires FMLA leave, the latter of which triggers an employer's FMLA obligations. *See* 29 C.F.R. § 825.300(b)(1) ("When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave . . . ."). Further, Verizon Wireless provided Plaintiff information on the FMLA and its attendance policies during new hire training, and contrary to Plaintiff's assertions, both Minyarn Pratt and Phillip Trank testified that they provide employees with MetLife's information should they call and request leave that could be FMLA-qualifying. Travers Dep. at 83-84; Miller Dep. at 48; Pratt Dep. at 37; Trank Dep. at 26.

Second, Plaintiff claims *for the first time* that she allegedly required an ambulance in July 2009. Plaintiff's Response at 21-22. Neither in her deposition nor during discovery did Plaintiff ever mention requiring an ambulance in July 2009, and she does not assert she told anyone at Verizon Wireless about it. *See* Docket Entry No. 31 at ¶ 4; *see also* Travers Dep. at 126-31 (all pages where Plaintiff mentioned needing an ambulance). Plaintiff has offered no evidence that anyone at Verizon Wireless knew she required leave in July 2009 or that she was penalized for her time away from the business. The "mere occurrence of interference with an employee's FMLA rights is not a *per se* FMLA violation." *Ritenour v. Tenn. Dep't of Human Servs.*, 497 Fed. Appx. 521, 530 (6th Cir. 2012) (internal quotation marks and citations omitted); *see also*

3

*Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507-08 (6th Cir. 2006) ("[I]nterference with an employee's FMLA right does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct."). Plaintiff has not met her burden to show Verizon Wireless interfered with her FMLA rights.

Neither has she shown a causal connection between her FMLA leave and her discharge. *Jaszczyszyn v. Advantage Health Physician Network*, 2012 WL 5416616, at *6 (6th Cir. Nov. 7, 2012) (listing elements of FMLA retaliation claim). Plaintiff predicates her retaliation claim on the following: she was "written up and on performance management for her sick leave," a manager allegedly told her she was out of the business too much, and her termination occurred after she returned from her most recent FMLA leave. Travers Dep. at 198-99, 209; Plaintiff's Response at 17-18. Even giving Plaintiff the benefit of the doubt and accepting this statement was made, it is of no consequence because Plaintiff's assertion ignores several key dispositive facts: (1) the last corrective action Plaintiff received for attendance was in April 2009 – *over one year before her termination* (Pratt Dep. at Ex. 4); (2) the manager who allegedly made the statement regarding her attendance *was not involved in the decision to discharge her* (Docket Entry No. 23 at ¶ 7); (3) she received her first Written Warning for violating the COBC in September 2009, which was two months *before* she first took FMLA leave for her own serious health condition (Travers Dep. at 152-53 & Exs. 10, 21); and (4) by the time Verizon Wireless made the decision to discharge Plaintiff, she was on leave, and the company simply had to wait until she returned before it could inform her of the decision (Gowler Dep. at 95-96, 112; Miller Dep. at Ex. 1.). She cannot show any causal connection between her discharge and her FMLA leave. *See Ritenour*, 497 Fed. Appx. at 531 (finding that the employer provided a legitimate reason for the plaintiff's discharge where the decisionmakers testified they made the

4

10936848.2

Case 3:12-cv-00617   Document 36   Filed 07/11/13   Page 4 of 11 PageID #: 978

recommendation for termination based on the plaintiff's failure to follow policy and nothing else).

## II. Plaintiff Has Not Shown She Was "Regarded As" Disabled.

Following months of discovery, over five depositions, and the instant motion before the Court, Plaintiff still fails to allege in what major life activity Verizon Wireless believed she was substantially limited – a requirement for an ADA "regarded as" claim. *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1106 (6th Cir. 2008); *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001) (An employer regards an employee as disabled "if [it] ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties.").

Plaintiff's argument rests on Verizon Wireless's use of a "Disability Dashboard" where it tracks individuals on FMLA and short term disability leave. Plaintiff's Response at 25. The Disability Dashboard tracks employees on approved leave, and it provides no health information whatsoever. Pratt Dep. at 26. In Plaintiff's mind, because Verizon Wireless tracked her leave in an application with the word "disability" in it, it must, therefore, regard her as disabled. *Id.* The logical leap required to reach such a conclusion is astounding, especially where Plaintiff concedes she does not know whether Verizon Wireless regarded her as disabled. Travers Dep. at 196. Plaintiff's attempts at wordsmithing aside, her argument does not satisfy the "regarded as" prong: she has not shown either (1) that Verizon Wireless mistakenly believed she had a limiting impairment when in fact she did not or (2) that Verizon Wireless believed she had a limiting impairment when that impairment, in fact, was not so limiting. *Talley*, 542 F.3d at 1106. Therefore, she fails to show she was "regarded as" disabled.

### III. Plaintiff Has Not Shown Pretext.

To survive summary judgment, Plaintiff must show that Verizon Wireless's stated reason for her termination – her repeated violations of the COBC – was pretextual. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) (explaining that "the employer's burden is satisfied if he simply explains what he has done or produces evidence of legitimate nondiscriminatory reasons"); *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012) (applying the burden-shifting framework to both FMLA interference and retaliation claims). She has not.

Instead, she has thrown out eight reasons why Verizon Wireless's stated reasons for her discharge are false to see if any stick. Plaintiff's Response at 18-19. None are persuasive, and most rely on inaccurate representations of cited testimony:

- First, Plaintiff appears to claim that she should not have been disciplined because one customer, regardless, would have received the rebate she proactively waived. Plaintiff's Response at 18. Her argument, however, overlooks Verizon Wireless's stated policy not to proactively waive mail in rebates, which is exactly what Plaintiff did. Gowler Dep. at 67-68 ("There was a mechanism if the customer made that request."). Simply because Plaintiff believes the "result" is the same regardless of the misconduct, she ignores that she nevertheless violated the rule against proactively waiving mail in rebates

- Second, Plaintiff claims Verizon Wireless violated its progressive discipline policy because it escalated "different" violations. Plaintiff's Response at 18. The testimony reflects, however, that Verizon Wireless is not required to begin discipline at a certain level for COBC violations. Pratt Dep. at 21; Miller Dep. at 109-11 & Ex. 13; Miller Decl. at ¶ 7.

- Third, Plaintiff claims Verizon Wireless did not produce a "single relevant policy or procedure," showing Plaintiff violated a policy. Plaintiff's Response at 18. Verizon Wireless, however, produced its entire COBC, which emphasizes selling "with integrity" and requires employees to "fully, clearly and directly inform [its] customers of the terms and conditions of [their] services" and to follow "strict rules regarding sales and promotions . . . *without exception*." Travers Dep. at Ex. 4, Section 4.1 (emphasis added). Further, Plaintiff admitted that the COBC required employees to sell with integrity (Travers Dep. at 165); that failing to sell with integrity would be a violation of the COBC (*id.*); that she did not inform every customer fully, clearly, and directly about the terms and conditions of Verizon Wireless's services (*id.* at 66); and that Verizon Wireless prohibited the proactive waiver of mail in rebates (*id.* at 66-67, 72). Moreover, Plaintiff's written warnings in September 2009 and March 2010 also warned her against engaging in similar conduct. Travers Dep. at Exs. 21-22.
- Fourth, Plaintiff believes her mere denial of engaging in the repeated conduct for which she was terminated proves pretext. Plaintiff's Response at 18. It does not. Plaintiff cites to a non-employment case for the assertion that her self-serving testimony is enough to create a genuine issue of fact to survive summary judgment. *Id.* To show pretext, however, Plaintiff's "bare assertion that [Verizon Wireless's] proffered reason has no basis in fact is insufficient to call [its] honest belief into question, and fails to create a genuine issue of material fact." *Joostberns v. United Parcel Serv.*, 166 Fed. Appx. 783, 791 (6th Cir. 2006); *see also Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) ("As long as the employer held an honest belief in its

- Fifth, Plaintiff alleges she had no incentive to engage in the conduct for which she was discharged. Plaintiff's Response at 19. Whether Plaintiff had an incentive to violation the COBC is of no consequence. Verizon Wireless discharged Plaintiff because it believed she violated its COBC. Miller Dep. at Ex. 13. Her attempt to argue her motivation, or lack thereof, is nothing more than an attempt to litigate the accuracy of Verizon Wireless's business decision, which does not prove pretext. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (It is well established that "[a] case alleging discrimination 'is not a vehicle for litigating the accuracy of the employer's grounds for termination. Instead, the employee also must offer some evidence that not only were the employer's reasons false, but that [discrimination] was the real reason for the adverse action.'").

- Sixth, Plaintiff claims Gowler admitted Plaintiff's March 9, 2010 actions were a "mistake." Plaintiff's Response at 19. This is not only an inaccurate characterization of Gowler's testimony, but it is a misstatement of what was said. Gowler actually testified that *Plaintiff claimed* she made a mistake when she marked a transaction as "online price match." Gowler Dep. at 85-86. Gowler never claimed she also believed Plaintiff committed an error. *Id.*

- Seventh, Plaintiff claims several of her "write ups" occurred while she was on FMLA and the discussion of her termination took place in the same meeting where management discussed her attendance issues. Plaintiff's Response at 19. Continuing the practice of misstating the record, the fact is that Gowler testified that she and

proffered reason, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless.").

8

other members of management held weekly "calibration" meetings to discuss all employees in the call center, including their attendance. Gowler Dep. at 121-22. It was during one of these weekly meetings where Plaintiff's termination was also discussed. *Id.* Regarding the "write ups," Verizon Wireless is unclear as to what Plaintiff is referring because there is no record citation to support the assertion. If Plaintiff is referencing her March 19, 2010, Final Written Warning, Plaintiff was at work during that time period. Miller Dep. at Ex. 1.

- Finally, Plaintiff claims Gibson Harris told her, "you've missed a lot of work and we need you here." Plaintiff's Response at 19. Gibson Harris, who was not involved in the decision to discharge Plaintiff, denied making the statement. Docket Entry No. 23 at ¶¶ 5-6. But even construing these competing facts in favor of Plaintiff, it is inconsequential since Gibson Harris was not involved in the decision to discharge Plaintiff, thereby undercutting her pretext argument. *See Jaszczyszyn*, 2012 WL 5416616, at *8; *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) ("Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus.") (alterations in original). Further, both decisionmakers testified that Plaintiff's attendance played no role in the termination decision. Gowler Dep. at 91-92; Miller Dep. at 112-13.

**IV. Conclusion**

Despite Plaintiff's protestations, the issue in this case is simple: Verizon Wireless believed Plaintiff was repeatedly engaging in behavior, including proactively waiving mail in rebates, that violated its COBC. Her arguments are only an attack on the credibility of Verizon

9

Wireless's reason, which squarely implicates the honest belief rule. It is not the judiciary's role, however, to second guess an employer's business decisions. *See, e.g.*, *Johnson v. Metro. Gov't of Nashville & Davidson Cnty.*, 2012 WL 4945607, at *15 (6th Cir. Oct. 18, 2012) (It is not proper for the court to "act as a super personnel department, overseeing and second guessing employers' business decisions.") (quoting *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006)); *Lee v. City of Columbus, Ohio*, 636 F.3d 245, 258 (6th Cir. 2011) ("[I]t is not within the province of the courts to . . . act as super personnel departments to second guess an employer's facially legitimate business decisions.") (internal citations omitted). Though Plaintiff disputes all of her COBC disciplinary actions, she offers no evidence supporting her disagreement and admits she cannot dispute what others perceived her actions to be on those calls. Travers Dep. at 158, 180. She fails to meet her burden to rebut Verizon Wireless's legitimate, nondiscriminatory, non-retaliatory reason for her termination, and Verizon Wireless is entitled to summary judgment on her claims.

s/ Bahar Azhdari
Andrew S. Naylor (BPR No. 017128)
Bahar Azhdari (BPR No. 028045)
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
(615) 244-6380
(615) 244-6804 (facsimile)
andy.naylor@wallerlaw.com
bahar.azhdari@wallerlaw.com

*Attorneys for Defendant Cellco Partnership d/b/a Verizon Wireless*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via electronic mail upon:

Heather Moore Collins, Esq.
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215

*Attorney for Plaintiff*

on this the 11th day of July, 2013.

s/ Bahar Azhdari