# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

**ORIGINAL**

PATRICIA A. TRAVERS,                )
                                    )
            Plaintiff,              )
                                    )
vs.                                 )    No. 3:12-cv-617
                                    )
CELLCO PARTNERSHIP D/B/A            )
VERIZON WIRELESS,                   )
                                    )
            Defendant.              )

------------------------------------------------------------

DEPOSITION OF

PATRICIA A. TRAVERS

Tuesday, April 2, 2013

------------------------------------------------------------

<u>APPEARANCES:</u>

For the Plaintiff:      Ms. Heather Moore Collins
                        Attorney at Law
                        Suite B-200
                        2002 Richard Jones Road
                        Nashville, TN  37215

For the Defendant:      Ms. Bahar Azhdari
                        Mr. Andrew S. Naylor
                        Waller Lansden Dortch & Davis
                        Suite 2700
                        511 Union Street
                        Nashville, TN  37219

Also Present:           Mr. Wayne Paschke
(Via telephone)

Reported By:
Susan D. Delac, LCR, RPR, CCR

**nashville**courtreporters

P.O. Box 290903 Nashville, TN 37229-0903
615-885-5798 / 800-552-3376 / www.ncrdepo.com

1  things to certain customers, and company policy was in

2  all the flyers.  I did not inform every customer

3  because it was not part of the script.

4  Q.      So you didn't inform every customer fully,

5  clearly, and directly about the terms and conditions of

6  the services?

7  A.      I went through the script with them.

8  Q.      So is the answer to my question no?

9  A.      No.

10  Q.      Under Section 4.1.3 in the middle of that

11  page, if you look, it says, "There are strict rules

12  regarding sales and promotions."  Were you informed of

13  the rules about sales and promotions?

14  A.      We were told that if a customer called in

15  and they mentioned that they had a rebate offer, then

16  we could offer it.  If it was not mentioned during that

17  call, that we were not to offer it, and we abided by

18  that.

19          Every order that was taken had to be

20  approved.  If there was one cent that was taken off of

21  the order, the supervisor had to approve the order

22  before the device was purchased.  And so it went

23  through us.  And, in other words, if it went straight

24  through and there was no discounts applied, the order

25  was placed.  If there was a discount of any kind the

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 2 of 112 PageID #: 1012

1  supervisor had to approve the discount before it was
2  ordered.
3  Q.       So there were strict rules about the sales
4  and promotions and what you had to do with customers;
5  is that accurate?
6  A.       We were not to offer if it was not something
7  that they mentioned.
8  Q.       You also mentioned that you did receive
9  training on the code of conduct; is that right?
10 A.       Of all of the things that we went through,
11 it probably took up three minutes.
12 Q.       I'm going to hand you a document.  Does that
13 look familiar?
14 A.       Yes.  We all received one of these.
15 Q.       What does it say?
16 A.       "You have completed Code of Business Conduct
17 for Newly Hired Employees."
18          MS. AZHDARI:  Would you mark that as
19 Exhibit 5, please.
20          (Marked Exhibit 5.)
21 BY MS. AZHDARI:
22 Q.       Did you have to agree to abide by the terms
23 of the code of conduct for employment at Verizon?
24 A.       To the best of my knowledge, yes, we did.
25 Q.       Did you receive any training on the code of

Case 3:12-cv-00617  Document 38-1  Filed 07/11/13  Page 3 of 112 PageID #: 1013

1    supervisor taking the rebate offer off the top.  If he

2    approved it, it was then placed, if he did not, it

3    wouldn't be placed.

4    Q.        But if you're on the phone with a customer

5    and the customer doesn't mention the mail-in rebate or

6    mention anything about a rebate, would you be able to

7    mention, you know, well, we have a rebate for $50?

8    A.        No.  They, in training, they told us to get

9    the contract, to make sure the sale is made, to do what

10   we could, but not to mention -- if they didn't bring it

11   up, we weren't supposed to bring it up, and I did not.

12   Q.        Does that apply for any of the rebates?

13   A.        Any of the flyers, anything that they were

14   offering, they had to mention it before it could be

15   given to them.

16   Q.        Did you ever receive any written copies of

17   these policies or eligibility requirements or anything

18   like that, consumer save offers, anything?

19   A.        I'm not following.

20   Q.        Sure.  Did you receive any written policies

21   from Verizon about kind of what the new, I guess,

22   rebate offers were for a certain time period?

23   A.        We did not view the rebate offers; they were

24   sent from headquarters.  I never saw what the rebates

25   stated.

Case 3:12-cv-00617  Document 38-1  Filed 07/11/13  Page 4 of 112 PageID #: 1014

1  doctor actually told me about the intermittent time

2  that I could request.  And EEOC, when I started going

3  through that, I was not aware of the accommodations

4  that could be made.

5  Q.        I understand, and we'll get to that.  But is

6  it accurate that the policy states Verizon will make

7  reasonable accommodations?

8  A.        According to what I'm looking at, that is

9  what's stated here.

10            MS. AZHDARI:  Can we make that

11  Exhibit 7, please.

12            (Marked Exhibit 7.)

13            MS. COLLINS:  And I'd just like to note

14  for the record that this says September 2011, so the

15  policy appears to be after her termination.

16  BY MS. AZHDARI:

17  Q.        Now, Ms. Travers, you mentioned that you

18  would have to put a customer on hold sometimes to go

19  find a supervisor if you had a question; is that

20  correct?

21  A.        There were moments of hold time.  And we

22  were permitted to have so much hold time.  We weren't

23  to leave them on hold indefinitely.  There again, we

24  would have QA's.  If they noticed on our QA, which was

25  quality, that we had placed a customer on hold over a

Case 3:12-cv-00617  Document 38-1  Filed 07/11/13  Page 5 of 112 PageID #: 1015

1  A.         I remember -- yes, the short-term and FMLA

2  were kind of comprised together, and I didn't have a

3  full knowledge of how it actually worked.

4  Q.         But you did know that Verizon had an FMLA

5  policy?

6  A.         It's a large company.  I knew that they

7  offered a lot of benefits that I was very happy with.

8  Q.         I'm going to hand you this document.  And

9  it's small print, so I apologize.

10  A.         I can't read it.

11  Q.         You can't read that at all?

12  A.         Unh-unh.

13  Q.         Can you read the top part where it says

14  "family medical leave"?

15  A.         I do see that.

16  Q.         How did you have access to Verizon's

17  policies and your benefits?

18  A.         The last week of training -- again we had

19  six weeks of training -- we were told that we would be

20  given an explanation.  They told us who would be our

21  insurance that they went through, what coverage we

22  could choose, how much it would be monthly, things of

23  that nature.

24             But they waited, I guess, towards the end of

25  our training because a lot of people didn't make it

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 6 of 112 PageID #: 1016

1   through the training, so that was one of the last
2   things.
3   Q.          Did Verizon have a way for employees to
4   access their benefit information online?
5   A.          They had a website that they told us about.
6   There again, I would go to Minyarn who was over all of
7   that at the time that I worked there if I had questions
8   that I did not know the answer to.
9   Q.          So you would go to Minyarn, but you also
10  could have gone to the online website if you had wanted
11  to; correct?
12  A.          There was a website.
13  Q.          And Verizon had its policies listed on that
14  website?
15  A.          Yes, ma'am.  But my personal computer at
16  home, at the time that I was working for Verizon
17  Wireless, I didn't have one.  So the only time that I
18  could have gone to that would have been at work.  My
19  personal computer wasn't available, or it broke.  I
20  know at the time I didn't have one.  Actually, when I
21  applied for the position through CareerBuilders, I used
22  my son's.
23             MS. AZHDARI:  Can we mark the family
24  leave policy as Exhibit 8, please.
25             (Marked Exhibit 8.)

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 7 of 112 PageID #: 1017

1    I was not.

2    Q.       My question, however, was did you have any

3    problems taking time off for FMLA?  So did anyone give

4    you any problems when you --

5    A.       Oh, yes, daily.  Daily I would have to call

6    MetLife to make sure it was approved, or I was told

7    that if it's not approved I was out of -- I think they

8    called it IUD time.  And if I didn't get approved

9    through MetLife I was missing too much time.

10   Q.       So your understanding was MetLife had to

11   approve your time?

12   A.       Absolutely.

13   Q.       And if your time was not approved, it would

14   be counted against you?

15   A.       They were very strict about time missed at

16   Verizon Wireless.

17   Q.       At Verizon Wireless.  Who told you about

18   that, about MetLife having to approve or else you would

19   have time missed?

20   A.       The representative.

21   Q.       Who was that?

22   A.       As I stated earlier, I spoke with several

23   different representatives.  I don't know the name.

24   Q.       The MetLife representative or Verizon

25   Wireless representative?

Case 3:12-cv-00617  Document 38-1  Filed 07/11/13  Page 8 of 112 PageID #: 1018

1    A.          The MetLife, I asked her.  I said, "Ma'am,

2    if this is not approved, what are my next steps?"  I

3    had to know.  It was imperative that I know so I did

4    not lose my job.

5    Q.          So no one at Verizon told you that?

6    A.          No, ma'am.

7    Q.          Did anyone at Verizon know that you had

8    requested FMLA leave for your heart condition in April

9    of 2010?

10    A.          That I don't know.  I know they never asked

11    me anything as far as showing compassion, asking me how

12    I was doing, or anything about it, so I could only

13    assume they didn't care.

14    Q.          Is it possible that they didn't know?

15    A.          They knew.

16    Q.          Everyone knew?

17    A.          There again, ma'am, when you say "everyone,"

18    that encompasses a lot of people.  I know I told my

19    supervisor, my immediate supervisor.

20    Q.          Your immediate supervisor.

21    A.          And it went through the chain of command.

22    Q.          And that was Phillip Trank?

23    A.          In November it was.

24    Q.          What about in April of 2010?

25    A.          I think 2010 -- November of 2010 I think is

NASHVILLE COURT REPORTERS (615) 885-5798

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 9 of 112 PageID #: 1019

1  definitions are. Do you recall if you applied for

2  short-term disability benefits in addition to FMLA

3  leave?

4  A.        No, ma'am.

5  Q.        Do you understand those to be two different

6  things?

7  A.        I was told just recently that they are.

8  Q.        So at the time did you know that short-term

9  disability is not the same thing as family medical

10 leave?

11 A.        Did I understand the concept of all of it

12 intertwined? Not fully.

13 Q.        Okay. Did you look through these documents?

14 Do they look familiar at all?

15 A.        A lot of documents.

16 Q.        There are a lot of documents.

17 A.        Again, the MetLife logo.

18 Q.        Do you recall whether or not in June of 2010

19 your FMLA leave expired?

20 A.        There was one point I had to get it renewed,

21 and I tried to return back to work. And, if I remember

22 right, it was, like, June 2nd I tried to return to

23 work. On that day I passed out. I think that's the

24 day I passed out in the parking lot at work. When I

25 came to, I went into the front and they called an

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 10 of 112 PageID #: 1020

1  ambulance and I was escorted by ambulance to the
2  hospital.
3        And, there again, I hope I have my dates
4  right because it's been a while. My husband was -- I
5  asked them at that time to call my husband and let him
6  know that I had problems and I had passed out. The
7  doctors think it could have been from the meds. They
8  kept trying to get me on the right medication. Again,
9  it was just a process. Hopefully they have me on the
10 right meds. Now I'm doing fine, but at the time it was
11 just a rollercoaster ride.
12       My husband, I had his phone number and
13 everything in my profile; I asked them to call him. He
14 was never called; they never notified him.
15       I then called my husband from the hospital
16 and he said, "Where are you?" And I told him where I
17 was at, and he was upset that they had not called him
18 to tell him that his wife had been brought by ambulance
19 to the hospital.
20 Q.       Ms. Travers, my question, however, was
21 whether or not you knew in June of 2010 your FMLA leave
22 expired. Do you recall that?
23 A.       If I had gone back to work, then I had been
24 notified, yes, ma'am, that I needed to return.
25 Q.       That you needed to return to work?

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 11 of 112 PageID #: 1021

1    A.          That my FMLA time was up, or the time that

2    had been approved.  However, again, the dates, if I had

3    all my personal information, if they had given it to me

4    that day, I would have it in front of me.

5    Q.          And it's okay if you don't remember exact

6    dates.  But the month was June?  Do you remember that?

7    A.          I want to think it was around that time.

8                MS. AZHDARI:  Can we mark this as

9    Exhibit 16, please.

10               (Marked Exhibit 16.)

11   BY MS. AZHDARI:

12   Q.          Now, you mentioned that you had just

13   returned to work around June 2nd when you passed out;

14   is that right?

15   A.          Again, the dates are vague, but, yes, I was

16   back.  According to FMLA policies, I think it was

17   around that time that I needed to return.  But, there

18   again, I was taken by ambulance to the hospital.

19   Q.          And we'll get to that.  Prior to that,

20   though, did anyone at Verizon tell you that you needed

21   to return to work by June?

22   A.          I was notified by MetLife.

23   Q.          So MetLife told you?

24   A.          MetLife.

25   Q.          And then was June 2nd, or around that date,

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 12 of 112 PageID #: 1022

1  was that the first day you had come back from FMLA
2  leave?
3  A.        From the hospital leave?  Or, excuse me,
4  from the heart?
5  Q.        Yes, ma'am.
6  A.        To my knowledge.
7  Q.        So tell me what happened on that day.  You
8  mentioned that you passed out.  Had you actually gone
9  into work at that time?
10 A.        I passed out in the parking lot.
11 Q.        And that was on your way to work?
12 A.        I had parked my car, lost consciousness;
13 when I came to, I was dazed, of course, and scared.
14 Never had had that happen; I was nervous and scared.
15 And I remember going into the front desk and I told
16 them what had happened.  And I sat down, and the HR
17 manager -- her name is escaping me -- La Juana called
18 the ambulance.  And she's the one that I asked to call
19 my husband.
20 Q.        Now, did you pass out in your car or
21 actually did you fall in the parking lot, like, on the
22 ground?
23 A.        I was in my car.  I was fortunate enough
24 that it happened before I got out of my car.
25 Q.        So then you went into the front desk.  Did

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 13 of 112 PageID #: 1023

```
 1   they call La Juana?  Is her last name Miller?
 2   A.          That sounds familiar.  Ma'am, I don't know
 3   how La Juana found out; however, I do know she came to
 4   the front.
 5   Q.          And she was the human resources manager?
 6   A.          HR manager.
 7   Q.          And she's the one who called 911?
 8   A.          She called the ambulance, to my knowledge.
 9   Q.          To your knowledge.  Okay.  Did you see
10   anyone else there while you were waiting for your
11   ambulance?  Did any of your supervisors come talk to
12   you, any coworkers?
13   A.          No, I don't recall.  I was still devastated
14   that I had passed out.
15   Q.          Were you then taken to the hospital?
16   A.          By ambulance.
17   Q.          Did anyone from Verizon go with you?
18   A.          No, ma'am.
19   Q.          What was your diagnosis, or what did the
20   hospital say?
21   A.          They immediately spoke with my heart doctor,
22   I guess.  I don't know the diagnosis, he just said
23   perhaps the medication was the cause of it.
24   Q.          And you were conscious by that point?  You
25   were conscious the whole time in the hospital?
```

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 14 of 112 PageID #: 1024

1    A.          Yes, I was awake.

2    Q.          Did you return to work after that, after

3    your hospital stay?  I guess, how long did you stay in

4    the hospital?

5    A.          I was actually released that evening.  My

6    husband picked me up once I gave him a call.

7    Q.          Did you return to work the next day?

8    A.          I don't recall if that was on the 2nd, which

9    the dates, again, are vague.

10   Q.          Do you remember when the next time was that

11   you returned to work?

12   A.          It was approximately two days prior to my

13   being terminated, so June 8th maybe 9th, 10th.  I was

14   terminated on the 11th, right?  Was that the date,

15   June 10?

16   Q.          So I guess my question is, from the time

17   that you had the ambulance called until your discharge,

18   did you actually work any time at Verizon?

19   A.          During that time frame?

20   Q.          Yes, ma'am.

21   A.          I think I did return.  I'm not sure.  As I

22   said, that's been a while back.  And every chance I got

23   to be at work I took it because I needed my job; my

24   family depended on me working or we didn't have

25   groceries.

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 15 of 112 PageID #: 1025

1    verbal warning?

2    A.          No, ma'am.

3    Q.          Did you lose any time from work because of

4    it?

5    A.          Not to my knowledge.

6    Q.          Do you recall receiving a written warning in

7    September of 2009 for proactively offering to waive a

8    mail-in rebate?

9    A.          I don't remember the exact month or the

10   date; however, there was one in particular that I was,

11   I'm going to say "threatened with termination" if I

12   didn't sign for insubordination.

13   Q.          Let me hand you this memo, and let me know

14   if this is the one that you recall.

15   A.          I don't recall this because Phillip Trank

16   was not my supervisor in September.  It says

17   September 4th here; he was not my supervisor until

18   November.

19   Q.          Who was your supervisor at the time?

20   A.          I think that was possibly Eric Lovett.

21   Q.          But Phillip Trank is the one who gave

22   you the warning?

23   A.          That's what it says here, "From Phillip

24   Trank."  I don't recall.

25   Q.          You don't recall receiving this warning?

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 16 of 112 PageID #: 1026

1    A.        I don't recall who gave it to me.  That does
2    look like my signature; however, like I said, in
3    September he was not my supervisor.
4    Q.        It looks like it's signed by Phillip saying
5    "Manager-CMO"; is that accurate?
6    A.        He was someone's manager at that time, but
7    at that time he was not mine.
8    Q.        Okay.  And you're certain about that?
9    A.        He became my manager in November.
10   Q.        Why did you get this written warning?
11   A.        I don't care to speculate on that.  I
12   started at that time having problems with my health.
13   Q.        So you first started having problems in
14   September of 2009?
15   A.        Well, with the migraines.  I think I got
16   that approved; I had the intermittent approved on that.
17   So I can't think the way they would.  I don't know why
18   they started.
19   Q.        Did you have it approved in September of
20   2009 for your migraines?
21   A.        For the migraines?
22   Q.        Yes, ma'am.
23   A.        I started in May.  I'm thinking it was
24   approximately around that time, possibly.
25   Q.        When did you first submit an FMLA request

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 17 of 112 PageID #: 1027

1  rebate without the customer asking for it.

2  Q.        So are you saying Mr. Lovett is incorrect?

3  A.        His perception of what he may have observed

4  was his perception, but I did not offer a rebate.

5  Q.        And so people can have different perceptions

6  about --

7  A.        Absolutely.

8  Q.        -- conversations; right?

9  A.        (Witness moves head up and down.)

10  Q.        You nodded, but I need to get a verbal.

11  A.        Yes, ma'am.

12  Q.        Thank you.

13  A.        I said absolutely.  I'm sorry.

14  Q.        Well, then I followed up.  And sometimes I

15  just want to make it clear for the record.

16            Do you recall ever receiving an email from

17  Mr. Lovett reminding the team not to match online

18  prices unless requested by the customer?

19  A.        I do not recall that.

20  Q.        But you do recall that was Verizon's policy?

21  A.        I can recall in the meetings what the

22  monthly flyer was and what we were offering at the time

23  that month.  It changed every month.  If it was a new

24  every two, if it was a free handset if you buy one, if

25  it was as free accessory, it varied each month.  Each

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 18 of 112 PageID #: 1028

```
1    Q.        Ma'am, may I finish my question?

2    A.        Absolutely.  I apologize for that.

3    Q.        Thank you.  We want to make sure we don't

4    speak over each other because we want the record to be

5    clear.

6    A.        I understand that.

7    Q.        So Verizon's code of business conduct

8    requires employees to sell with integrity; correct?

9    A.        Yes, ma'am.

10   Q.        So if an employee does not sell with

11   integrity, that's a violation of the code of business

12   conduct; correct?

13   A.        I would agree with that, yes.

14   Q.        Okay.  Now, I know you wanted to explain

15   something, so you can go ahead and explain it.

16   A.        When you asked what code of business conduct

17   meant to me, that's what I said, morale and integrity.

18   Their code of business, their explanation of what their

19   code of business is, is theirs.  I have one to live by,

20   my morale and my integrity is mine.

21             What they offered us if we sold devices was

22   $1.  I'm not going to sell my integrity for a dollar.

23   I'm not going to make a company even richer by selling

24   my integrity like that.

25   Q.        So, Ms. Travers, you basically are
```

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 19 of 112 PageID #: 1029

1   Q.          So she didn't give you any other reasons?

2   A.          If she did, ma'am, I can't . . .

3   Q.          You don't recall?

4   A.          I can't recall.

5   Q.          Do you know who made the decision to

6   discharge you?

7   A.          I do not.

8   Q.          Earlier you mentioned that you disagree with

9   the contents of the disciplinary actions, the written

10  warnings, because you didn't offer -- you didn't do

11  what they say you did; is that right?

12  A.          I did not offer a rebate.

13  Q.          Do you have any evidence to show that you

14  didn't offer the rebates as the written warning states?

15  A.          I do not have evidence.

16  Q.          So your only evidence is your testimony that

17  you didn't do it?

18  A.          I did not do it.

19  Q.          So that is correct?

20  A.          That is correct.

21  Q.          You applied for unemployment compensation

22  benefits; right?

23  A.          That is correct.

24  Q.          Did you have to fill out an application to

25  do so?

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 20 of 112 PageID #: 1030

1    where the wires are at, it could pull the wires loose.

2    Q.        Do you think that Verizon perceived you as

3    having a disability?

4    A.        I have no idea how they perceived me, ma'am.

5    Q.        When did you first think Verizon was

6    discriminating against you because of your disability?

7    A.        Ma'am, when they terminated me, I was

8    flabbergasted. I was shocked and devastated. If I had

9    thought that I was going to be terminated, I would have

10   been looking for a different position somewhere. They

11   gave me kudos, they gave me awards, they gave me

12   certificates for all my hard work. I thought they

13   appreciated me just to find out they didn't. And it

14   was very devastating.

15   Q.        How often did you receive awards and other,

16   I guess, acknowledgments of your performance?

17   A.        I think my lawyer has them all. And there's

18   a stack in the folder that big, and then I've got some

19   that's in her office if you would like to see them. It

20   was -- we were going to dinners; they took my husband

21   and myself to dinner the night I won the big plaque

22   which, a huge accomplishment, because that's something

23   very few people got.

24   Q.        Do you remember when that was?

25   A.        The fourth quarter, according to what the

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 21 of 112 PageID #: 1031

1    work for illnesses or FMLA?

2    A.          No, ma'am.

3    Q.          Your complaint alleges that Verizon

4    retaliated against you for exercising your rights under

5    the ADA.  Do you recall that?

6    A.          Ma'am, I'm not a lawyer.  I don't even know

7    what ADA is.

8    Q.          You don't know what the ADA is?

9    A.          I wish I'd gone to school and learned more

10   about it.  But the ADA, as far as -- can you elaborate?

11   Q.          Law school is overrated.  You don't want to

12   go to law school.  Trust me.

13   A.          I went to medical school and enjoyed it.

14   Q.          So in your charge of discrimination you

15   didn't claim you were retaliated against; is that

16   right?

17   A.          Ma'am, there again, I don't understand what

18   you're asking.

19   Q.          Okay.  You understand that your complaint

20   alleges that Verizon took actions against you in

21   retaliation for -- punishing you for exercising your

22   rights under the Americans with Disabilities Act.

23   A.          I think everything speaks for itself.  I was

24   terminated the day that my FMLA -- I came back.  It was

25   all approved; they terminated me.  So that speaks for

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 22 of 112 PageID #: 1032

1   itself, ma'am.

2   Q.          So you believe then that your termination

3   was as a punishment for taking FMLA leave?

4   A.          It was a large punishment.  It devastated

5   me.  It took away a lot of my livelihood.

6   Q.          Did you complain to anyone after your

7   termination?

8   A.          Can you elaborate on "complain"?

9   Q.          Sure.  Did you call Verizon's corporate

10  headquarters or the compliance hotline or anything to

11  complain about your termination?

12  A.          No.  I hired a lawyer to represent me.

13  Q.          You also say in your complaint that Verizon

14  made no effort to engage in an interactive process with

15  you after it learned of your medical condition to see

16  whether or not you could perform the essential

17  functions of your job.  Do you recall making that

18  allegation?

19  A.          Ma'am, I know they never gave me the

20  opportunity.  They fired me on my day back, so they

21  didn't give me the opportunity to prove that I could

22  still do my job.

23  Q.          Okay.  Let's go back then.  You had been on

24  FMLA leave since November of 2009; right?

25  A.          Going back to dates, there again, I can say

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 23 of 112 PageID #: 1033

1    that I cannot definitely say the dates are correct.

2    Q.        You had been on FMLA leave prior to your

3    termination; right?

4    A.        Yes, ma'am.  Approved FMLA.

5    Q.        Now, when you listed the things that you

6    could not do because of your heart condition, none of

7    those appear to pertain to your job duties as a

8    customer service rep; is that accurate?

9    A.        I could still perform my job as a customer

10   service rep.

11   Q.        Did you need any type of accommodation or

12   any type of arrangement from Verizon to continue to

13   perform your job duties as a customer service rep?

14             MS. COLLINS:  Objection to the extent

15   it calls for a legal conclusion.

16             You can answer.

17             THE WITNESS:  It would have been nice

18   to know what my options were, whether I could work half

19   days, whether I could do this and if they could work

20   with me.  No one told me what my options were.  And,

21   ma'am, I never -- if I had been told of those options,

22   it would have been nice.

23   BY MS. AZHDARI:

24   Q.        Did you need to work half days, though?

25   A.        The morning that I went in to work and

Case 3:12-cv-00617  Document 38-1  Filed 07/11/13  Page 24 of 112 PageID #: 1034

1  passed out in the parking lot, it would have been nice
2  to have been told, look, once you recover you can come
3  back.  I was never informed of what my options were.
4  Q.        Ms. Travers, did your physician ever state
5  that you needed to change your job duties in order to
6  continue performing them?
7  A.        He did not.
8  Q.        So you were still able to perform the
9  functions of your job, your 11:00 A.M. to 9:00 P.M.
10 shift as a customer service rep, after learning about
11 your heart condition; is that correct?
12 A.        I feel I was; however, I wasn't given the
13 opportunity to prove it.
14 Q.        So you didn't work at all past March of
15 2010?
16 A.        Not for Verizon Wireless, ma'am.
17 Q.        So what was your last day of work at
18 Verizon?
19 A.        I was terminated in June.  And, there again,
20 I don't recall.  I know I went back June 2nd.  I think
21 that was a date that my FMLA told me I needed to return
22 to work, and that was the day, I'm almost certain, that
23 I had the problem passing out.
24 Q.        So did you work at all in March of 2010?
25 A.        At Verizon Wireless?

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 25 of 112 PageID #: 1035

1    stated you wish you had known about; correct?

2    A.         My doctor told me about them.

3    Q.         I understand.  But you were receiving them;

4    is that right?

5    A.         It was just God's miracle that I was

6    approved, yes.

7    Q.         So you were approved?

8    A.         Yes, ma'am.  I received FMLA and short-term.

9    Q.         In your charge of discrimination, you didn't

10   claim that Verizon should have given you any options;

11   is that right?

12   A.         Options?

13   Q.         Right.  You said that you feel like they

14   should have given you options, but you don't mention

15   that in your charge of discrimination; is that correct?

16   A.         Ma'am, I don't know these forms.  I don't

17   know how they go about filling them out.  I see that

18   there's certain blocks that they mark.  I feel like

19   that it all started once I had to start missing work

20   for my heart problem.

21   Q.         I understand.  But my question was, your

22   EEOC charge does not state that you feel Verizon should

23   have given you options; is that correct?

24   A.         Ma'am, it would take a lot of paper, I would

25   say, for them to put down every little detail.  But,

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 26 of 112 PageID #: 1036

1    BY MS. AZHDARI:

2    Q.          Do you recognize this?

3    A.          This is my handwriting.

4    Q.          Is that your signature on the last page?

5    A.          And this looks like my signature.

6    Q.          Now, it looks like there are a series of

7    questions regarding personal information and then your

8    employer.  And then looking at page 3 of this

9    questionnaire --

10   A.          I'm there.

11   Q.          And in the middle of Page No. 10, it asks

12   whether or not your disability prevents or limits you

13   from doing anything.  And it looks like it's written

14   there, "did not impede my ability to work in call

15   center as senior CMO rep."  Is that your handwriting?

16   A.          I feel that it did not.  I didn't have to do

17   any lifting in the call center.  I was sitting at a

18   desk at a computer.

19   Q.          And also it looks like at No. 12 you did not

20   ask for any changes or assistance to your job because

21   of your disability.  You checked the "no" box; is that

22   correct?

23   A.          This is the first time going through all

24   this, ma'am, but, yes, I did check the no box.  It

25   appears to be a check on the form, and this does look

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 27 of 112 PageID #: 1037

1    like my signature on the back.

2    Q.          And your handwriting on the form?

3    A.          This is my handwriting.

4    Q.          Did you complain to anyone at Verizon that

5    you felt you should have been given an accommodation or

6    you felt they should have gone over your options with

7    you?

8    A.          No, ma'am.

9    Q.          And you first thought that you were being

10   penalized for requesting FMLA leave at your

11   termination; correct?

12   A.          I don't understand the question.

13   Q.          I'm sorry.  Probably a bad question.  When

14   was the first time you thought you were being penalized

15   for requesting FMLA leave?

16   A.          What do you mean by "penalized"?

17   Q.          Disciplined, penalized, discriminated

18   against, whatever.

19   A.          I know some of the things that they started

20   doing after they found out I had a health condition

21   seemed to be more prominent.

22   Q.          Like what?

23   A.          Discussions, the QA, and all that stuff

24   seemed to be . . .

25   Q.          What in particular about the QA?

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 28 of 112 PageID #: 1038

```
 1   Q.          Were you ever prevented from taking any
 2   leave under the FMLA?
 3   A.          There again, one day it would be approved,
 4   the next I would have to call and get it, and it would
 5   be disapproved, and the next day they'd say it was
 6   approved.  It was a long ordeal.
 7   Q.          Did anyone at Verizon ever do anything to
 8   prevent you from taking leave?
 9   A.          I wouldn't know.  I don't know.
10   Q.          Did anyone at Verizon ever deny you a
11   request for FMLA leave?
12   A.          There again, I don't know what they did.
13   Q.          Do you know whether or not you were denied
14   any benefits under the FMLA?
15   A.          I do not know.
16   Q.          Did anyone in particular take any actions
17   against you for requesting FMLA leave?
18   A.          Elaborate.
19   Q.          Sure.  Was there any one person at Verizon
20   you believe took actions against you for requesting
21   leave?
22   A.          For requesting?
23   Q.          Yes, ma'am.
24   A.          I was terminated for missing work, so that's
25   about all I can sum that up to.
```

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 29 of 112 PageID #: 1039

REPORTER'S CERTIFICATE

1

2          I, Susan D. Delac, Licensed Court Reporter,

3   Registered Professional Reporter, Certified Court

4   Reporter, and Notary Public for the State of Tennessee,

5   hereby certify that I reported the foregoing

6   proceedings at the time and place set forth in the

7   caption thereof; that the proceedings were

8   stenographically reported by me; and that the foregoing

9   proceedings constitute a true and correct transcript of

10  said proceedings to the best of my ability.

11          I FURTHER CERTIFY that I am not related to

12  any of the parties named herein, nor their counsel, and

13  have no interest, financial or otherwise, in the

14  outcome or events of this action.

15          IN WITNESS WHEREOF, I have hereunto affixed

16  my official signature and seal of office this 10th day

17  of April, 2013.

18

19

20

21  _____

22  SUSAN D. DELAC, LCR, RPR, CCR,
    AND NOTARY PUBLIC FOR THE STATE
23  OF TENNESSEE

24  LCR No. 137 Expires 6/30/2014

25  Notary Commission Expires 3/8/2016

## Applicant Information

🖨 Print

**Applicant ID:** 2732877     **Type:** External Applicant

### Contact Information
         **Submitted Date Time:** 03/20/08 7:09PM

**Travers,Patricia A**
713 Candlecreek Way
Antioch, TN 37013
USA
     **Years at Current Address:** 0-1 Year

| Phone | Phone Type | Preferred? |
|---|---|---|
| 775/397-6881 | Cellular | ☑ |

**Email Address:** ptravers11@gmail.com    **Email Type:** Home
**Preferred Contact:** EMail

### Preferences

| | | |
|---|---|---|
| Geographic Preferences: | First Choice  TN | Second Choice |

**Desired Work Days:** ☑ Monday ☑ Tuesday ☑ Wednesday ☑ Thursday ☑ Friday
                ☐ Saturday ☐ Sunday

**Desired Start Date** 03/20/2008
**Full/Part-Time:** Full-Time
**Desired Hours Per Week:** 40.0

☐ Willing to Relocate    ☑ Willing to Travel    **Percentage Travel** 25% or Less

**Desired Salary:** $30,000.00 Per Year

### Referral Source

| Source | Subsource | Specific Referral Source |
|---|---|---|
| Internet - Job Boards | CareerBuilder.com | |

### Employment
☐ No Prior Work Experience

| | | |
|---|---|---|
| **Anderson Merchandisers** | Current Employer?   N | May We Contact?: N |
| P.O. Box 32270 | Start Date:   07/2006 | End Date: 11/2007 |
| | Ending/Current Title: | Merchandise Representative |
| Amarillo, TX 79120 | Last Salary: | $26,000.00 |
| Potter | Supervisor Name: | July Cardejenas |
| USA | Supervisor Phone: | |
| **Reason for Leaving:**   Moved to Tennessee | | |

| | | |
|---|---|---|
| **Maurices** | Current Employer?   N | May We Contact?: N |
| 2072 Idaho St. | Start Date:   08/2001 | End Date: 08/2005 |
| | Ending/Current Title: | Asst. Manager |
| Elko, NV 89801 | Last Salary: | $24,000.00 |
| Elko | Supervisor Name: | Sandy Hall |
| USA | Supervisor Phone: | |
| **Reason for Leaving:**   Advancement in Merchandising | | |

| | | |
|---|---|---|
| **Fashion Bug** | Current Employer?   N | May We Contact?: N |
| 2515 Mountain City HWY | Start Date:   01/2001 | End Date: 07/2001 |

*Travers*
DOCKET NO. 1
4/2/13   E. Delao

| | Ending/Current Title: | Assistant Manager |
|---|---|---|
| Elko, NV 89801 | Last Salary: | $24,000.00 |
| Elko | Supervisor Name: | Sherri Kondora |
| USA | Supervisor Phone: | |
| **Reason for Leaving:** Better Opportunity | | |

| | | | |
|---|---|---|---|
| JC Penney | Current Employer?: | N | May We Contact?: N |
| 2100 Idaho St. | Start Date: | 08/1998 | End Date: 12/2000 |
| | Ending/Current Title: | Men's Department Supervisor | |
| Elko, NV 89801 | Last Salary: | $18,000.00 | |
| Elko | Supervisor Name: | Abe Daniels | |
| USA | Supervisor Phone: | | |
| **Reason for Leaving:** Better Opportunity | | | |

## Education
**Highest Education Level:** C-HS Graduate

| | |
|---|---|
| High School/GED | Graduated/GED Y |
| | Completed?: |
| Cumberland County | |
| TN | |
| USA | |

## Licenses and Certificates

| License or Certificate | Other License | Date Issued |
|---|---|---|
| | | |

## Languages

| Language | Speaking Proficiency | Reading Proficiency | Writing Proficiency |
|---|---|---|---|
| | | | |

## Resume Text

Patricia A. Travers
713 Candlecreek Way
Antioch, TN. 37013
775-397-6881

Professional Experience

Anderson Merchandisers Music, Books & Video Representative July 2006 - November 2007
P.O. Box 32270
Amarillo, Tx. 79120 (806) 376-6251        Responsibilities including but not limited to merchandising music, books and video for a
large retail store. I ordered and did all promotional signing for product. My sales were number one in my district.

Maurices Asst. Manager     August 2001 - August 2005
2072 Idaho St.
Elko, Nv. 89801 (775) 738-7274
Sales and management at a clothing store. I was responsible for scheduling, payroll and inventory as well as my personal sales of
the clothing and credit card promotions. I was #4 salesperson for the whole chain.

Fashion Bug Asst. Manager     January 2001 - July 2001
2515 Mountain City HWY
Elko, Nv. 89801 (775) 738-2035
Responsible for sales and inventory of a retail clothing store. Also did scheduling and promotion of product and credit card.

JCPenney Department Supervisor     August 1998 - November 2000
2100 Idaho St.
Elko, Nv. 89801 (775) 738-7274
Sales and promotions of mens clothing at a large retail store. I was in charge of signing and merchandising of all departments and
supervised sales and associates in mens department.

References will be furnished if requested.

## Questionnaire

In accordance with the US Immigration Reform & Control Act of 1986, all candidates hired will be required to comply with the employment eligibility verification provisions as a condition of employment. Please answer the following 2 questions:

Are you currently authorized to work in the United States?
Yes

Will you now or in the future require sponsorship for employment visa status in order to work in the United States (e.g. H1-B visa status)?
No - I will not require sponsorship

Any offer of employment is contingent upon successful completion of a drug screen and a background check. Are you willing to submit to such?
Yes

Are you at least 18 years of Age?
Yes

Have you ever worked for or previously applied to Verizon Wireless or any other Verizon Company?
No

If yes, please provide any relevant dates and details:

*Thank you for your interest. Requests for transfer between Verizon affiliates should be directed to your Human Resources department and will be evaluated based upon business needs.*

Are you currently an employee of a Verizon company?
No

Do you currently have any family members who are employed by Verizon Wireless or who are members of the Verizon Board of Directors?
No

If yes, please list their name(s) and relationship:

*For the Next 4 Questions, Please Read Carefully: Information you provide regarding criminal offenses may not necessarily bar you from employment with Verizon Wireless. However, failure to disclose information is considered a falsification and will disqualify you from current and future employment. This information will remain confidential and shared only on a need to know basis with appropriate personnel.*

*The next 2 questions relate to felonies and pending arrests on felony charges. Do not include any non-felony convictions; felony convictions that were sealed, eradicated, erased, annulled or expunged; or convictions that resulted in referral to a pre- or post-trial diversion program.*

*If the state in which you were convicted does not categorize criminal offenses as "felonies" (New Jersey or Maine), please provide your answer with respect to all convictions and pending arrests in the misdemeanor question below.*

**Felony Convictions**

Have you had any felony convictions, felony guilty pleas, or felony pleas of no contest, within the past 7 years or for which you have served a sentence, or were on prison release, parole or probation, within the last 7 years?
No

If yes or unsure, please list and provide any relevant dates:

*Indiana, North Dakota and Oregon residents or applicants: Limit your answer in the next question to arrests less than one year old.*

**Felony Arrests**

Do you currently have any pending felony charges or arrests?
No

If yes or unsure, please list and provide any relevant dates:

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 33 of 112 PageID #: 1043

*If your conviction or arrest was entered in New Jersey or Maine:* The state in which you were convicted or arrested does not categorize criminal offenses as "felonies", please provide your answer with respect to all convictions and pending arrests in the next question.

*California residents or applicants:* Do not include misdemeanor marijuana possession convictions more than two years old in your answer to the next question.

Misdemeanors

Have you ever had any misdemeanor convictions, guilty pleas, pleas of no contest, or pending charges within the past 7 years or for which you have served a sentence, or were on prison release, parole or probation, within the last 7 years?
No

If yes or unsure, please list and provide any relevant dates:

Motor Vehicle Offenses

Have you had any moving traffic violation convictions, guilty pleas, pleas of no contest, or pending charges for which the date is within three (3) years or have you received any speeding tickets within the last three (3) years?
No

If yes or unsure, please list and provide any relevant dates (include city and state):

How long have you been with your current (or most recent) employer?
Less than 6 Months

Our customer facing positions require strict adherence to our attendance guideline.  Are you willing to adhere to an attendance guideline?
Yes

Verizon Wireless makes reasonable efforts to provide disability and religion-related accommodations. Verizon Wireless offers a variety of mechanisms to facilitate the disability or religion-related scheduling needs of employees, including, but not limited to shift swaps, use of vacation and personal time, and flexible time. Accommodations will not be possible in all situations, based upon the business needs of the Company and other factors.

Some of our customer service locations require alternate schedules. Other than for religious or disability-related reasons, are there any days of the week or times when you will be unavailable to work (including evenings, weekends and/or holidays)?
No

If yes, please explain:

Our customer facing positions are located in a call center.  How much experience do you have working in a call center environment?
None

Describe the call center duties you've performed (inbound & outbound customer service, collections.)

Our customer facing positions require you to speak extensively with our customers.  How much experience have you had working directly with customers, either on the phone or in person?
5 or More Years

With which of your previous employers have you had experience working with customers?
Anderson Merchandisers, Maurices, Home Depot, Fashion Bug, JC Penney

Our customer facing positions require you to work extensively on a computer.  How often do you use a computer now?
Several Times a Week

What kind of software programs do you use?
Internet, Microsoft word, Excel

Training for Customer Service positions begins as soon as you start with the company and lasts for a minimum of 6 weeks.  Are you willing to attend training?
Yes

**Additional Names Used (maiden, alias, etc.)**

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 34 of 112 PageID #: 1044

| First Name | Middle Name | Last Name |
|------------|-------------|-----------|
|            |             |           |

## Driver's License Data

I do not have a US Driver's License: ☐

Driver License Number:    057819588              Driver License State:  Tennessee

## Former Address History

| Country: | | Years At Address: | | |
|----------|--|--------------------|--|--|
| United States | | 6-7 Years | | |

| Postal Code: | City: | State: | County: |
|--------------|-------|--------|---------|
| 89801 | Elko | Nevada | Elko |



Your Work

# YOUR
# CODE OF CONDUCT



Your Verizon Wireless

**Verizon_Travers_000399**



# WHO WE ARE

**WE KNOW TEAMWORK ENABLES US TO SERVE OUR CUSTOMERS BETTER AND FASTER. WE EMBRACE DIVERSITY AND PERSONAL DEVELOPMENT NOT ONLY BECAUSE IT'S THE RIGHT THING TO DO, BUT ALSO BECAUSE IT'S SMART BUSINESS.**
We are driven not by ego but by accomplishments. We keep our commitments to each other and our customers. Our word is our contract. We respect and trust one another, communicating openly, candidly and directly since any other way is unfair and a waste of time. We voice our opinion and exercise constructive dissent, and then rally around the agreed-upon action with our full support. Any one of us can deliver a view or idea to anyone else, and listen to and value another's view regardless of title or level. Ideas live and die on their merits rather than where they were invented.

**WE BELIEVE INTEGRITY IS AT THE CORE OF WHO WE ARE. IT ESTABLISHES THE TRUST THAT IS CRITICAL TO THE RELATIONSHIPS WE HAVE.**
We are committed to do the right thing and follow sound business practices in dealing with our customers, suppliers, owners and competitors. Our competitors are not enemies; they are challengers who drive us to improve. We are good corporate citizens and share our success with the community to make the world in which we work better than it was yesterday.

**WE KNOW THAT BIGNESS IS NOT OUR STRENGTH, BEST IS OUR STRENGTH.**
Bureaucracy is an enemy. We fight every day to stay "small" and keep bureaucracy out. We are more agile than companies a fraction of our size, because we act fast and take risks every day. We see crisis and change as opportunities, not threats. We run to a crisis, not away. Change energizes us. We work hard, take action and take personal accountability for getting things done. Our actions produce measurable results.

**EVERYTHING WE DO IS BUILT ON THE STRONG FOUNDATION OF OUR CORPORATE VALUES.**
We work 24x7 because our customers depend on us 24x7. We know our best was good for today. Tomorrow we'll do better.

**WE HAVE WORK BECAUSE OUR CUSTOMERS VALUE OUR HIGH-QUALITY COMMUNICATIONS SERVICES.**
We deliver superior customer experiences through our products and our actions. Everything we do we build on a strong network, systems and process foundation. The quality and reliability of the products we deliver are paramount. Customers pay us to provide them with services that they can rely on.

**WE FOCUS OUTWARD ON THE CUSTOMER, NOT INWARD. WE MAKE IT EASY FOR CUSTOMERS TO DO BUSINESS WITH US, BY LISTENING, ANTICIPATING AND RESPONDING TO THEIR NEEDS.**
We know our products and can explain them to customers. We focus on fundamental execution. We are accountable — and we follow through with a sense of urgency. We know that having the highest ethical standards is a competitive advantage.

# We Are VERIZON
INTEGRITY • RESPECT • PERFORMANCE EXCELLENCE • ACCOUNTABILITY



**Verizon_Travers_000400**

# VERIZON COMMITMENT AND VALUES

The Verizon commitment is to put our customers first by providing excellent service and great communications experiences. This is what we do and this is why we exist. By focusing on our customers and being responsible members of our communities, we will produce a solid return for our shareowners, create meaningful work for ourselves and provide something of lasting value for society. As a result, Verizon will be recognized as a great company.

In order to keep this commitment, we need to always honor our core values.

## INTEGRITY

Integrity is at the heart of everything we do. We are honest, ethical and upfront because trust is at the foundation of our relationships with our customers, our communities, our stakeholders and each other.

## RESPECT

We know it is critical that we respect everyone at every level of our business. We champion diversity, embrace individuality and listen carefully when others speak.

## PERFORMANCE EXCELLENCE

We hold ourselves to a very high standard of performance. We prize innovative ideas and the teamwork it takes to make them realities. We never stop asking ourselves how we can make the customer experience better, and every day we find an answer.

## ACCOUNTABILITY

We take responsibility for our actions as individuals, as team members, and as an organization. We work together, support one another and never let the customer - or our coworkers - down.

Great companies are judged by what they do, not by what they say. To be the best, we're going to keep pushing ourselves in new and exciting directions. These values will guide our every action.

ii

Verizon_Travers_000401

# Dear colleague,

In the words of the Verizon Credo, integrity is at the core of who we are. It's one of our foundational values and a crucial factor in establishing the trust that underlies our relationships with customers, suppliers and colleagues. For us to be successful in the digital marketplace, we must make sure the Verizon brand is synonymous with trust, integrity and the highest of ethical standards.

Each of us is accountable for living up to these high standards every day, in all our actions. In a complex business environment, however, it is not always obvious what the right course of action is. That's why we have the Verizon Wireless Code of Conduct as a resource on ethical business practices. Together with the Credo, the Code of Conduct is a guide for navigating the kinds of business situations we confront every day and arming us with the tools we need to make good decisions as we do our jobs.

I urge you to review the Code thoroughly and discuss it with your co-workers. Of course, no one document can cover every situation that will arise in the course of your job. Therefore, you can and should take up any questions or concerns with your supervisor, your Human Resources representative, the Office of Integrity & Compliance or the Legal Department.

You and I are responsible for Verizon's reputation. I know I can count on you to put integrity and ethical business practices at the center of what you do.

Sincerely,

*Lowell*

Lowell C. McAdam
Chairman and Chief Executive Officer

---

**Our Commitment:**
**Customers First**

---

**Our Core Values:**

- **Integrity**
- **Respect**
- **Performance Excellence**
- **Accountability**

iii

**Verizon_Travers_000402**

# Table of Contents

WE ARE VERIZON .................................................................................................................... i

Verizon Commitment and Values........................................................................................... ii

A Message to all Employees .................................................................................................. iii

Introduction............................................................................................................................ 1

1. **Maintaining an Inclusive, Fair and Healthy Work Environment** ...................................... 4
   1.1 Diversity and Equal Opportunity Commitment ........................................................... 4
   1.2 Discrimination and Harassment .................................................................................. 4
   1.3 Workplace Violence ..................................................................................................... 4
   1.4 Workplace Safety and Environment............................................................................. 5
   1.5 Substance Abuse - Illegal Drugs and Controlled Substances...................................... 6
      1.5.1 Alcohol.............................................................................................................. 6
   1.6 Solicitation and Fundraising ........................................................................................ 6
   1.7 Gambling ..................................................................................................................... 7
   1.8 Employee Privacy ........................................................................................................ 7
      1.8.1 Monitoring On the Job...................................................................................... 7
      1.8.2 Use of Recording Devices ................................................................................. 8
   1.9 Misconduct Off the Job ............................................................................................... 8

2. **Maintaining Integrity and Fairness in the Workplace** ..................................................... 9
   2.1 Avoiding Conflicts of Interest ...................................................................................... 9
      2.1.1 Personal Conflicts of Interest........................................................................... 9
      2.1.2 Employment Outside Verizon Wireless ............................................................ 9
      2.1.3 Activities Outside of Verizon Wireless ............................................................. 10
   2.2 Political Conflicts of Interest........................................................................................ 10
      2.2.1 Personal Political Interests ............................................................................... 10
      2.2.2 Contributions of Corporate Assets ................................................................... 11
      2.2.3 Seeking Public Office........................................................................................ 11
   2.3 Insider Trading and Financial Interests ........................................................................ 11
      2.3.1 Investments in Companies with Which You Conduct Business on Verizon Wireless' Behalf.................................................................................. 12
      2.3.2 Significant Financial Interests in Companies ..................................................... 12
      2.3.3 Transactions in Securities................................................................................. 12
      2.3.4 Loans................................................................................................................. 12

iv

**Verizon_Travers_000403**

**3. Protecting Verizon Wireless' Assets and Reputation** .................................................................. **13**

   3.1  Preparing, Disclosing and Maintaining Accurate Records ....................................................... 13

       3.1.1  Creating Accurate Records ........................................................................................... 13

       3.1.2  Promoting Transparent and Complete Disclosure ...................................................... 13

       3.1.3  Retaining Company Records ......................................................................................... 14

   3.2  Safeguarding Company Information ........................................................................................ 14

       3.2.1  Protecting Non-public Company Information .............................................................. 14

       3.2.2  Acquiring Non-public Company Information of Others ............................................... 15

   3.3  Proper Use of Verizon Wireless' Property and Property Owned by Others ............................ 15

       3.3.1  Company Benefits ......................................................................................................... 15

       3.3.2  Company Property and Funds ...................................................................................... 15

       3.3.3  Work Time ..................................................................................................................... 15

   3.4  Protecting Company Communication and Information Systems ............................................. 16

       3.4.1  Prohibited Activities ..................................................................................................... 16

   3.5  Security of Facilities ................................................................................................................ 17

   3.6  Intellectual Property ............................................................................................................... 17

       3.6.1  Proper Use of Others' Intellectual Property ............................................................... 17

       3.6.2  Information of Former Employers ................................................................................ 17

   3.7  Handling External Communications ........................................................................................ 18

**4. Maintaining Integrity and Fairness in the Marketplace** ..................................................... **19**

   4.1  Customer Relationships .......................................................................................................... 19

       4.1.1  Customer Privacy and Communications ...................................................................... 19

       4.1.2  Customer Marketing .................................................................................................... 19

       4.1.3  Selling with Integrity .................................................................................................... 20

   4.2  The Government as a Customer .............................................................................................. 20

       4.2.1  Court Orders and Other Legal Documents .................................................................. 20

       4.2.2  Classified and National Security Information ............................................................... 21

   4.3  Selecting and Maintaining Relationships with Business Providers ......................................... 21

Verizon_Travers_000404

4.4    Gifts and Entertainment ..................................................................................21
    4.4.1    When Gifts are Appropriate.................................................................21
    4.4.2    When Entertainment is Appropriate....................................................22
    4.4.3    Prohibited Exchanges..........................................................................22
    4.4.4    Gifts Involving Travel or Lodging ..........................................................22
    4.4.5    Returning Gifts.....................................................................................22
    4.4.6    Gifts Outside the Workplace................................................................23
    4.4.7    Gifts and Entertainment Involving Government Officials .......................23
4.5    Bribes, Kickbacks and Loans ............................................................................23
4.6    Relationships with and Obligations of Departing and Former Employees.............23
4.7    Interaction with Competitors ...........................................................................24
    4.7.1    Avoiding Violations of the Antitrust Laws............................................24
    4.7.2    Gathering Information About Competitors............................................26
4.8    Relationships With Affiliates..............................................................................26
4.9    International Relationships ...............................................................................26
    4.9.1    Locating Offices or Receiving Services Outside of the United States.......27
    4.9.2    Compliance with Screening Requirements of the Office of
            Foreign Asset Control (OFAC) .............................................................27
    4.9.3    Import/Export Control .........................................................................27
    4.9.4    Payments, Lobbying, Expenses and Recordkeeping
            Requirements Internationally................................................................28
    4.9.5    Economic Sanctions and Embargoes....................................................29
    4.9.6    Illegal Boycotts ...................................................................................29

Conclusion.........................................................................................................30

Sources of Help.................................................................................................31

Listing of Compliance Subject Matter Experts .....................................................31

Verizon_Travers_000405

# Introduction[1]

## Our Expectations and Values

### Sustain a Culture of Integrity

This Code of Conduct is a statement of the principles and expectations that guide ethical business conduct at Verizon Wireless. Verizon Wireless requires all employees to use their judgment, to be accountable for their actions and to conduct business with integrity.

This Code of Conduct reflects our changing business environment and has been approved by the Verizon Wireless Board of Representatives. In addition to governing conduct by employees, this Code governs conduct between employees and customers, competitors and the numerous business providers (including suppliers, vendors, contractors and agents) who assist Verizon Wireless every day. Because we want our business providers, customers and investors to understand how we do business and what they can expect of us, this Code appears on the Verizon Wireless website and is available to the public.

You may never violate this Code or any company policy even if a supervisor directs you to do so. If you receive such a request, you should advise your supervisor that the request violates the Code. If your supervisor refuses to modify his or her request, you should contact the Compliance Guideline immediately.

Failure to comply with any provision of this Code or company policy is a serious violation and may result in disciplinary action, up to and including termination of employment, as well as civil or criminal penalties. These consequences may apply not only to employees who commit misconduct, but also to those who condone misconduct, fail to report or take reasonable measures to prevent, detect and address misconduct or seek to retaliate against those who report potential misconduct.

## Set the Tone at the Top

### Build Trust and Credibility

We earn credibility with our customers, business providers and co-workers by keeping our commitments, acting with honesty and integrity and pursuing our company goals solely through ethical and professional conduct.

If you are a supervisor, you have the added responsibility of creating an open and supportive environment where employees feel comfortable asking questions, raising concerns and reporting misconduct. Ethical behavior does not simply happen; it is the product of clear and direct communication of behavioral expectations, modeled from the top and demonstrated by example.

---

Great companies are judged by what they do, not by what they say.

---

We pursue company goals solely through ethical and professional conduct.

---

- **Read the Code**
- **Understand the Code**
- **Utilize Available Resources**
- **Comply with the Code**

1

Verizon_Travers_000406

Report all suspected violations of this Code.

**Compliance Guideline**
800.488.7900
www.VerizonWireless
Guideline.com

## Speak Up

### Do the Right Thing Because it's the Right Thing to Do

At Verizon Wireless, we have an open door policy. Everyone should feel comfortable speaking his or her mind, particularly with respect to ethical concerns. You must report suspected and actual violations of this Code, company policy and the law. Verizon Wireless will investigate reported instances of questionable or unethical behavior.

In deciding whether a violation of the Code has occurred or is about to occur, you should first ask yourself:

- Could this conduct be viewed as dishonest, unethical or unlawful?
- Could this conduct hurt Verizon Wireless? Could it cause Verizon Wireless to lose credibility with its customers, business providers or investors?
- Could this conduct hurt other people, such as other employees, investors or customers?

If the answer to any of these questions is "yes" or even "maybe," you have identified a potential issue that you must report.

## Where to Report

### You Are Accountable

Anyone may submit an anonymous or confidential complaint or inquiry by calling the **Compliance Guideline at 800.488.7900** or going on-line at **www.VerizonWireless Guideline.com.** If you have questions regarding any of the laws discussed in this Code, you should contact the Legal Department.

### Imminent Danger or Illegal Conduct

You must immediately report any instance of violence, hostile behavior, possession of weapons or any component of a weapon on company property, or related illegal conduct to Verizon Wireless Corporate Security and a supervisor. In cases of imminent danger, you should contact 911 or local law enforcement first, and then contact Verizon Wireless Corporate Security at **908.306.7900.**

### Discrimination or Harassment

Harassment or discrimination of any kind is not tolerated.

If you believe you are a victim of or a witness to discrimination or harassment, you must report it to your supervisor, Human Resources or make a confidential contact to the Compliance Guideline. If your complaint is about your supervisor or you are otherwise uncomfortable reporting your complaint to him or her, you should report it directly to Human Resources or the Compliance Guideline. You may also address suspected discrimination or harassment directly with the person engaging in such conduct if you are comfortable doing so and you believe the conduct is unintentional.

2

### Accounting, Internal Accounting Controls or Auditing Complaints

You must report any concerns or questions you have about the accuracy or integrity of Verizon Wireless' financial statements, reporting, accounting, internal accounting controls or auditing matters to Internal Audit or to the Compliance Guideline.

### Confidential Reporting and No Retaliation

Reports and complaints will be kept confidential to the extent permitted by law and by the company's need to investigate the situation.

Verizon Wireless prohibits retaliation against employees who submit or participate in the investigation of any complaints. If you believe you or others are the subject of retaliation for reporting suspected misconduct or participating in an investigation, you must report the matter to the Compliance Guideline or the Legal Department.

### Cooperation with Investigations

You must cooperate completely in any investigation relating to Verizon Wireless. You must be honest and forthcoming at all times during an investigation, and you must provide any investigator with full, accurate, timely and truthful information. Misrepresenting facts or failing to disclose facts during an investigation is strictly prohibited. You may never interfere with or obstruct an investigation conducted by the company, by any third party on the company's behalf or any government agency. In addition, you may never disclose or discuss an ongoing investigation unless specifically authorized to do so.

If a police officer, other law enforcement personnel or government employee from any agency (except for environmental, health and safety agencies which are addressed in Section 1.4 of the Code) requests access to company premises or to company or customer information, you must immediately notify the Legal Department for appropriate guidance. Any documents, information or testimony you provide in response to a request by a government agency must be full, fair, accurate and timely, and reviewed in advance by the Legal Department. If you discover or suspect any misrepresentation, misstatement, misunderstanding, omission or other mistake by yourself or another employee, you must immediately disclose it to the Legal Department so that the company can take prompt steps to remedy the situation. The requirements of this subsection do not apply to providing information or testimony, in your individual capacity, to a governmental body or agency on behalf of yourself or co-workers where protected by applicable law.

A listing of Compliance Subject Matter Experts with all important contact information appears at the end of this Code.

You must adhere to the Code of Conduct and fully cooperate with all investigations relating to Verizon Wireless.

Verizon Wireless will not tolerate retaliation against employees who report suspected misconduct or provide information as part of an investigation.

---

*¹ You are required to comply with this Code as a condition of continued employment. This Code does not give you rights of any kind, and may be changed by the company at any time without notice. Employment with Verizon Wireless is "at will," which means that you or Verizon Wireless may terminate your employment, at any time, with or without cause, with or without notice, for any reason not prohibited by law, unless governed by a specific contract of employment. This at will employment relationship may not be modified except in a written agreement signed by the employee and an authorized representative of Verizon Wireless. This Code sets forth policies and practices applicable to all Verizon Wireless employees.*

3

Verizon_Travers_000408



# Maintaining an Inclusive, Fair and Healthy Work Environment

Verizon Wireless employees must act with fundamental honesty and integrity in all company dealings, comply with all laws that govern our business, maintain an ethical and professional work environment and comply with all company policies. Verizon Wireless employees are required to treat customers, fellow employees and vendors with respect, dignity, honesty, fairness and integrity.

## 1.1 Diversity and Equal Opportunity Commitment

At Verizon Wireless, diversity means embracing differences and promoting an inclusive organization that values the diversity of employees, customers, suppliers and community partners because it's the right thing to do and drives business success.

Verizon Wireless is committed to attracting, developing and retaining a highly qualified, diverse and dedicated work force. It is Verizon Wireless' policy to comply fully with all laws providing equal opportunity to all persons without regard to race, color, religion, age, gender, sexual orientation, gender identity and expression, national origin, disability, marital status, citizenship status, veteran status, military status or any other protected category under applicable law. For company business, Verizon Wireless will use facilities, sponsor events or maintain memberships only at businesses or organizations that do not have exclusionary membership practices.

## 1.2 Discrimination and Harassment

Verizon Wireless has a policy of zero tolerance for discrimination, sexual harassment or other harassment based on race, color, religion, age, gender, sexual orientation, gender identity and expression, national origin, disability, marital status, citizenship status, veteran status, military status or harassment based on categories protected under applicable law. Harassment includes but is not limited to, racist, sexist or ethnic comments, jokes or gestures, or any conduct or statement creating an intimidating, hostile or offensive work environment.

Any unlawful discrimination or harassment must be brought to the attention of your supervisor, Human Resources or the Compliance Guideline. If your complaint is about your supervisor or you are otherwise uncomfortable reporting your complaint to him or her, you should report it directly to Human Resources or the Compliance Guideline. You may also address suspected discrimination or harassment directly with the person engaging in such conduct if you are comfortable doing so and you believe the conduct is unintentional.

## 1.3 Workplace Violence

Verizon Wireless will not tolerate any threatening, hostile or abusive behavior in the workplace, while operating company vehicles or on company business, or by any persons on company property, and will take immediate and appropriate action against offenders, up to and including termination of employment and referral for criminal prosecution. Nor will Verizon Wireless tolerate threatening, hostile or abusive conduct directed at employees or customers by Verizon Wireless personnel at any time or place. Damage to property is also prohibited.

---

You must treat all customers, fellow employees and vendors with respect, dignity, honesty, fairness and integrity.

Diverse minds, experiences, cultures and perspectives help us better serve our customers.

You may never view or display any pornographic, obscene or offensive material through company systems, on company or customer premises or in company vehicles.

**Q.** My supervisor requires the team to meet attendance targets and quality goals. Every month there is another requirement. Isn't this harassment?

**A.** It is not considered harassment for management to enforce job performance requirements in a fair and consistent manner.

4

**Verizon_Travers_000409**

Unless local law expressly permits possession of a weapon in a locked personal vehicle on company property, you may not possess or use any weapon or any component of a weapon (e.g. ammunition) on company property. You must report any instance of violence, hostile behavior or possession of weapons on company property to Verizon Wireless Corporate Security and a supervisor immediately. In cases of imminent danger, you should contact 911 or local law enforcement first, and then contact Verizon Wireless Corporate Security at 908.306.7900.

Domestic violence can also adversely affect workplace safety. If you are the victim of such violence, you should notify the police and Verizon Wireless Corporate Security of any person who may affect your safety or the safety of your fellow employees. You can also contact the Employee Assistance Program for further assistance at 888.441.8674.

## 1.4 Workplace Safety and Environment

Verizon Wireless is committed to providing a safe workplace for all employees and meeting its environmental responsibilities. You must perform your job in a safe and environmentally responsible manner in compliance with applicable Verizon Wireless policies and practices and the law. Verizon Wireless safety and environmental website links can be found at: **(https://aboutyou.vzwcorp.com/wps/myportal/hrGuidelines?WCM_GLOBAL_CONTEXT=/VZWAboutYou/Home/HR%20Guidelines/Workplace%20Safety) and http://njcwdocpr.eng.vzwcorp.com/Network_Compliance/Environmental_Compliance/index.html**, respectively.

> Perform your job in a safe and environmentally responsible manner.

If you believe that a safety, health or environmental hazard exists, that there has been a release of any hazardous substance, or that safety, health or environmental guidelines are not being followed, you must immediately report the situation to your supervisor and the Compliance Guideline at 800.488.7900.

If you are a supervisor, you must also ensure that your direct reports are trained on the safety and environmental practices applicable to each of their jobs and implement and enforce all applicable regulations and policies. You must investigate all safety, health and environmental issues that come to your attention, and refer any issues of potential noncompliance to your supervisor and the Compliance Guideline.

If you believe that your supervisor has failed to take appropriate action to remedy a condition which is unsafe or in violation of any law or safety, health and environmental practice, you must contact Human Resources or the Compliance Guideline.

Verizon Wireless is required to record and report work-related accidents. If you are involved in a work-related accident, you must immediately report it to a supervisor and follow the company's policies for reporting accidents and injuries. The supervisor must contact the Incident Reporting Center at 866.899.2524 or online by using the Enterprise Safety System (ESS) (AboutYou>Shortcuts>ESS) to report workplace accidents and injuries.

Government agencies may conduct periodic inspections for compliance with safety, health and environmental requirements. If officials of any governmental agency seek to conduct an inspection, you must immediately contact the Legal Department.

5

Verizon_Travers_000410

## 1.5 Substance Abuse - Illegal Drugs and Controlled Substances

Verizon Wireless is committed to maintaining a safe and drug-free environment for all its employees. While on company time, company premises, or while operating company equipment or vehicles, you may never use, transfer, sell, manufacture or possess illegal drugs (which include any controlled substances that have not been prescribed for you by your doctor) or drug paraphernalia. You may not report to work under the influence of any illegal drug, or if testing would demonstrate that you have used or consumed an illegal drug.

If you are taking any medication that creates a safety risk, you must report this to your supervisor, and you must not operate any Verizon Wireless machinery or vehicle if the medication affects your perception or responsiveness.

You must immediately report any arrest pending final resolution or conviction for a drug-related offense to the Compliance Guideline so that the company may determine whether this may affect your ability to perform your job or otherwise affect the company's business interests.

### 1.5.1 Alcohol

You may not possess, serve, be under the influence of, or drink alcohol while on company property, while in a company vehicle or while conducting business for Verizon Wireless. The only exceptions are for Verizon Wireless functions where alcohol may be served only with prior approval from a vice president level or above supervisor, or external events at which you are representing Verizon Wireless. Although alcohol may be served at such events, consumption is completely voluntary, should always be in moderation, and never in a manner that would embarrass or harm the company.

You must immediately report to the Compliance Guideline any arrest pending final resolution or conviction for an alcohol-related offense relating to conduct while on company property or business or that may otherwise affect your ability to perform your job, or otherwise affect the company's business interests.

### 1.6 Solicitation and Fundraising

Solicitation and fundraising distract from work time productivity, may be perceived as coercive and may be unlawful.

Solicitation during work time (defined as the work time of either the employee making or receiving the solicitation), the distribution of non-business literature in work areas at any time or the use of company resources at any time (emails, fax machines, computers, telephones, etc.) to solicit or distribute, is prohibited. Non-employees may not engage in solicitation or distribution of literature on company premises. The only exception to this policy is where the company has authorized communications relating to benefits or services made available to employees by the company, company-sponsored charitable organizations or other company-sponsored events or activities. To determine whether a particular activity is authorized by the company, contact the Compliance Guideline.

**Q.** I am attending a work related conference. During the evening welcoming reception alcohol is served. Can I drink alcoholic beverages at this event?

**A.** Yes, but consumption must be in moderation to avoid intoxication as you are representing Verizon Wireless and must behave professionally. However, employees driving company vehicles are prohibited from consuming any alcohol. You should never drink and drive.

Internal drawings promoting company products and services or team building are allowed when voluntary and involve no monetary transactions.

6

**Verizon_Travers_000411**

Fundraising and philanthropic initiatives that refer to or use the Verizon Wireless name, or that are organized by or directed to Verizon Wireless employees in the workplace, must be conducted by the Verizon Foundation, and must conform to all company standards, including this Code.

This section does not apply to political activities (addressed separately in section 2.2 of this Code) undertaken on Verizon Wireless' behalf in coordination with the Legal Department, or activities conducted pursuant to the Employee Resource Group Guidelines.

## 1.7 Gambling

You may not gamble or participate in any games of chance (including raffles, sports pools or lotteries) on company premises, on company systems or while conducting company business.

## 1.8 Employee Privacy

Verizon Wireless acquires and retains personal information about its employees in the normal course of operations, such as for employee identification purposes and provision of employee benefits. You must take appropriate steps to protect all personal employee information, including social security numbers, identification numbers, passwords, financial information and residential telephone numbers and addresses.

You should never access, obtain or disclose another employee's personal information to persons inside or outside of Verizon Wireless unless you are acting for legitimate business purposes and in accordance with applicable laws, legal process and company policies, including obtaining any approvals necessary under those policies.

### 1.8.1 Monitoring On the Job

In order to protect company assets, provide excellent service, ensure a safe workplace, and to investigate improper use or access, Verizon Wireless monitors employees' use of Verizon Wireless' communications devices, computer systems and networks (including the use of the Internet and corporate and personal web-based email accessed from Verizon devices or systems), as permitted by law. In addition, and as permitted by law, Verizon Wireless reserves the right to inspect, monitor and record the use of all company property, company provided communications devices, vehicles, systems and facilities - with or without notice - and to search or monitor at any time any and all company property and any other personal property (including vehicles) on company premises.

> Verizon Wireless reserves the right to inspect, monitor and record the use of all company property and systems.

7

Verizon_Travers_000412

### 1.8.2   Use of Recording Devices

In many jurisdictions, use of recording devices without the consent of both parties is unlawful. Unless you are participating in an approved observation program or you have obtained prior approval from Verizon Wireless Corporate Security or the Legal Department, you may not record, photograph, or videotape another employee or access another employee's systems, records or equipment without that employee's knowledge and approval. In addition, unless you receive prior approval from the Legal Department, you may never record, photograph or videotape any customer, business provider or competitor without that person's knowledge and approval.

### 1.9   Misconduct Off the Job

Employees must avoid conduct off the job that could impair work performance or affect the company's reputation or business interests. In order for the company to determine whether off the job conduct could impair work performance or affect the company's reputation or business interests, you must promptly report to the Compliance Guideline: (1) any arrest pending final resolution or conviction for any felony (or state or local law felony equivalent); (2) any arrest pending final resolution or conviction for a crime involving dishonesty, assault or battery; or (3) any other arrest pending final resolution or conviction which may affect your ability to perform your job or otherwise affect the company's business interests.

8

Verizon_Travers_000413



# Maintaining Integrity and Fairness in the Workplace

Verizon Wireless' reputation depends heavily on the actions and integrity of its employees. It is imperative that you avoid any relationships or activity that might impair, or even appear to impair, your ability to make objective and fair decisions when performing your job. You owe a duty to Verizon Wireless to advance its legitimate interests when the opportunity to do so arises. You must never use Verizon Wireless property or information for personal gain or take personal advantage of any opportunity that arises in the course of your work for Verizon Wireless.

## 2.1 Avoiding Conflicts of Interest

You must disclose any potential or actual conflict to the Compliance Guideline. This chapter addresses some of the most common conflicts.

### 2.1.1 Personal Conflicts of Interest

You may not supervise someone with whom you share a close personal relationship, such as anyone in your family or household, someone with whom you have or had a romantic relationship or other close personal relationship. Nor may you participate in the selection process for, or supervise Verizon Wireless' relationship with, a company that does business with Verizon Wireless if it employs someone with whom you have such a close personal relationship.

If you supervise someone, even indirectly, with whom you have one of the relationships described above, or if you have such a relationship with an employee of a company that does business with Verizon Wireless, you must disclose the relationship promptly. In addition, you should not use your position at the company to advance your personal interests or those of a friend or relative at the expense of the company's interests.

### 2.1.2 Employment Outside Verizon Wireless

You may not - with or without compensation - be self-employed or employed by, consult with, own, perform services for or aid a company or organization (including a charitable organization) that is a vendor, supplier, contractor, subcontractor or competitor of Verizon Wireless, or that provides services that are provided by Verizon Wireless or either of its owners, or that Verizon Wireless or either of its owners is seeking to provide (examples of such services may include communications, cable, video, entertainment or information management, long-distance, Internet, network security, software or repair or service of computers, telephones or televisions). Outside work should not interfere with your work for Verizon Wireless. Employees are also prohibited from simultaneously working for another Verizon or Vodafone entity.

Exceptions to the requirements of the previous paragraph may be granted only upon written approval by the Office of Integrity & Compliance.

Unless you receive the prior written approval of your supervisor and Human Resources, you may not engage in any outside employment or self-employment or perform any commercially-related services -- with or without compensation -- while absent from work on any company-approved leave of absence, absence due to sickness or disability, Family Medical Leave or comparable leave provided for by applicable law.

Q. I am dating a co-worker who is being promoted to supervisor of our team. Do we have to bring this to the attention of our manager?

A. Yes. This situation would create a conflict of interest in your group. Even if you and your colleague are currently equals in the same group, you should advise your manager of the relationship to prevent an inappropriate reporting relationship.

Q. I need to make extra money and I want to get a second job. Is this a problem?

A. This may create a conflict of interest if your second job provides any of the same types of services or products as Verizon Wireless, compromises Verizon Wireless' interests or adversely affects your job performance.

9

**Verizon_Travers_000414**

### 2.1.3 Activities Outside of Verizon Wireless

Many employees participate in an individual capacity in outside organizations (such as their local school board or homeowners' association). Memberships in these associations can cause conflicts if they require decisions regarding Verizon Wireless or its products. If you are a member of an outside organization, you must remove yourself from discussing or voting on any matter that involves the interests of Verizon Wireless or its competitors. You must also disclose this conflict to your outside organization without disclosing non-public company information and you must disclose any such potential conflict to the Compliance Guideline. Participation in any outside organization should not interfere with your work for Verizon Wireless. To the extent that your participation infringes on company time or involves the use of Verizon Wireless resources, your supervisor's approval is required.

If you serve or are seeking to serve as a representative of Verizon Wireless on a board or committee of any outside organization, you must obtain the prior approval of your vice president level or above supervisor, and the Office of Integrity & Compliance.

If you serve on a Board of Directors of a public corporation, you must obtain prior approval from both your vice president level or above supervisor and your organization's president or executive vice president, and the Office of Integrity & Compliance. Service on the Board of Directors of a non-public corporation must be approved by the Office of Integrity & Compliance.

## 2.2 Political Conflicts of Interest

Verizon Wireless encourages its employees to participate in the political process. It is the responsibility of every Verizon Wireless employee to comply fully with all laws and regulations relating to interactions with government officials, including laws governing campaign finance, government ethics and lobbying. In addition, all lobbying activities on behalf of the company must be authorized by the Legal Department.

### 2.2.1 Personal Political Interests

Your personal political contributions and activities must be kept separate from the company. If you make political contributions, you may not refer in any way to your employment or use the company's assets, including its name, in connection with your contributions, unless required to do so by law.

If you are appearing before a government body or engaging in contact with a public official outside of your ordinary work duties regarding a business in which Verizon Wireless is engaged or a business issue in which Verizon Wireless has an interest, you should make it clear that you are not representing Verizon Wireless, and you should advise your supervisor in advance.

Acting as a representative of Verizon Wireless means that you are authorized to speak on Verizon Wireless' behalf. Otherwise, you are acting independently and Verizon Wireless' name should not be used in connection with your participation.

Q. When I receive e-mails advising me how I may contact my Congressperson about certain telecommunications laws, am I required to do so?

A. Your involvement in the political process is purely voluntary.

Verizon_Travers_000415

### 2.2.2 Contributions of Corporate Assets

You may not make payments of corporate contributions, whether monetary or non-monetary assets, to any domestic or foreign political party, candidate, campaign or public official unless that contribution is permitted under applicable laws inside and outside the U.S., and approved in advance by the Legal Department. In addition, you may never reimburse anyone for any political contribution.

Verizon Wireless administers a Political Action Committee (PAC) that accepts contributions from employees who wish to support the political process in a way that identifies Verizon Wireless, as permitted by law. Your personal contributions to the PAC is entirely voluntary.

### 2.2.3 Seeking Public Office

Before you seek any elected or appointed public office, including a local position, such as school board president, you must obtain the approval of your director level or above supervisor and the Legal Department.

### 2.3 Insider Trading and Financial Interests

Insider trading occurs when a person trades in a company's securities using material inside information – that is, information that is not publicly available and that could reasonably affect a person's decision about whether to buy or sell the securities. It also occurs when a person gives material inside information to someone else who trades on it. Insider trading is a serious violation of the law and can result in severe civil or criminal penalties, including imprisonment.

You should never trade or help others trade on information that may be viewed as material inside information.

As a Verizon Wireless employee, you may become aware of material inside information about Verizon Wireless or other companies with which Verizon Wireless does business. You must never use material inside information (even if you acquired it as a "tip" from others) to trade in Verizon Wireless' or any other company's securities. This prohibition also includes trading in derivative securities, such as calls and puts, and engaging in short selling or other hedging transactions. In addition, you may not provide material inside information to any other person, including members of your family or your friends, or assist any other person in buying, selling or entering into any other transaction using material inside information.

The rules that relate to insider trading are complex. If you are not sure whether these restrictions apply to you, you should consult the Legal Department before making any decision to buy, sell or trade in a security, or before you disclose any information to another person. As a general rule, non-public information concerning a company's business, financial prospects, regulatory or legal matters, or management issues, is often considered "material."

11

**Verizon_Travers_000416**

### 2.3.1 Investments in Companies with Which You Conduct Business on Verizon Wireless' Behalf

If you conduct or supervise business on Verizon Wireless' behalf with a company, you must not transact any business in that company's securities or derivatives of those securities. If you already own stock in a company, and your position at Verizon Wireless requires you to conduct or supervise business with this company, you must disclose your ownership interest to a vice president level or above supervisor, and seek approval from the Legal Department prior to trading in that company's securities.

### 2.3.2 Significant Financial Interests in Companies

You may not take a significant financial interest in a company that is a business provider or that competes with or is in one of the same lines of business as Verizon Wireless. A significant financial interest is any financial interest that: (a) is more than 1/10 of one percent of a company's publicly traded securities or other financial instruments and (b) exceeds 25 percent of an employee's Verizon Wireless annual base salary and bonuses.

### 2.3.3 Transactions in Securities

You must not engage in any financial transaction that permits you to benefit from the devaluation of Verizon Wireless' stocks, bonds or other securities, including, but not limited to, short selling or buying "put" options on Verizon Wireless stock.

In addition, you may not participate in financial transactions in the stock or other securities of business providers or prospective business providers, including "friends and family" deals or initial public offerings (IPOs), if these opportunities may influence, or appear to influence, your business judgment on behalf of Verizon Wireless.

### 2.3.4 Loans

Personal loans from the company to any executive officer (as defined by securities law) are unlawful and strictly prohibited. Personal loans from the company to any other employee must be approved in writing in advance by the Legal Department or in accordance with an approved Verizon Wireless program. Loans greater than $25 between employees who are in a direct or indirect reporting relationship are prohibited.

Q. My supervisor is experiencing a personal emergency and I offered a loan of $200 until the next pay period. Is this a concern?

A. Yes, loans greater than $25 between employees who are in a direct or indirect reporting relationship are prohibited.

**Verizon_Travers_000417**



Section **3**

No business goal of any kind is ever an excuse for misrepresenting facts or falsifying records.

Always report information accurately and promptly resolve discrepancies in company records. Verizon Wireless' reputation is a key asset that all employees must protect.

# Protecting Verizon Wireless' Assets and Reputation

### 3.1  Preparing, Disclosing and Maintaining Accurate Records

Verizon Wireless is committed to maintaining and providing truthful information that fully satisfies applicable legal requirements, including the Sarbanes-Oxley Act of 2002.

### 3.1.1  Creating Accurate Records

You must create accurate records that reflect the true nature of the transactions and activities that they record (including, but not limited to, reporting of time, documenting attendance and absence, productivity, commissions and quality assurance). You must resolve discrepancies in any records and make appropriate corrections. If you suspect or learn that records are misleading or contain errors, you must promptly inform either your supervisor or the Compliance Guideline and, if applicable, customers and business providers. Because even a minor error can affect the truthfulness of a record, you must report all errors, regardless of their size or how long ago they may have occurred. If your supervisor fails to address a report about a record's accuracy, you must report your concern to Internal Audit or the Compliance Guideline.

Verizon Wireless does not tolerate falsification or improper alteration of records. It is never appropriate to direct someone else to prepare or approve a false or misleading record and it is no defense to say that someone else directed you to make a record that you knew or had reason to suspect was false or misleading. It is also improper to intentionally take any action that leads to the creation of false or misleading records, such as withholding information from, or providing incomplete information to, someone who is preparing a record. If you believe that a record was intentionally falsified or created to be misleading, you must contact Internal Audit or the Compliance Guideline.

### 3.1.2  Promoting Transparent and Complete Disclosure

Verizon Wireless is committed to transparency in financial reporting to enhance investors' understanding of the company's business and to facilitate informed investment decisions. All disclosures made in financial reports and public documents filed with the Securities and Exchange Commission, and other public communications, must be full, fair, timely, accurate and understandable.

You must not selectively disclose (whether in one-on-one or small discussions or meetings) any material information regarding Verizon Wireless, its securities, business operations, plans, financial condition, results or any development or plan. You should be particularly careful not to disclose such information if you make presentations or proposals to customers, business providers, investors or to any other third party.

To ensure accurate reporting, Verizon Wireless employs both internal and outside auditors. You must cooperate with and provide any auditor or investigator accurate, timely and truthful information. You must not improperly influence, manipulate or mislead any auditor or investigator. Failure to cooperate with any audit or related investigation will result in discipline, up to and including termination of employment.

13

**Verizon_Travers_000418**

### 3.1.3   Retaining Company Records

Company records must be retained according to applicable laws, Verizon Wireless' Records Management Policy and the Verizon Wireless Records Retention Schedule, which are accessible to employees on the VZWeb>About Us>Corporate Policy>Records Management & Retention. You may never destroy, alter, mutilate or conceal any record if you have been directed to retain it or if you know - or reasonably believe there is a possibility - of any litigation or any internal or external investigation concerning that record. If any person directs you to violate this policy, you must immediately contact the Legal Department or Verizon Wireless Corporate Security and use all reasonable measures to protect the record.

### 3.2   Safeguarding Company Information

You must protect company information, both non-public information, that includes "inside information" (information that could reasonably lead a person to buy, sell or hold Verizon Wireless' or another company's securities) and non-public information entrusted to Verizon Wireless (such as an unlisted telephone number, marketing presentations or correspondence), as well as publicly available information in which Verizon Wireless or others have intellectual property rights (such as copyrighted materials).

### 3.2.1   Protecting Non-public Company Information

You must safeguard non-public company information by following company policies and procedures and contractual agreements for identifying, using, retaining, protecting and disclosing this information.

You may not release non-public company financial information to the public or third parties unless specifically authorized by Verizon Wireless' Controller.

You may not release other non-public company information to the public, third parties or Internet forums (including blogs or chat rooms) unless you are specifically authorized to do so by both a vice president responsible for that information and Corporate Communications.

You may only disclose non-public company information to employees who have demonstrated a legitimate, business-related need for the information.

If you receive a subpoena or court order that requires the disclosure of non-public information, you must coordinate your response with the Legal Department.

Even after the company releases information, you should be mindful that related information may still be non-public and must be protected.

Your obligation to safeguard non-public information continues after your employment with the company terminates. Without Verizon Wireless' specific written prior authorization, you may never disclose or use non-public company information.

If you suspect or are aware of any improper disclosure of non-public company information, you must immediately report it to Verizon Wireless Corporate Security or the Compliance Guideline.

You must comply with all company policies relating to the encryption of sensitive information. For example, all company laptops must be encrypted, and you must encrypt files containing sensitive information prior to sending them via e-mail.

**Q.** During my commute to the office on the train, I sometimes make work related calls. Is this a problem?

**A.** You must be careful not to discuss non-public company information in public places, such as in taxis, trains, elevators or at conferences and trade shows. When it is necessary to conduct a telephone call in a public place, be mindful of your surroundings.

14

**Verizon_Travers_000419**

A. If you have reason to believe that the blogger was not authorized to post the information and that it is non-public, you should contact your supervisor and Legal to receive guidance before using the information.

Do not acquire or disclose non-public information.

Corporate credit cards are to be used only for approved business purposes.

### 3.2.2 Acquiring Non-public Company Information of Others

You cannot accept non-public information belonging to a third party (including information from a former employer) unless the person disclosing the information is authorized to do so, Verizon Wireless has the owner's written permission to receive it and the information is provided according to a written agreement that has been approved in advance by your supervisor and the Legal Department.

## 3.3 Proper Use of Verizon Wireless' Property and Property Owned by Others

You must always protect Verizon Wireless' tangible and intangible property and any property entrusted to your care by customers or business providers. Company property and the property of co-workers, customers and business providers may not be taken, sold, loaned, given away or otherwise disposed of, regardless of its condition or value, without specific authorization. Property includes, but is not limited to, tangible property, data, records and all communications.

Unless permitted by written company policy, it is never appropriate to use Verizon Wireless machinery, switching equipment or vehicles for personal purposes, or any device or system to obtain unauthorized free or discount service.

### 3.3.1 Company Benefits

Verizon Wireless' benefits plans and programs are provided as compensation and must be used honestly. You must not misrepresent your health status, your covered members, your beneficiaries, or any other facts, including reasons for absence, in order to claim benefits to which you or others are not entitled.

### 3.3.2 Company Property and Funds

Company property and funds - which include anything that has or represents financial value - must be handled responsibly, honestly and in accordance with applicable company policies. Personal or unauthorized use of company funds is strictly prohibited. Corporate credit cards must be used solely for authorized business purposes and may not be used for personal charges.

### 3.3.3 Work Time

You must keep accurate records regarding your work time. You may not instruct another employee to misreport or fail to report any time worked. Overtime eligible employees must report all time worked. By submitting your time, you are representing that you have accurately reported your time and that you have not performed any work not reported. You may report any questions about time reporting, or any concerns you have about the accuracy of your wages, including any claim that you have not been paid for all hours worked, or that any deductions from your wages are improper or in error, to Human Resources, the Verizon Services Payroll Department or to the Compliance Guideline.

15

### 3.4 Protecting Company Communication and Information Systems

Communication and information systems, including company computers and mobile devices, are provided to employees to conduct Verizon Wireless business and are valuable assets that must be protected by all employees. You must protect company information and data from accidental or unauthorized disclosure, misuse, improper alteration or destruction. Limited personal use of communications equipment is permissible so long as it does not interfere with work responsibilities or business operations, incur inappropriate costs, violate the law, this Code or Verizon Wireless policy.

You must protect the security of any identification access number, user ID or password that you use for any computer, network application or communication device. All electronic media – such as software, diskettes, CD-ROMs and files – when acquired through public networks (e.g., the Internet) or from outside parties, must be checked for viruses prior to installation or use. Only approved and properly licensed software is to be used on company systems and its use is subject to the applicable software owner's license agreements. You must comply with applicable company policies when acquiring, accessing, using, altering, disposing of or destroying data, or when commenting on data over public networks (e.g., the Internet).

### 3.4.1 Prohibited Activities

You may never use company systems (such as e-mail, instant messaging, the Intranet or Internet) to engage in activities that are unlawful, violate company policies or result in Verizon Wireless' liability or embarrassment. Some examples of inappropriate uses of the Internet and e-mail include:

- Pornographic, obscene, offensive, harassing or discriminatory content;
- Chain letters, pyramid schemes or unauthorized mass distributions;
- Communications on behalf of commercial ventures;
- Communications primarily directed to a group of employees inside the company on behalf of an outside organization;
- Gambling, auction-related materials or games;
- Large personal files containing graphic or audio material;
- Violation of others' intellectual property rights; and
- Malicious software or instructions for compromising the company's security.

Also, you may not send e-mail containing non-public company information to any personal e-mail or messaging service unless authorized to do so by your supervisor and you comply with company requirements relating to the encryption of information.

**Q.** Can I check the weather on the Internet with my computer?

**A.** Limited personal use of company systems is permissible if it conforms to Code standards.

**Q.** A friend sent me a chain letter e-mail requesting that I forward to ten others to support a charitable cause. Is this O.K.?

**A.** No. Circulating chain letters through company systems or mail is prohibited.

16

**Verizon_Travers_000421**

## 3.5 Security of Facilities

Always wear/display your Identification badge at work.

Verizon Wireless' operations must be appropriately secured to protect our customers and each other. This includes customer and employee personal information, network operations and facilities, computer systems and passwords, security procedures, company facilities and their locations, technical and marketing research data, product development information and business plans and strategies.

Always protect Verizon Wireless' property.

Never compromise integrity for a quick solution.

You must take all appropriate precautions to protect Verizon Wireless' systems and premises. Do not leave visitors unescorted or sensitive areas unattended or unlocked. When on company property (or, if appropriate, while on company business) wear your identification badge and request identification from others whom you do not recognize. Most importantly, you must immediately report all suspicious activity to Verizon Wireless Corporate Security.

## 3.6 Intellectual Property

Intellectual property can be many things such as marketing strategies, business plans and other items. If you are not certain, contact the Legal Department.

Intellectual property includes information protected by Verizon Wireless' trademarks or copyrights, the use of which is restricted by applicable intellectual property laws. To safeguard Verizon Wireless' intellectual property from illegal copying or other misuse, employees must ensure it is affixed with or identified by trademark, service mark or copyright symbols.

If you're unsure whether or what protection is necessary or appropriate, or if you believe disclosure or use by a third party is improper, contact the Legal Department.

### 3.6.1 Proper Use of Others' Intellectual Property

You must respect the proprietary rights of others by complying with all applicable laws and agreements that protect the intellectual property rights of others, including all business providers, competitors or customers. Unless you obtain the intellectual property owner's specific prior consent, you may not copy, distribute, display, perform, or modify third-party copyrighted materials or conduct peer-to-peer or other file sharing of copyrighted materials. A work may be protected by a copyright even if there is no notice on the work.

### 3.6.2 Information of Former Employers

Former employers may have required you to sign non-disclosure or other agreements that may affect your work at Verizon Wireless. If you have not disclosed these to your supervisor by the time of hire, you must do so immediately.

17

**Verizon_Travers_000422**

## 3.7   Handling External Communications

Unless you receive prior approval, you may never suggest that you are speaking on behalf of Verizon Wireless when presenting your personal views at community, professional or cultural functions or on the Internet.

Use of the company brand and logo must adhere to approved corporate identity specifications. To seek guidance or report misuse, contact the Legal Department.

Verizon Wireless will generally deny requests for company-sponsored endorsements or testimonials. All requests, including the use of Verizon Wireless' name or an employee endorsement in any business provider's advertising or literature must be coordinated and approved by Corporate Communications.

Requests and inquiries must be referred to the authorized groups described below:

- **Corporate Communications** is responsible for contacts with the news media and inquiries about community relations.

- **Finance and Corporate Communications** handles communications related to Verizon Wireless' financial performance and all contacts with the financial community.

- **The Legal Department** handles contacts from outside attorneys, legislative bodies and regulatory agencies.

- **Human Resources** handles inquiries regarding current and former employees, including employment verification.

- **The Law Enforcement Resource Team** responds to subpoenas and court orders.

- **Verizon Wireless Corporate Security and the Legal Department** responds to criminal inquiries and interface with law enforcement on security matters, including emergency response.

**Corporate Communications:**
VZWeb>Who We Are>
Corporate Communications

**Human Resources:**
VZWeb>About You>
HR Guidelines

**Law Enforcement
Resource Team (LERT):**
800.451.5242

**Verizon Wireless
Corporate Security:**
908.306.7900

**Legal Department:**
VZWeb>Who We Are>
Legal & External Affairs

*For approval to speak externally on behalf of Verizon Wireless, please contact Corporate Communications.*

**Verizon_Travers_000423**

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 60 of 112 PageID #: 1070



# Maintaining Integrity and Fairness in the Marketplace

Verizon Wireless' integrity in the marketplace is a key component of our reputation for trustworthiness and service.

## 4.1   Customer Relationships

Verizon Wireless' customers expect and deserve fair, honest and respectful service. You are accountable for your role in the delivery of that standard of service.

### 4.1.1   Customer Privacy and Communications

Verizon Wireless' privacy policies inform customers about what information is collected about them and how it is used. Customers are also given the ability to limit certain uses of their information. You must respect these choices. Verizon Wireless' privacy policies may be found at: **http://myedms.verizon.com/corporate/legal/lg/privacy/index.shtml**. Verizon Wireless' Privacy Office can also assist with specific questions or concerns.

Except as otherwise required by the duties of your position, you must not – and must not permit others to – access, listen to, monitor, record, tamper with, disclose or intrude upon any customer conversation or communication, except to comply with a valid service or installation order, a valid legal order or applicable law, or for the limited purposes of quality monitoring and training, as approved by the Legal Department.

In addition to protecting customer communications, you must also protect customer information. That means you may not access, view, use, modify, share or distribute customer information without a proper business reason. You also may not access account information concerning yourself, your friends, acquaintances, family or coworkers without prior approval by your supervisor.

Verizon Wireless contractors and vendors must also protect customer information. You should work with the Legal Department to ensure that contracts with these third parties protect customer information. If you are aware of or suspect unauthorized access to, disclosure, or loss of customer information, you must immediately notify the Legal Department, Verizon Wireless Corporate Security or the Compliance Guideline.

### 4.1.2   Customer Marketing

Before using any customer information to market additional products or services, or disclosing customer information to other companies for marketing purposes, you must follow all company policies and applicable laws and regulations regarding the use and disclosure of this information.

When customers are also telecommunications carriers or resellers of telecommunications, you should not use their subscriber information, orders or processes/services to aid in Verizon Wireless' retail marketing or sales efforts.

Treat customers fairly in all aspects of transactions, including pricing, advertising, marketing and service solutions.

Protect customer confidential information and respect customer privacy by following the Verizon Wireless Privacy Principles.

19

**Verizon_Travers_000424**

### 4.1.3   Selling with Integrity

Verizon Wireless' policy requires that we fully, clearly and directly inform our customers of the terms and conditions of our services.  Any attempt to deceive a customer will not be tolerated and may result in disciplinary action up to and including termination of employment.  The following guidelines must be followed at all times:

- All advertising and sales materials must be truthful and accurate.  Materials must not be false, misleading or have a tendency to deceive.  All claims must be substantiated in advance with a factual basis and back up.  No advertising or sales materials will be released without Legal Department approval.

- When advertising the price of Verizon Wireless' products and services, the customer must be clearly informed of all monthly and per-use fees and any other material terms and restrictions for obtaining the advertised rate in marketing and promotional materials.  There will be no "hidden" charges.

- Comparisons to competitors must be accurate and substantiated at the time they are made.  Do not disparage competitors.  You should promote Verizon Wireless' products and services through fair and accurate comparisons with its competitors, and sell on the strength of Verizon Wireless' products, services and reputation.  Do not make misleading or inaccurate comparisons with competitors' products and services; comment on competitors' character, financial condition or potential legal or regulatory problems; or make negative remarks about entire groups of competitors and their products and services.

- There are strict rules regarding sales and promotions.  They must be followed without exception.  For example, you cannot use the word "free" without full disclosure of all material conditions disclosed in close proximity to the word.

### 4.2   The Government as a Customer

When dealing with government agencies that are customers, you should consult with the Legal Department to identify additional laws, regulations and procedures that you must follow, including those related to gifts, entertainment, accuracy in billing and limitations on contacts with government officials during active government procurements.

### 4.2.1   Court Orders and Other Legal Documents

Verizon Wireless may receive court orders seeking information about its customers.  You may neither confirm nor deny to any unauthorized person the existence of, or any information concerning, a subpoena, warrant or court order.  You should immediately refer to Verizon Wireless Corporate Security any inquiries or requests of this kind.

If you receive any legal documents in the workplace, including court orders and subpoenas, warrants, summons and correspondence from any government or law enforcement agency, or any attorney, you must forward them immediately to the Legal Department.

*Provide accurate and clear information.*

*Learn and follow all additional requirements when dealing with the government as a customer.*

*Ethical behavior is promoted by full and open disclosure.*

**Verizon_Travers_000425**

### 4.2.2 Classified and National Security Information

You must take all necessary steps to protect classified and national security information and you must coordinate all activities related to this information with Verizon Wireless Corporate Security and Legal Department personnel who have appropriate clearance. It is never appropriate to disclose this information to another person without explicit approval from the Legal Department.

### 4.3 Selecting and Maintaining Relationships with Business Providers

You must use care and good judgment in selecting and maintaining relationships with all of Verizon Wireless' business providers. Employees who participate in the selection of any business provider must:

- Use a selection process that is fair, lawful, does not improperly discriminate and complies with all company policies and procedures;
- Ensure business providers are apprised of their obligation to abide by Verizon Wireless' standards of business conduct and the Verizon Wireless Supplier Code of Conduct;
- Put all agreements in writing and obtain all required approvals before signing; and
- Never reveal confidential information about one vendor to another vendor or to anyone outside of Verizon Wireless. Disclosures of such information, even within Verizon Wireless, should be limited to those with a need to know the information.

### 4.4 Gifts and Entertainment

The exchange of gifts and entertainment can promote successful working relationships and good will. However, failure to follow applicable laws as well as company rules and procedures can harm Verizon Wireless' reputation or result in civil or criminal penalties.

Regardless of value, the appearance of influence must always be considered before accepting any gift, entertainment or other business courtesy. You may not use your own money or resources to offer gifts or entertainment to a customer or vendor if these activities otherwise would be prohibited using Verizon Wireless' resources. In addition, when you offer gifts or provide entertainment to others consistent with this Code, you must also ensure that these courtesies are properly reflected on Verizon Wireless' books and records.

### 4.4.1 When Gifts are Appropriate

A "gift" is anything of value, including promotional trinkets, food, beverages and tickets to cultural or sporting events, that you or someone in your family or household - or a person with whom you have a close personal relationship - either give or receive.

To be appropriate, a gift (whether it is given or received) must be in compliance with applicable laws and:

- Unsolicited;
- Not cash or usable as cash (including gift cards and gift certificates, unless they have been approved as part of a Verizon Wireless marketing promotion or other authorized Verizon Wireless program and approved by the Legal Department); and

**Q.** My wife manages a training consulting firm. Can she submit a proposal to become a Verizon Wireless vendor?

**A.** You should report this relationship to your supervisor, refer the matter to Corporate Sourcing and refrain from participating in Verizon Wireless' discussions or relationship on this matter.

**Q.** A vendor has offered me tickets to a baseball game. Can I accept them?

**A.** Possibly. If the vendor is inviting you to attend the game with him/her, this may constitute business entertainment and must comply with the Code's standards for business entertainment. If the vendor is not attending, then the tickets would be considered a gift and must comply with the Code's standards for accepting gifts.

21

**Verizon_Travers_000426**

- No more than $100 in face value in a calendar year to or from the same organization, unless approved by a director level or above supervisor and the Office of Integrity & Compliance.

### 4.4.2 When Entertainment is Appropriate

Entertainment includes meals and cultural or sporting events that you attend with a customer or business provider. If you do not attend the event with the customer or business provider, the tickets to such an event are not entertainment, but rather "gifts," which are subject to the gift restrictions in this Code.

To be appropriate, entertainment must be in compliance with applicable laws and:

- Offered or accepted in the normal course of business;
- Attended by both a Verizon Wireless employee and a business provider's employee and be an occasion where business is discussed;
- No more than $200 in value per occasion, per person, unless approved by a director level or above supervisor and the Office of Integrity & Compliance; and
- At a venue and conducted in a manner that does not violate other provisions of this Code or harm the company's reputation (e.g., an event at an adult entertainment venue is not acceptable).

### 4.4.3 Prohibited Exchanges

Even if the gift or entertainment meets the above standards, you must not exchange it if: (a) it is intended to improperly influence another person's business judgment; (b) it might create the appearance of undue influence, unfairness or impropriety; or (c) you are participating in, conducting or directly supervising a formal Verizon Wireless procurement process (such as a request for bids).

Employees are not permitted to receive tips and you should politely decline any that are offered to you.

### 4.4.4 Gifts Involving Travel or Lodging

You are prohibited from receiving gifts of travel or lodging unless you receive the prior approval of the Office of Integrity & Compliance.

### 4.4.5 Returning Gifts

If a gift exceeds the standards set forth in this Code, you should return the gift with an explanation that company standards do not permit you to accept such gifts. If returning a perishable item is not feasible, it should be anonymously donated to charity or accepted on behalf of Verizon Wireless and shared among all employees in the office. If shared, the gift's value per person should not exceed the $100 calendar year limit.

If you receive a gift that falls outside of the Verizon Wireless standards and you are unable to return it, you must contact the Compliance Guideline for appropriate documentation, safeguarding and disposition of the gift.

---

You should never use gifts and entertainment to place undue influence on Verizon Wireless' business providers.

Q. My sales team is working on Verizon Wireless' bid response to a non-government customer's Request for Proposal. I would like to take the customer to dinner to discuss our proposal. Can I pay for the customer's meal?

A. Yes, it is permissible to pay for the meal as long as it conforms with the Code's standards for business entertainment, applicable policies and legal standards. However, the exchange of gifts during a procurement process is improper because such gifts can create the appearance of undue influence.

22

**Verizon_Travers_000427**

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 64 of 112 PageID #: 1074

### 4.4.6 Gifts Outside the Workplace

Employees who are personal friends of customers or business providers might wish to exchange gifts outside of the workplace for appropriate events (such as a wedding or baby shower). These exchanges should be infrequent, disconnected from any work activities and disclosed to a supervisor beforehand to ensure that they do not improperly influence or appear to influence business decisions.

### 4.4.7 Gifts and Entertainment Involving Government Officials

Any gifts, meals, refreshments or entertainment to government officials and employees must also comply with the rules of the particular agency with which you are dealing and any other applicable laws.

Special rules apply to interactions with government officials. Laws, rules and regulations concerning appropriate gifts and entertainment for government employees are complex and can vary depending on government branch, state or other jurisdiction. Additionally, the Foreign Corrupt Practices Act (discussed further in section 4.9.4) restricts the exchange of gifts and entertainment with foreign (non-U.S.) officials. All Verizon Wireless employees who, on Verizon Wireless' behalf, interact with government officials of any country are responsible for complying with applicable laws and regulations. You should consult with the Legal Department if you have any questions about the applicable legal standards.

### 4.5 Bribes, Kickbacks and Loans

It is never appropriate to offer, pay, or receive bribes or kickbacks (including to or from any government official or employee), which can subject you to civil or criminal penalties. You should immediately notify the Legal Department about any payment or gift that is offered to you, or requested from you, that you believe may be a bribe, kickback, solicitation of a bribe or kickback, or otherwise improper.

It is never appropriate to offer or accept personal loans or guarantees (e.g., preferences or discounts not offered widely) to or from customers, business providers or competitors of Verizon Wireless.

### 4.6 Relationships with and Obligations of Departing and Former Employees

Your obligation to abide by company standards exists even after your employment with Verizon Wireless ends. The following requirements apply to all current, departing and former Verizon Wireless employees:

You may not rehire or contract with a former employee unless that person has been separated from the company for a minimum time period of six months. Any exceptions must comply with this Code and applicable policy.

- When leaving or retiring, you must ensure that you return all Verizon Wireless property in your possession, including all records and equipment.

- You may not breach any employment condition or agreement you have with Verizon Wireless. You may not use or disclose Verizon Wireless non-public information in any subsequent employment, unless you receive written permission in advance from a Verizon Wireless vice president level or above supervisor and the Legal Department.

- You may not provide any Verizon Wireless non-public company information to former employees, unless authorized. If a former employee solicits non-public information from you, you must immediately notify Verizon Wireless Corporate Security or the Legal Department.

23

**Verizon_Travers_000428**

- Except as authorized below, you may not rehire a former employee, engage a former employee as an independent contractor or contingent worker, or purchase products or services on Verizon Wireless' behalf from a former employee unless that former employee has been separated from the company for at least six months.
- In extremely limited circumstances, the Vice President -- Human Resources may, in writing prior to the engagement, and upon finding a compelling reason, approve the rehire of a former employee or the engagement of a former employee as an independent contractor or contingent worker within six months of that person's separation.
- A vice president level or above supervisor may, in writing prior to the purchase, and upon finding a compelling reason, approve the purchase of products or services on Verizon Wireless' behalf from a former employee within six months of that person's separation. Where a former employee has been separated from Verizon Wireless for more than six months, authorization from your supervisor must be obtained before products or services are purchased from that former employee.

If you are concerned that a former Verizon Wireless employee is benefiting unfairly from information obtained while employed at Verizon Wireless, or may be inappropriately receiving Verizon Wireless non-public information, you should contact the Compliance Guideline for guidance.

## 4.7   Interaction with Competitors

Verizon Wireless is dedicated to ethical, fair and vigorous competition. We will sell our products and services on the basis of their merit, superior quality and competitive pricing. Any questions concerning competition laws should be reviewed with the Legal Department.

> We sell our products and services on the basis of their merit, superior quality and competitive pricing.

### 4.7.1   Avoiding Violations of the Antitrust Laws

The U.S. antitrust laws prohibit two kinds of activities. If you have any questions about whether any activity falls into the following categories, or if you have any information about someone in the company engaging in the following types of conduct, you must contact the Legal Department.

You should also contact the Legal Department to determine the applicability of antitrust or competition laws of any other country in which you conduct business.

First, the antitrust laws prohibit agreements with competitors fixing prices, dividing markets, rigging bids or otherwise limiting competition. Both explicit agreements and informal "gentlemen's agreements" are against the law. Violation of these prohibitions may result in serious consequences for you or the company, including criminal penalties and imprisonment.

The following activities are prohibited:

- **Price Fixing:** You must not agree with a competitor on prices or set prices in concert with a competitor.
- **Market Allocation:** You must not agree with a competitor to divide markets or engage in any communications with competitors about the places or customers for which they or Verizon Wireless are competing.

24

Verizon_Travers_000429

**Q.** I have established good relations with the account executives of some of our competitors. At trade shows and conferences we often catch up on industry trends, customer deals, etc. Is this appropriate?

**A.** Use caution in these situations and do not discuss the price or terms of any Verizon Wireless contracts or gain competitive information directly from a competitor. You should not even joke about work related topics since this could be misinterpreted. You should refuse to discuss any anti-competitive issues and leave such conversations immediately.

You must make independent pricing and marketing decisions and cannot coordinate your actions with Verizon Wireless' competitors.

Deal fairly and honestly in all activities, including pricing, licensing and rights to sell.

25

- **Bid Rigging:** You must not agree with a competitor to set the terms or direct the outcome of a bidding process. You also must not engage in any communications with competitors about bids.
- **Group Boycotts:** You must not boycott a supplier or customer as a way to make the supplier or customer stop dealing with a rival. A group boycott - an agreement with others not to deal with another person or business - may violate the antitrust laws if it is used to force customers to pay higher prices or to hinder a rival from entering the market.

In addition, you should be careful of the following:

- **Joint Ventures, Teaming Arrangements and Non-Competition Agreements:** The antitrust laws do not prohibit all joint ventures or teaming arrangements. Sometimes, agreements not to compete are permissible as part of otherwise valid business arrangements. But those occasions are limited and must be approved by the Legal Department. You may not submit a joint bid, enter into a joint venture or teaming arrangement or negotiate a non-compete agreement without the approval and involvement of the Legal Department.

Second, the antitrust laws prohibit certain types of unilateral conduct, that is, conduct undertaken by Verizon Wireless alone. Violation of this prohibition may result in large fines and judgments against the company.

You must not engage in the following conduct:

- **Sabotage:** Do not tamper with competitors' products, sales materials or other property.
- **False Statements:** When making comparisons to a competitor, stick to the facts. Do not embellish, exaggerate or mislead.

The antitrust laws limit the circumstances in which certain business or marketing decisions are permissible. Before engaging in any of the conduct described below, consult the Legal Department for guidance:

- **Exclusive Dealing:** Exclusive dealing occurs when a company requires, as a condition of doing business, that a customer forego dealing with competitors.
- **Resale Prices:** Resale price setting occurs when a company establishes the price that resellers or distributors charge for Verizon Wireless' products.
- **Refusals To Deal:** Refusals to deal occur when a company declines to offer to one customer a service that it makes available to other customers, or when a company offers a service to one customer on more burdensome terms than it makes available to other similarly situated customers.
- **Tying:** Tying occurs when a company forces a customer who wants one product to buy a second product also, as a condition of buying the desired product.
- **Reciprocal Dealing:** Reciprocal dealing occurs when a company forces a supplier to buy something from the company as a condition for the company continuing its business relationship with the supplier.

**Verizon_Travers_000430**

- **Bundling:** Bundling occurs when a company offers a discount on one product if it is purchased together with another.
- **Below-cost Pricing:** Pricing below cost occurs when a company does not recover its costs for a particular product, or bundle of products.

### 4.7.2  Gathering Information About Competitors

While it is entirely proper for employees to gather information about competitors, you must avoid even the appearance of improperly acquiring this information. You must accurately represent yourself and never misrepresent your identity when gathering competitive information. You must also ensure that any agents or consultants employed to obtain competitive information on Verizon Wireless' behalf also represent themselves accurately and follow these principles.

Generally, it is appropriate to gather competitive information from public sources, industry gatherings and surveys and benchmarking/competitive research. It is never appropriate to request or obtain non-public competitor information from government or agency reports that are not available to the public from other competitors or former employees of competitors, who must abide by any non-disclosure or confidentiality agreements with their former employers, unless you are well briefed beforehand by the Legal Department regarding what you can and cannot discuss. It is also never appropriate to commit theft, espionage or breach of a competitor's non-disclosure agreement. To the extent that information is clearly private or marked in such a way as to indicate it is private, you should not use it and should contact the Legal Department for guidance.

If you have reason to believe that competitive information from customers or others may not be public, you should consult with the Legal Department before accepting or using this information.

### 4.8  Relationships With Affiliates

In order to ensure that Verizon Wireless' controlling owner, Verizon Communications' organizational structure is not used unfairly, all transactions between and among the Verizon companies (also called "affiliates") must comply with company policy and all applicable laws and regulations, including affiliate pricing and Customer Proprietary Network Information (CPNI) requirements.

### 4.9  International Relationships

Verizon Wireless must abide by the laws, rules and regulations of countries where we do business. If your job, or the jobs of anyone you supervise, involves business with customers or vendors in another country, you must be familiar with all laws that impact your work. Because cultural differences and local customs or laws may raise issues, prior to engaging in any international business, you should review this section and discuss these issues with your supervisor and the Legal Department or the Office of Integrity & Compliance.

> Accurately identify yourself when you gather public information about competitors.

> When working abroad, you must adhere to this Code of Conduct, as consistent with applicable laws.

### 4.9.1  Locating Offices or Receiving Services Outside of the United States

If you are considering locating or moving a project, unit, group or any Verizon Wireless activity outside the United States, or obtaining services from employees or external providers located outside the United States (including any call center or IT services from individuals located outside of the United States), you must contact the Legal Department to determine the rules, policies and laws that may apply.

### 4.9.2  Compliance with Screening Requirements of the Office of Foreign Asset Control (OFAC)

The regulations promulgated by the Office of Foreign Asset Control (OFAC) of the U.S. Department of the Treasury prohibit any U.S. person, including employees of U.S. companies located outside the U.S., from transferring, paying, receiving or otherwise dealing in property or an interest in property belonging to or under the control of a large number of specially designated individuals and entities (the OFAC List). Violations of these regulations can result in substantial fines and imprisonment.

To comply with the OFAC regulations, those entities with which we transact directly must be screened against the OFAC List. In addition, we must not transact indirectly, through our contractors, tenants, landlords or vendors, with individuals and entities on the OFAC List. To this end, compliance with the OFAC regulations is also an integral obligation of our agents, vendors, suppliers and other third parties, as reflected in our Supplier Code of Conduct and our OFAC Export Control Guidance for Vendors & Suppliers. Verizon Wireless' OFAC program is described at: **http://myedms.Verizon.com/corporate/legal/ig/export_controls/.**

You should contact the Legal Department or the Office of Integrity & Compliance to confirm compliance with OFAC screening requirements.

### 4.9.3  Import/Export Control

It is Verizon Wireless' policy to comply with all import and export laws and regulations, including the Export Administration Act and the International Traffic in Arms Regulations (ITAR), as well as the import and export laws and regulations of all countries applicable to our global business. Failure to do so could result in civil and criminal penalties, imprisonment and the loss of Verizon Wireless' ability to import or export products and services and retain government contracting privileges. Verizon Wireless' Export Control Compliance program is described at: **http://myedms. Verizon.com/corporate/legal/ig/export_controls/.**

Because specific authorizations or licensing may be required for particular transactions, you should contact the Export Control Coordinator and the Legal Department or the Office of Integrity & Compliance before:

- Exporting via physical shipment, electronic means or any other means of transfer any product, service or technical information from the U.S. or moving it between or among countries. Technical information can consist of manufacturing processes, product use or commercial and technical expertise, data or software;

It is important to remember that export regulations likely exist and will need to be adhered to, regardless of the country from which an export originates. Most countries have implemented comprehensive export control regimes. Contact the Office of Integrity & Compliance or the Legal Department prior to shipping across borders.

27

**Verizon_Travers_000432**

- Exporting products or services identified on the U.S. Munitions List contained in the ITAR;

- Taking any product, service or technical information with you when you travel to another country on personal or company sponsored business;

- Providing any product, service or technical information to parties that previously have been denied an export license; or

- Discussing with or displaying to foreign nationals (including Verizon Wireless employees), whether inside or outside the U.S., any Verizon Wireless technical data, equipment or non-public information or its application, whether in the U.S. or abroad, either on company or personal business.

You should consult the Export Control Coordinator or the Office of Integrity & Compliance to identify situations that may require written assurance by non-U.S. recipients that they will abide by U.S. export control regulations.

### 4.9.4 Payments, Lobbying, Expenses and Recordkeeping Requirements Internationally

The payments we make, lobbying we conduct and expenses we incur in the course of doing business internationally must reflect the value of the services actually provided, be directed to proper business purposes, be made to legitimate business service providers and meet the requirements of the laws of the U.S. and of other countries where we do business.

One key law governing our conduct of business in other countries is the Foreign Corrupt Practices Act (FCPA), which applies to Verizon Wireless' officers, directors, employees and agents and any stockholders acting on behalf of Verizon Wireless. Generally, it is a violation of the FCPA to make payments or related offers, or to provide any other benefit, to or for the benefit of a foreign (non-U.S.) official. Before offering meals, gifts, gratuities, entertainment or anything of value to any foreign (non-U.S.) official, personnel, political party, party official or candidate, you must consult the Legal Department or the Office of Integrity & Compliance regarding compliance with the FCPA, other applicable law and Verizon Wireless standards. Verizon Wireless' FCPA Compliance program is described at **http://myedms.verizon.com/corporate/legal/ig/export_controls/.**

Additionally, you must never make payments to a third party that you suspect may be passed to officials outside the U.S. or other persons to improperly influence any person's decision-making to secure, retain or direct business for Verizon Wireless. You must not use an agent to make any payment that Verizon Wireless itself cannot make. Whenever you retain any agent in connection with our global business, you must make sure that you can properly trace any funds provided to the agent to ensure that they are not used to make improper payments to government officials or their representatives.

Regardless of the customs of a particular country, you must be careful to follow company standards, local laws and U.S. laws regarding doing business with non-U.S. officials or their family members.

**Q.** In conjunction with a deal I am working on, a government official has asked Verizon Wireless to pay a "processing fee" to expedite clearing customs. What should I do?

**A.** "Expediting" or "facilitating" payments are unlawful in many circumstances and are generally prohibited at Verizon. You must immediately notify Corporate Compliance Counsel or your business unit Legal Department Vice President about any requests to pay what you believe may be an expediting or facilitating payment.

Verizon_Travers_000433

You should consult with the Legal Department or the Office of Integrity & Compliance if you have any questions about the FCPA or its application. Detailed guidance on your compliance requirements under the FCPA is available in the FCPA Handbook for General Users located on the Verizon Export Control Intranet site.

Verizon Wireless is required to accurately record information regarding payments, including the amount and recipient. These record-keeping requirements apply to any agents or consultants who represent Verizon Wireless. This means that you must ensure that Verizon Wireless - or any agent or consultant who acts on Verizon Wireless' behalf - properly documents all transactions and maintains accurate information with respect to the amount and ultimate recipient of contract payments, commissions and other payments.

### 4.9.5 Economic Sanctions and Embargoes

It is illegal under U.S. law for any U.S. company or person (including employees of U.S. companies located outside the U.S.) to engage in transactions with a number of designated countries, or with certain designated parties anywhere in the world (for example, groups that support terrorism). You should check with the Legal Department regarding sanctions and embargoes by the U.S. and other countries that prohibit conducting business in specific countries or with specifically identified parties.

In addition, because the United States and other countries have restricted travel to certain countries, employees who travel internationally must familiarize themselves with any prohibitions on travel due to sanctions or embargoes, restrictions on taking company assets into certain countries and the rules and procedures for obtaining and using business travel documents, including passports, visas, approvals and special documentation.

### 4.9.6 Illegal Boycotts

Verizon Wireless will not participate in boycotts of countries, their nationals or blacklisted companies, unless these boycotts are sanctioned by the U.S. government and participation by Verizon Wireless is approved by the Legal Department or the Office of Integrity & Compliance. Nor will Verizon Wireless disclose information about present or prospective business relationships in countries that are the subject of illegal or improper boycotts.

Unless approved by the Legal Department or the Office of Integrity & Compliance, you must not furnish information about:

- Verizon Wireless' past, present or prospective business relationships with illegally boycotted countries or blacklisted companies; or

- Any person's: a) race, religion, gender, national origin or nationality, b) membership in or support of a charitable or fraternal organization supporting boycotted countries, c) relationship with nationals of boycotted countries, or d) relationship with a boycotted country or blacklisted company; or

- Any person believed to be restricted from doing business with a boycotted country.

Any request for information regarding boycotted countries or organizations must be immediately referred to the Office of Integrity & Compliance.

Q. My business group was recently contacted by a foreign organization that wants to arrange for the purchase of certain services and products from Verizon Wireless. The organization is head-quartered in a country in which we have never done business. What should I do?

A. Before discussing business with this organization, you must first check with the Legal Department to determine if you will be doing business in a country or with an organization that is the subject of any legally imposed economic sanctions.

29

**Verizon_Travers_000434**

# CONCLUSION

It is not possible to describe all unethical or illegal business practices in detail. The best guidelines are individual conscience, common sense and unwavering compliance with all company policies, applicable laws, regulations and contractual obligations. Seek guidance if you are unsure of what to do, ask questions and report wrongdoing. Company policy strictly forbids any retaliation against an employee who reports suspected wrongdoing.

Violations of the law, the Code and other company policies, procedures, instructions, practices and the like can lead to disciplinary action up to and including termination of employment. Such disciplinary action may also be taken against supervisors or executives who condone, permit or have knowledge of improper conduct or fail to take action to prevent and detect violations, such as failure to provide training and failure to supervise subordinates' work. No one may justify an illegal or improper act by claiming it was ordered by someone in higher management. The following are examples of actions considered illegal or unacceptable:

- Theft or unauthorized access, use or disclosure of company, customer or employee records, data, funds, property or information (whether or not it is proprietary);

- Working under the influence of alcohol or illegal substances or abusing legal substances;

- Improperly operating a vehicle for company business, or driving while on company business with a suspended or revoked license, or while under the influence of drugs or alcohol;

- Using any program or promotion in an unauthorized manner;

- Engaging in any form of workplace violence, including, but not limited to, any act of physical intimidation or assault, including threats of violence;

- Soliciting or giving the impression that you would expect gifts or gratuities from suppliers or customers;

- Disparaging or misrepresenting the company's products or services or its employees;

- Falsifying a company record, such as a time report; and

- Misrepresenting your health status or other reasons for absence, such as misrepresenting yourself as disabled and receiving disability benefits.

30

Verizon_Travers_000435

## Sources of Help

Verizon Wireless provides many resources to help you make ethical decisions. In addition to your supervisor, you may consult with Human Resources, the Legal Department or call the Compliance Guideline.

The VZWeb (Intranet), contains expansive helpful contact and subject matter information. In addition, please reference the listing below for Compliance Subject Matter Experts.

## Compliance Subject Matter Experts

| | | |
|---|---|---|
| **Affiliate Transactions**<br>- business activities among affiliated entities such as Verizon Wireless and either Verizon Communications or Vodafone | William Sansalone<br>Jonathan Ratner | 908.559.2900<br>908.559.7400 |
| **Antitrust/Fair Competition**<br>- laws and regulations that govern business activities between competitors and prohibit agreements that restrain trade or reduce competition | Alison Brotman | 973.656.7918 |
| **Auditing** | Shane Sanders | 908.559.8020 |
| **Banking & E-commerce Initiatives**<br>- such as the establishment of banking accounts, the transfer of funds between accounts and reporting company financial transactions | Paul D'Auria<br>Bill Attinello | 908.559.8700<br>908.306.6820 |
| **Business Continuity/Crisis Management** | Gabe Esposito | 908.559.7375 |
| **Computer Information Security** | Robert Mechler | 908.607.7900 |
| **Consumer Clear Disclosure**<br>- protection of the consumer from unfair business practices | Jerome Karnick | 908.559.4591 |
| **Disabilities-Section 255 Access**<br>- access to telecommunications service and equipment to persons with disabilities | Mike Samsock | 202.589.3768 |
| **Due Diligence**<br>- ensuring that those with whom we enter agreements are not engaged in activities that are not in the best interest of Verizon Wireless | Molly Feldman<br>Area General Counsel | 908.559.5400<br>(see below) |
| **E-911**<br>- policies, laws and regulations relating to our provision of service to E-911 agencies | Robert Morse | 202.589.3745 |
| **Electronic Surveillance** | Kimberly Brown | 908.306.7899 |

31

**Verizon_Travers_000436**

| | | |
|---|---|---|
| **Employment Practices** | Alan Gardner<br>Vann Vogel<br>Celeste Como<br>Michelle Goldman<br>Mike Golabek | 908.559.5300<br>908.559.7427<br>908.559.7422<br>908.559.7424<br>908.559.5370 |
| **Environmental Issues**<br>- laws and regulations pertaining to hazardous substances, the<br>emissions of hazardous materials to air, land and water; and<br>environmental reporting requirements | Richard Craig<br>Rob Strobel | 908.559.7260<br>973.656.7053 |
| **FCC Licenses/State PUC Regulations**<br>- relating to FCC licenses, state utility commission regulations | John Scott | 202.589.3760 |
| **Government Contracting**<br>- with federal, state and local government organizations<br>and agencies | Adam Chmara<br>Area General Counsel | 240.568.1127<br>(see below) |
| **Handset Health & Safety**<br>- policy, laws and regulations concerning handset radio<br>frequency emissions | Andy Lachance | 202.589.3775 |
| **Immigration** | Wayne Paschke | 908.559.6396 |
| **Integrity Controls & Administrative Plans (ICAP)**<br>**Network**<br>- standards for physical and logical security of the Network,<br>department switches, cell sites and other Network locations | Chris Oberg | 301.512.2451 |
| **Intellectual Property/Proprietary Information**<br>- protection of copyrights, trademarks, service marks,<br>licenses, customer, company and employee information<br>- protection of patents & trade secrets | Alice Brennan<br><br>Joseph Palmieri<br>Neer Gupta | 908.559.7411<br><br>908.559.5607<br>908.559.1535 |
| **International Transactions**<br>- Includes compliance with export controls, antiboycott laws<br>and the Foreign Corrupt Practices Act | Alice Brennan<br>Jonathan Ratner<br>William Sansalone | 908.559.7411<br>908.559.7400<br>908.559.2900 |
| **Labor Relations** | Matt Antonek | 908.559.5306 |
| **Network Compliance** | Renato Delatorre | 908.559.7263 |
| **Numbering**<br>- requests for additional area codes and use of telephone<br>numbers | Mark Montano | 703.351.3058 |
| **Offshore Issues** | Charon Phillips | 202.589.3744 |
| **Political Activity/Lobbying**<br>- campaign finance, lobbying and other political activity | David Kass<br>*(Federal)*<br>Mike Bagley *(State)*<br>Dan Mullin *(State)* | 908.559.1672<br><br>949.286.8008<br>973.656.7913 |

32

**Verizon_Travers_000437**

| | | |
|---|---|---|
| **Privacy of Communications/Customer Data**<br>- the protection and use of customers' telecommunications services, billing records and the privacy of customer communications | Robert Mechler<br>Charon Phillips<br>Jerome Karnick | 908.607.7900<br>202.589.3744<br>908.559.4591 |
| **Procurement Contracts/Purchasing** | John Cuddy<br>Jonathan Ratner | 908.559.7444<br>908.559.7400 |
| **Property & Casualty Insurance**<br>- inquiries regarding coverage and claims | Al Rosenthal | 908.559.1356 |
| **Real Estate/Building Codes**<br>- ownership, operations, occupancy and use of company facilities | Area General Counsel | (see below) |
| **Records Management & Records Suspension Orders**<br>- retention and timely disposition of company records<br>- suspension of schedules to dispose of company records due to requirements imposed by governmental agencies, court orders or other official bodies | Patricia Sunar | 908.559.7442 |
| **Regulatory Compliance** | Andy Lachance<br>Suzan Palva<br>Joe Rugglero | 202.589.3775<br>215.466.4755<br>703.351.3824 |
| **Regulatory Reporting and Financial Accounting**<br>- required business practices, monitoring and tracking practices, documentation and financial accounting | William Sansalone<br>Doug Clark | 908.559.2900<br>908.559.8119 |
| **Risk Management**<br>- administering Company property and casualty insurance programs and loss control/mitigation initiatives | Al Rosenthal | 908.559.1356 |
| **Safety/OSHA**<br>- protection of employees and reporting required workplace injury or danger | Denny Bloom | 614.345.2728 |
| **Sales Contracts** | Kathy Lee | 908.559.7475 |
| **Sales Practices** | Compliance Guideline | 800.488.7900 |
| **Securities and Insider Trading**<br>- use of material insider information obtained in the course of employment concerning Verizon Wireless or any company with which Verizon Wireless is doing business or intending to do business | Alice Brennan<br>Jonathan Ratner | 908.559.7411<br>908.559.7400 |
| **Security** | Gabe Esposito | 908.559.7375 |
| **Spectrum Allocations**<br>- assignment of radio spectrum for commercial mobile use | John Scott | 202.589.3760 |

33

Verizon_Travers_000438

| | | |
|---|---|---|
| **Store Security/Loss Prevention**<br>- asset protection, accident reporting and anti-fraud consulting services for communication store personnel | Richard Alley | 678.339.4943 |
| **Subpoena/Court Order Compliance** | | 800.451.5242 |
| **Taxes**<br>- Federal, State and Local taxes applicable to Verizon Wireless services | William Van Saders | 908.559.1901 |
| **Tower Siting**<br>- FCC environmental rules, FAA issues | Andy Lachance | 202.589.3775 |
| **Vendor Relations**<br>- ensuring that relationships with vendors, suppliers and subcontractors avoid the appearance or perception of a conflict of interest and are based on the merits of the transaction | Jonathan Ratner<br>William Sansalone | 908.559.7400<br>908.559.2900 |
| **The Work Number**<br>- a company vendor that handles inquiries regarding verification of employment for both present and former employees and employee credit questions | | 800.367.2884<br>800.367.5690 |

## Area General Counsel

| | |
|---|---|
| **Midwest** | 847.619.5072 |
| **South** | 678.339.4958 |
| **Northeast** | 973.656.7918 |
| **West** | 949.286.7129 |

34

Verizon_Travers_000439

**verizon** wireless

© 2010, 2012 Verizon Wireless. All Rights Reserved.

Verizon_Travers_000440



September 2011

# Equal Employment Opportunity/Affirmative Action Policy

## POLICY SCOPE

This policy applies to all 100% owned or controlled subsidiaries of Verizon Communications Inc. ("Verizon"). This policy applies to all locations where employees work or represent Verizon, including the workplace, customer and vendor premises, and company sponsored activities.

## POLICY STATEMENT

Verizon Wireless' policy is to provide equal employment opportunity (EEO) to all persons without regard to *race, color, religion, age, gender, national origin, sexual orientation, disability, marital status, citizenship status, veteran status, military status or other legally protected classifications.* Verizon Wireless does not discriminate on the basis of any protected classification listed above, or other categories protected under federal, state or local law.

Verizon Wireless is committed to a workplace free from unlawful discrimination and harassment and will not tolerate discriminatory or harassing behavior of any kind. This commitment extends beyond that which may be required by law and strives to maintain a work environment totally free from discrimination or harassment. This zero tolerance policy applies to any conduct that has the purpose or effect of creating an intimidating, hostile or offensive work environment.

Prohibited harassment includes verbal, physical or other behavior that denigrates or shows hostility or aversion toward an individual because of that person's *protected classification* (above). Such harassment, and the discriminatory treatment of others based on their protected classification, is unacceptable regardless whether it is instigated by employees or non-employees, including contractors, interns, customers, vendors, suppliers and visitors.

It is also the policy of Verizon Wireless to take appropriate Affirmative Action to assure equal opportunity for all applicants and employees, without regard to race, gender, disability status and veteran status. Verizon Wireless invites all employees to voluntarily self identify on the basis of race, gender, veteran status or disability, for coverage under Verizon Wireless' Affirmative Action program. Disability related information will be kept confidential.

Verizon Wireless will make reasonable accommodations for the physical/mental impairments of employees or applicants if doing so will enable the employee or applicant to perform the essential functions of a position that he/she holds or is seeking, so long the accommodation would not cause an undue hardship to the business.

It is also the policy of Verizon Wireless to reasonably accommodate an employee's religious beliefs, practices and observances, unless doing so results in undue hardship to the company. However, employees may not impose their religious beliefs on other employees, customers, business suppliers or other stakeholders.

### Protection from Retaliation

Verizon Wireless prohibits any form of retaliation against applicants or employees for filing a complaint, reporting alleged violations or for cooperating in a company investigation. Committing any act of retaliation alone can be cause for appropriate corrective action, including termination of employment.

## RESPONSIBILITY - EEO

All employees are expected to adhere to this policy in their day-to-day working relationships and in carrying out their job responsibilities. Violations of this policy will result in appropriate corrective action. This can include termination of employment for severe violations, even for a first offense. Severe violations may include, but are not limited to, use of offensive racial or ethnic

Travers

EXHIBIT NO. 7

4|2-|13  S. Delao

slurs or other abusive or offensive language, or unwanted and inappropriate touching of a sexual nature.

Supervisors/managers are responsible for ensuring compliance with this policy and for providing a work environment free from any form of discrimination or harassment. Management is also responsible for ensuring that all employees under their supervision are fully aware of this policy and appropriate complaint procedures (below). Managers who have knowledge of conduct that violates company policy and fail to take the proper corrective action steps, or who otherwise condone such conduct, will themselves be subject to corrective action up to and including termination of employment. Supervisors/local management must notify Human Resources whenever they become aware of any unlawful discrimination or harassment matters. Human Resources is responsible for consulting with local supervision, conducting an investigation, where appropriate, and recommending corrective action when warranted.

**RESPONSIBILITY - Affirmative Action**
Human Resources is responsible for the coordination and facilitation of Verizon Wireless' Affirmative Action Program with Verizon Wireless managers and supervisors. Questions regarding the administration of this policy should be referred to Human Resources. The company's veterans/disabilities affirmative action plan is available for review during regular business hours upon request to Human Resources through the Compliance Guideline at 800-488-7900 or online at www.VerizonWirelessGuideline.com. Any inquiries, contacts or documents received from the U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) must be immediately referred to Human Resources.

**RESPONSIBILITY - Accommodations**
Employees or applicants are responsible for informing their management team or Human Resources of the need for accommodation. If you need accommodation for a disability in order to perform the essential functions of your job, contact your supervisor and your local Human Resources department for assistance. The Human Resources department will work with you to determine potential reasonable accommodations if doing so will enable you to perform the essential functions of your position. Business necessity, operational considerations, work rules and co-worker impact may be considered in determining the nature of any accommodation to be made. Employees and applicants should not be placed in positions where, with or without reasonable accommodation, there would exist a direct threat to the safety or health of themselves or others.

**COMPLAINT PROCEDURE**
An individual who believes he/she has been subjected to, or is aware of, unlawful discrimination, harassment or retaliation should immediately bring their concerns to:

- his/her supervisor or manager;
- local Human Resources Department; or
- the Compliance Guideline at 800-488-7900 or online at www.VerizonWirelessGuideline.com.

Complaints will be treated in a confidential manner and information will only be shared on a need-to-know basis. All complaints will be properly investigated. Any unlawful acts of discrimination, harassment or retaliation will be addressed and remedied in an appropriate manner up to and including termination of employment.

Complaints received from an external governmental agency must be immediately submitted to the appropriate Human Resources group for proper handling and response.

**Disclaimer Statement**

This policy is not a contract of employment or a legal document between you and the Verizon company that employs you, or Verizon Communications Inc. or any of its subsidiaries. Thus, it must not be construed as a guarantee of employment or a promise regarding the terms and conditions of employment, either express or implied.

This policy may be changed by the company at any time without notice. Employment with Verizon is "at will," which means that you or Verizon may terminate your employment, at any time, with or without cause, with or without notice, for any reason not prohibited by law, unless governed by a collective bargaining agreement or specific contract of employment. This at will employment relationship may not be modified except in a written agreement signed by the employee and an authorized representative of Verizon.

Patricia A. Travers v. Verizon Wireless
846-2011-49284

52

ACS/ MetLife Disability
PO Box 14590, Lexington, KY 40511
Phone: 1-800-238-1425 Fax:1-800-230-9531

# MetLife
*Provisional Notification*

NOVEMBER 11, 2009

PATRICIA A TRAVERS
713 CANDLECREEK WAY
ANTIOCH, TN 37013

RE: Employer: VERIZON WIRELESS
FML Claim #: FM0911103249
STD Claim #: ST0911103077
ID Number: 549319

Dear Employee:

We have been notified of your request to take a leave of absence (LOA) for:

☒ A serious health condition (including incapacity due to pregnancy) that makes you unable to perform the essential functions of your job; or
☐ A serious health condition affecting a family member for whom you are needed to provide care; or
☐ The care of your newborn child, or the placement of a child with you for adoption or foster care; or
☐ To perform certain obligations, including attending military events, arranging alternative childcare, addressing certain financial and legal arrangements, attending certain counseling sessions, attending reintegration briefings, or addressing other qualifying exigencies arising from the active duty or call to active duty status of your spouse, son, daughter, or parent in the National Guard or Reserves in support of a contingency operation; or
☐ To care for a covered servicemember who is currently a member of the Armed Forces, including a member of the National Guard or Reserves, who has a serious injury or illness incurred in the line of duty while on active duty, and for which he or she is undergoing medical treatment, recuperation, or therapy; or is otherwise in outpatient status; or otherwise on the temporary disability retired list.

MetLife administers employee leaves of absence (paid and unpaid) under the Family and Medical Leave Act (FMLA), state leave laws, and other family or medical leave offered by your employer. Your eligibility and your reason for leave are being evaluated to determine whether or not this leave qualifies under each category. If approved, your leave of absence will be counted against your annual entitlement under the FMLA and/or other leave categories.

The following information is enclosed in your employee packet:

☒ **Your Rights and Obligations Under the Family and Medical Leave Act**
☐ **Special Notice For Individuals Working in California**
☐ **Special Notice For Individuals Working in District of Columbia**
☒ **Authorization to Disclose Information About Me.** If your need for leave is due to your own serious health condition, or, if you are making a claim for disability benefits under your Employer's disability plan, you must complete and return this form to MetLife within 15 calendar days from the date of this letter.
☐ **Proof of Relationship.** Please provide a copy of one of the following to MetLife within 15 calendar days from the date of this letter:
  • If your LOA is for the care of your newborn child, a copy of the child's birth certificate or hospital discharge record.
  • If your LOA is for the placement of a child with you, a copy of the foster care or adoption placement record or certificate.

☒ **Health Care Provider Certification (HCPC).** You must have this form completed by your health care provider or your family member's health care provider and returned to MetLife if:
  • Your request for leave is due to the serious health condition of a family member rather than yourself; or
  • Your request for leave is due to your own serious health condition and you are not making a claim, or you are ineligible for disability benefits* under your Employer's disability plan. If you are making a claim for disability benefits, the medical documentation submitted in support of your disability claim will be reviewed for the purpose of determining your leave request under the FMLA and/or other leave categories*.

* You may choose not to pursue your disability claim under your Employer's disability plan and still have your request for a leave of absence considered for FMLA and/or other categories. Please notify MetLife that you do not wish to pursue disability benefits by calling MetLife at the toll-free number above.

For efficient and prompt claim handling, all documents or correspondence
returned to us should contain your claim number and ID Number.

JZ0752.5CX (06/09)



☐ Your Certification of Qualifying Exigency for Military Family Leave.

☐ HCPC of Serious Injury or Illness of Covered Service-member. If you are requesting leave to care for a covered servicemember who has a serious injury or illness incurred in the line of duty while on active duty, you must have this form completed by: a United States Department of Defense ("DOD") Health Care Provider or a, health care provider who is either,

(1) a United States Department of Veterans Affairs ("VA") health care provider;
(2) a DOD TRICARE network authorized private health care provider; or
(3) a non-network TRICARE authorized private health care provider, and return to MetLife.

If your need for leave is due to your own serious health condition, and you are making a claim for disability benefits under your Employer's disability plan and medical information for your disability claim is not submitted fully by the date it is due or if the HCPC form is not submitted within 15 calendar days of this letter, your disability claim and your family and medical leave request may both be denied.

You must have the above required forms completed and returned to MetLife by the beginning of your absence or within 15 calendar days of the date of this letter (whichever is later) or your leave request may be delayed or denied.

If your LOA is designated as FMLA and/or another category, the following terms will apply:

**Accrued Paid Leave.** The employer may require the employee to use, or the employee may choose to use, accrued paid leave concurrent with FMLA.

**Benefits.** Your medical benefits will be maintained during any period of unpaid FMLA generally under the same conditions as if you continued to work. Please see your employer regarding your benefits. If you are on an unpaid FMLA and you choose to maintain your benefits, you will be required to make premium payments, as applicable. Your employer will coordinate premium payments with you. In addition, if you do not return to work following your leave, your employer may require reimbursement of all premiums paid on your behalf during the leave.

**Job Reinstatement.** The employer may require the employee to provide a completed fitness-for-duty certificate prior to being restored to employment. If your LOA is due to your own serious health condition, you ☐ will ☒ will not be required to present a completed fitness-for-duty certificate prior to being restored to employment. If such certification is required but not received, your return to work may be delayed until certification is provided or your right to reinstatement may be revoked.

You must consult with your employer with any questions related to your employment status.

Special rules regarding reinstatement apply to "key employees" as defined in the FMLA. Your employer will contact you if these rules apply to you.

**Periodic Reports.** While on FMLA leave, you may be required to report to your employer with periodic reports of your status and intent to return to work, and may also be required to provide subsequent re-certification. MetLife or your employer will contact you for such reports or re-certifications, if necessary.

For more information on the FMLA, refer to the enclosed documents. You may also contact MetLife at 1-800-828-1923.

Sincerely,


FMLA Case Manager
Enclosures


For efficient and prompt claim handling, all documents or correspondence
returned to us should contain your claim number and ID Number.

FZ0814.SCR (08/09)



---

### Your Rights & Obligations Under the Family and Medical Leave Act

Under the Family and Medical Leave Act (FMLA) an eligible employee may take up to 12 weeks of leave within a 12-month period if necessary for specific reasons. Your employer designates the 12-month period to be Rolling Backward - Date of Absence

To be eligible for FMLA leave, an employee must:
- Work for a covered employer;
- Have worked for the employer for 12 months (the 12 months need not be consecutive);
- Have worked at least 1,250 hours over the previous 12 months; and
- Work at a location in the United States where at least 50 employees are employed by the employer within 75 miles.

FMLA leave may be taken:
- For the birth and care of a newborn child of the employee (time must be taken within 12 months from the date of birth);
- For placement with the employee of a child for adoption or foster care, from placement or start of the adoption application process (time must be taken within 12 months from the date of placement);
- To care for a spouse, son, daughter, or parent who has a serious health condition;
- For incapacity due to the employee's pregnancy, prenatal medical or child birth;
- Because of the employee's own serious health condition that renders the employee unable to perform the essential function of his or her position;
- To care for a spouse, parent, son or daughter (of any age) or next of kin who is a covered service-member with a serious illness or injury; or
- Because of a qualifying exigency arising out of the fact that your spouse, parent or son or daughter (of any age) is on active duty or called to active duty in support of a contingency operation as a member of the National Guard or Reserves.

FMLA leave may be taken, for up to 26 weeks during a single 12-month period, to care for a covered service-member.

All leaves taken will be combined for purposes of determining the amount of leave time available.

An employee must provide 30-day advance notice of the need to take FMLA leave when the need is foreseeable and such notice is practicable. When 30 days notice is not practicable an employee must provide notice as soon as practicable and generally must comply with the employer's normal call-in procedures. An employer may also require the employee to provide medical certification supporting the need for leave and may periodically ask the employee about his/her status and intent to return to work; please see the cover letter to this notice regarding requirements for submission of medical information that apply to you. Certain limitations apply for spouses employed by the same employer, leave for childbirth/adoption/foster care, and leave taken intermittently or on a reduced schedule.

An employer may require periodic reports from an employee during FMLA leave of the employee's status and intent to return to work, and in some cases may also require medical re-certification if the FMLA leave is due to a serious health condition. MetLife or your employer will contact you for such information, if necessary.

An employer may require an employee to use sick time, vacation, or other paid time off simultaneously with FMLA leave. If not so required, an employee may choose to use such paid time off simultaneously with FMLA leave. Please see the cover letter to this notice regarding whether your employer will require you to take accrued paid leave at the same time as your FMLA leave. If your employer does not require you to take paid leave, you may elect to take accrued paid leave, i.e., vacation, sick time, etc., at the same time as your FMLA leave by contacting your employer.

An employee on FMLA leave continues to be covered by group health insurance coverage if such insurance was provided before the leave was taken. Your employer will contact you about making premium payments for such coverage. You are required to make premium payments, or your coverage may lapse. In some instances, an employer may recover premiums it paid to maintain health coverage for an employee who fails to return to work from FMLA leave; your employer will contact you if it reserves the right to make such recovery.

An employer generally must restore an employee to his/her job or to a job with equivalent pay, benefits, and other terms and conditions of employment upon return from FMLA leave (unless the employee is a "key employee" as defined by the FMLA). Your employer will contact you if you are such a "key employee." If an employee fails to return to work at the end of FMLA leave, or the employee would have been discontinued regardless of taking leave, none of the employee's FMLA rights to job restoration will apply.

An employer may require the employee to present a fitness-for-duty certificate to be restored to employment upon return from FMLA leave. Your employer will contact you if such a requirement applies to you.

For more information, please contact your employer or MetLife (your employer's FMLA administrator).

S20754.SCRE (04/09)

Verizon_Travers_000575

NOV-24-2009 12:08 From:JEHN IMLAY    518(12531)    PAGE 2/0006    TELEPHONE IO    P.2/6

09T123F08288

**ATTENDING PHYSICIAN STATEMENT**

**MetLife®**
Metropolitan Life Insurance Company
P.O. Box 14590
Lexington, KY 40511-4590
Fax: 1-800-230-9531

Instructions for completing the other form:
1. Complete all applicable areas of the claim form.
2. Sign the claim form.
3. Fax this claim form to expedite your claim – retain original for your records.

**The following section must be completed and signed by the employee/patient. Any fee for the completion of this form is the patient's responsibility.**

| Name - MUST ANSWER | Social Security # MUST ANSWER | Occupation | |
|---|---|---|---|
| | | Employer - MUST ANSWER | Group Report # |

I hereby authorize my physician to release any information acquired in the course of examination or treatment.

Signature of Employee _____    Date 10 26 09    Date of Birth

**The following section must be completed and signed by the attending physician.**
The purpose of this report is to assist us in making a disability determination. Please complete all applicable sections of this form. A MetLife claim representative may telephone your office if additional information is needed.

**History**

Symptoms result from: ☐ Injury ☐ Illness    Is condition work-related? ☐ Yes ☑ No

Initial date of treatment _____    Most recent date of treatment _____

Did you advise the patient to cease the above noted occupation? ☐ Yes ☐ No    If Yes, Date 11/10/09

Names and Phone Numbers of the providers the patient was referred to: N/A
　　　Name　　　Phone #　　　Name　　　Phone #

Has patient been hospitalized? ☐ Yes ☑ No    If Yes, Day Confined _____ Through _____

Name and address of facility

**Diagnosis and Treatment**

Primary ICD-9 346 - 91    Diagnosis Migraine HA

Secondary ICD-9 _____    Diagnosis _____

Subjective Symptoms HA

Objective Findings (include copies/results of any x-rays, lab tests', EKG's, MRI's, scans and office notes)

Current and Recommended Treatment Plans Imitrex, Elavil

If surgery performed/anticipated, provide the following: N/A

CPT-4 _____    Procedure _____    Date _____

Medications prescribed (names, dosages)

CONFIDENTIAL    Verizon_Travers_000581

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 83 of 112 PageID #: 1093

NOV-23-2007 10:08 From:JEHN IMH,MD    615771IS551    To:REDUIE 10    P.3/6
11/18/2009    091123P08200    MetLife

**Name of Employee:** Patricia Travers    **Social Security Number:** _____

**Psychological Functions**

Check applicable box below

☑ Class 1 – Patient is able to function under stress and engage in interpersonal relations (no limitations)
☐ Class 2 – Patient is able to function in most stress situations and engage in some interpersonal relations (slight limitations)
☐ Class 3 – Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitations)
☐ Class 4 – Patient is unable to engage in stress situations and engage in interpersonal relations (marked limitations)
☐ Class 5 – Patient has significant loss of psychological, physiological, personal and social adjustment (severe limitations)

Remarks: _____

What stress factors or problems with interpersonal skills have affected patient's ability to perform, the duties of his or her job?

Is patient competent to endorse checks and direct use of the proceeds?  ☐ Yes ☐ No

**Physical Capabilities**

N/A

| (a) Patient's ability to: (circle) | | | (b) Patient's ability to: (circle) | | |
|---|---|---|---|---|---|
| **Hours** | **(check)** | | Climb | Yes | No |
| Sit  0 1 2 3 4 5 6 7 8 | ☐ Continuously | ☐ Intermittently | Twist/bend/stoop | Yes | No |
| Stand 0 1 2 3 4 5 6 7 8 | ☐ Continuously | ☐ Intermittently | Reach above shoulder level | Yes | No |
| Walk 0 1 2 3 4 5 6 7 8 | ☐ Continuously | ☐ Intermittently | Operate a motor vehicle | Yes | No |

| (c) Patient's ability to lift/carry: (check) | | | | | (d) Patient's ability to perform repetitively: (circle) | | | |
|---|---|---|---|---|---|---|---|---|
| | Never 0% | Occasionally 1-35% | Frequently 36-66% | Continuously 67-100% | | Right Hand | | Left Hand |
| Up to 10 lbs. | ☐ | ☐ | ☐ | ☐ | Fine finger movements | Yes | No | Yes No |
| 11 to 20 lbs. | ☐ | ☐ | ☐ | ☐ | Eye/hand movements | Yes | No | Yes No |
| 21 to 50 lbs. | ☐ | ☐ | ☐ | ☐ | Pushing/pulling | Yes | No | Yes No |
| 51 to 100 lbs. | ☐ | ☐ | ☐ | ☐ | | | | |
| Over 100 lbs. | ☐ | ☐ | ☐ | ☐ | Dominant hand | R___ | | L___ |

(e) In your opinion, why is patient unable to perform job duties?

(f) Patient can work a total of _____ _____ hours per day?

(g) Do you expect improvement in any area?
    (If so please comment and give dates/timeframes.)

**Cardiac**

Functional Capacity (American Heart Association) Complete only if applicable.
☑ Class 1 (No Limitation)   ☐ Class 2 (Slight Limitation)   ☐ Class 3 (Marked Limitation)   ☐ Class 4 (Complete Limitation)

Blood Pressure (latest reading) ___ / ___  as of (date) ___ / ___

Is patient in a cardiac rehabilitation program?

**Prognosis**

Have you advised patient to return to work?
☑ Yes, date of return 11/25/09    ☑ To regular occupation  ☑ Full Time  ☐ Part Time
                                    ☐ To any other occupation  ☐ Full Time  ☐ Part Time
☐ No    If Not, please explain
Any work/activity restrictions applicable (please be specific)

**Rehab**

N/A

Do you suggest that the patient become involved in any of the following? Please check as many as apply.
If so, was this discussed with the patient?   ☐ Yes ☐ No
☐ Physical Therapy          ☐ Pain Management Program      ☐ Vocational Rehabilitation
☐ Occupational Therapy      ☐ Work Hardening Program       ☐ Psychological Counseling
☐ Cardiac Rehabilitation    ☐ Job Modification             ☐ Other _____

Page 2 of 3
APS.SUPP.STD.LTD.UNI.8200 (rev.)  11

NOV-23-2009 12:05 From:JEAN TAN MD    6157719581    QUOTE ID    NetLife    P.1/6
11/18/2009    6157719581    091T23P08266

## Disability Claim Attending Physician Statement (Continued)

Name of Employee  *Patricia Travers*  Social Security Number:

**Fraud Warning:**

If you reside in one of the following states, one of the following state warnings may apply to you:

**New York:** (only applies to Accident and Health Benefits (AD&D/Disability/Dental)): I know it is a crime to fill out this form with facts I know are false or to leave out facts I know are important. I know that if I do this, I may also have to pay a civil penalty of up to $5,000 plus the value of the claim.

**Florida:** Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim containing any false, incomplete or misleading information is guilty of a felony of the third degree.

**Massachusetts:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, and may subject such person to criminal and civil penalties.

**New Jersey:** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**Oklahoma:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Kansas and Oregon:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto may be guilty of insurance fraud, and may be subject to criminal and civil penalties.

**Virginia:** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, files a claim containing a false or deceptive statement may have violated state law.

If you reside in any state other than those listed above, then the following warning may apply to you:

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

| Physician | | | |
|---|---|---|---|
| Name | JEAN L. TAN, M.D. Primary Care Clinic, LLC | Degree/Specialty | *M* |
| Street Address | 125 Cool Springs Blvd, Ste 230 Franklin, TN 37067-2830 | City | State | Zip Code |
| Telephone # | Tel: 615-771-8549; Fax: 615-771-9581 | Fax # | Tax ID # | *00066253* |
| Contact person if additional information is necessary | | | |
| Signature | | Date | *11/22/09* |

Metropolitan Life Insurance Company
MetLife Disability, P O Box 14590, Lexington KY 40511-4590
Phone: 1-800-826-1923    Fax: 1-800-230-9531

**MetLife®**

0911 2560 5678 8122

11/10/2009

Patricia Travers
713 Candlecreek Way
Antioch, TN 37013

RE: Employer: VERIZON WIRELESS
Claim #: 570911108077

Dear Ms. Travers:

We received your request for disability benefits on 11/10/2009.

MetLife is the administrator of the Verizon Wireless Managed Disability Plan and is responsible for making all decisions regarding your claim. We look forward to working with you through this process.

Depending on your length of service with Verizon Wireless, Short Term Disability can provide you with income protection during your time away from work. Family Medical Leave (FML) provides you with job protection. An FML claim has been initiated along with your STD claim and MetLife will mail you a separate packet concerning your FML claim.

It is your responsibility to ensure that your health care provider(s) submits medical documentation in support of your Short Term Disability claim to MetLife by 11/27/2009. This information should clarify and or include medical records, test results, and/or treatment notes.

In order to expedite further processing of your claim, we may need to contact your physician to obtain medical information concerning your disability. Your physician will need your signed authorization in order to release medical information to us. To avoid claim processing delays or payment interruptions, please immediately complete the enclosed **"Authorization to Disclose Information About Me"** form and return it to us at the address on the form or you may fax it to 1-800-230-9531.

We encourage you and your physician(s) to include your Claim Number and Social Security Number on all correspondence sent to MetLife. This will ensure prompt delivery of correspondence to your Disability Case Manager. Medical documentation can be sent to MetLife by fax to 1-800-230-9531 or by mail to P.O. Box 14590, Lexington, KY, 40511-4590.

In order to receive pay for up to 21 days from your first day absent or until MetLife makes a determination on your claim, you must return the enclosed Repayment Agreement on behalf of Verizon Wireless. This Repayment Agreement must be signed, in accordance with the Verizon Wireless Disability Plan. Please complete and return the Repayment Agreement to Verizon Wireless at the address listed on the form or fax it to (908) 607-7524.

For your information, we have also enclosed a page setting forth Insurance Fraud Warning Notices.

To track the status of your claim, you may register on-line via About You, at www.mybenefits.com or call 1-800-826-1923. If you have any questions regarding this letter, please feel free to contact MetLife Disability Monday through Friday from 8:00 A.M. to 11:00 P.M. Eastern Standard Time at 1-800-826-1923.

Thank you.

Enclosure: Verizon Wireless attendance information

**MetLife**
Metropolitan Life Insurance Company
P O Box 14590
Lexington, KY 40511-4590
Fax: 1-800-230-9531

**HIPAA:** This Authorization has been carefully and specifically drafted to permit disclosure of health information consistent with the privacy rules adopted and subsequently amended by the United States Department of Health and Human Services pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

Instructions for completing the form:
1. Complete all applicable areas of the form.
2. If you are the Authorized Representative, include a copy of the legal document(s) authorizing you to act on the Employee/ Claimant's behalf.
3. Sign this form.
4. Fax or return this form as soon as possible to expedite processing of your claim – retain original for your records.

Your refusal to complete and sign this form may effect your eligibility for benefits under your employer's disability plan.

Employee Name: Patricia Travers
Claim #: 570911108077

### Authorization to Disclose Information About Me

I understand that my employer has requested that Metropolitan Life Insurance Company ("MetLife") integrate the claim services for disability benefits and request for leave under the Family and Medical Leave Act (FMLA), state leave laws, and/or my company's leave of absence policy ("Leave Request"). For purposes of determining my eligibility for disability benefits and/or my Leave Request, the administration of my employer's disability benefit plan (which may include assisting me in returning to work), and the administration of other benefit plans in which I participate that may be affected by my eligibility for disability benefits, I permit the following disclosures of information about me to be made in the format requested, including by telephone, fax or mail:

> 1. **I permit:** any physician or other medical/treating practitioner, hospital, clinic, other medical related facility or service, insurer, employer, government agency, group policyholder, contract holder or benefit plan administrator to disclose to MetLife, my employer in its capacity as administrator of its disability benefit plan, and my employer regarding my

Verizon_Travers_000587

Leave Request, and any consumer reporting agencies, investigative agencies, attorneys, and independent claim administrators acting on MetLife's behalf, any and all information about my health, medical care, employment, and my claim for disability benefits and/or my Leave Request consistent with law.

2. **I permit** MetLife to disclose to my employer in its capacity as administrator of its benefit plans and to my employer regarding my Leave Request, any and all information about my health, medical care, employment, and claim for disability benefits or Leave Request.

**This Authorization to Disclose Information About Me** specifically includes my permission to disclose my entire medical record, including medical information, records, test results, and data on: medical care, diagnosis or surgery; psychiatric or psychological medical records, but not psychotherapy notes; and alcohol or drug abuse including any data protected by Federal Regulations 42 CFR Part 2 or other applicable laws. **Information concerning mental illness, HIV, AIDS, HIV related illnesses and sexually transmitted diseases or other serious communicable illnesses may be controlled by various laws and regulations. I consent to disclosure of such information, but only in accordance with laws and regulations as apply to me. Information that may have been subject to privacy rules of the U.S. Department of Health and Human Services, once disclosed, may be subject to redisclosure by the recipient as permitted or required by law and may no longer be covered by those rules. Your health care provider may not condition your treatment on whether you sign this authorization.**

**I understand** that I may revoke this authorization at any time by writing to MetLife Disability at P.O. Box 14590, Lexington, KY 40511-4590, except to the extent that action has been taken in reliance on it. If I do not, it will be valid for 24 months from the date I sign this form or the duration of my claim for benefits and/or my Leave Request, whichever period is shorter.

A photocopy of this authorization is as valid as the original form and I have a right to receive a copy upon request.

_Travis_          _10·16·09_
Signature                Date

Verizon_Travers_000588

## IMPORTANT NOTICE -- IMMEDIATE ACTION REQUIRED

As you apply for Verizon Wireless Short Term Disability Benefits, there are some important considerations we would like to bring to your attention.

Verizon Wireless pays for some illness/injury absences and for those illnesses/injuries that are certified under the Short Term Disability component of the Company's Managed Disability Plan when an employee is deemed eligible for paid benefits. In order for you to be eligible for disability payments during the disability certification process, you must return the enclosed Repayment Agreement upon receipt and you must actually be certified by MetLife as disabled within the meaning of the Plan. By signing this Agreement, you commit to repay the Company any money advanced should your application for short term disability benefits be denied in total or in part. You also agree to reimburse the Company for overpayments made at any point during the period of short term disability. If you fail to immediately return the enclosed Agreement, you will not receive any further paychecks until a determination has been made on your application for short term disability benefits

### Repayment Agreement

I am currently in the process of applying for short term disability benefits. I understand that the Company's determination of whether to continue my pay during the application process may be based, in part, upon its timely receipt of this signed Agreement. By signing this Agreement I commit to reimburse Verizon Wireless for any overpayments made to me for short term disability benefits if my application for short term disability is denied in total or in part. I further agree to cooperate with Verizon Wireless in establishing a repayment schedule which shall not exceed six months.

I further agree that such payments will be based upon a percentage of my base salary, with a minimum amount of 20% per pay cycle and that said payments will be automatically deducted from my paychecks, where permitted by state law. In no event shall the deduction in any payroll cycle result in payment of less than the minimum wage or be more than is allowed under applicable federal, state, or local law. Additionally, I hereby authorize that said payments be deducted against other monies to which I may be entitled to receive including, but not limited to, short term incentive payouts. I hereby authorize payroll deductions for the amount of the overpayments. I understand that my failure to reimburse Verizon Wireless for any overpayments made to me may result in disciplinary action up to and including termination, where permitted by state law, or referral to a collections agency which may impact my credit. I further agree that if my employment with Verizon Wireless is terminated, any unpaid balance I owe will become immediately due. I agree to satisfy my debt in full to Verizon Wireless within thirty days of my termination from employment.

Please submit completed form by mail or fax to:

VSO Payroll Services
VZW Sickness & Disability Team
109 E. Market Street, MC: ILLLBCB
Bloomington, IL 61701
Fax: (309) 829-0645

Employee Name:       Patricia Travers
Employee ID: 549319
( As it appears on your pay stub)
Work E-mail Address:
Employee Signature:
Date: 10.16.09



## ADDITIONAL INFORMATION REGARDING YOUR SHORT-TERM DISABILITY

We hope you are feeling better and look forward to your return to work.

### Attendance Management at Verizon Wireless

All absences are reflected in your attendance record. However, some absences will not be considered when evaluating your overall attendance record. Whether or not an absence is subject to disciplinary action will depend on if the absence is determined to be a certified Family Medical Leave (FML) related absence and/or subject to local attendance guidelines.

Depending upon your length of service with the Company, Short Term Disability (STD) can provide you with income protection. FML provides you with job protection. Any absence not certified for FML may be used to calculate your absenteeism rate.

Attendance standards may factor into both the appraisal process and any corrective action that may need to be taken with respect to an employee. If you do not maintain acceptable attendance, you may be subject to corrective action. Steps in the corrective action process are based upon many factors and range from counseling to termination of employment. For more information on attendance management, please refer to the HR Guidelines in About You.

If your request for FML, applicable state leave and/or any other federal protection under the Americans with Disabilities Act is denied or deemed unreasonable, you must return to work immediately. Failure to do so may result in corrective action. Steps in the corrective action process are based upon many factors and range from counseling to termination of employment. For more information on attendance management, please refer to the HR Guidelines in About You.

### Your Responsibilities as a Verizon Wireless Employee

You are responsible for properly notifying your supervisor of all absences. Except in extreme circumstances, a voicemail is considered inappropriate notification of your absence. Additionally, it is the Company's expectation that you will:

- Maintain good communication with MetLife;
- Provide all necessary documentation to support your claim throughout your absence;
- Return to work immediately upon the expiration of your approved disability; and,
- Not be engaged in any other job/occupation or be self-employed while on STD.

Any employee who fraudulently obtains FML, STD, or Workers Compensation (WC) benefits will be subject to disciplinary action up to and including termination of employment. In addition, the employee will not be eligible for maintenance of health benefit provisions and/or job protection under the FMLA.

### Short Term Disability Claim Process

To determine whether you are disabled, as defined by the Plan, you must provide to MetLife specific objective medical information from your physician(s) treating your medical condition evidencing that you cannot perform the essential functions of your job at Verizon Wireless. This information includes, but is not limited to, the following:

- The date your disability started;
- The date your physician(s) advised you to cease working;
- The cause of your disability;
- The prognosis of your disability, including an estimated return to work date;

These procedures do not guarantee your employment for any specific period of time and do not create a contract of employment, either written, verbal or implied. Both the employee and Company have the choice of ending the employment relationship at any time for any reason with or without notice. Employees of Verizon Wireless therefore are employed on an at-will basis unless otherwise expressly stated in a written employment agreement signed by the Vice President of Human Resources and/or his or her designated representative.

Verizon_Travers_000590

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 90 of 112 PageID #: 1100



- All medical information relating to your disability, including but not limited to:
  - X-ray films -- including MRI, CT Scans, etc.
  - Photocopies of medical records, including:
    - Medical Histories;
    - Physical, mental or diagnostic examinations; and
    - Treatment notes.
  - Current restrictions and limitations, along with any documentation in support of those findings.
- The names, addresses, and phone numbers of all:
  - Physicians who have provided you with diagnosis, treatment or consultation;
  - Hospitals or other medical facilities which have provided you with diagnosis, treatment or consultation.

Names and dosages of all current medications including the names of pharmacies that have filled your prescriptions.

Please note that written correspondence from your Physician stating you are disabled and unable to work is not objective medical evidence supporting a claim for Short Term Disability. If you have any questions regarding the specific information needed for your claim, please contact your Disability Case Manager.

If you do not provide MetLife with the necessary objective medical evidence and other documentation by 11/27/2009, your Short Term Disability Claim will be denied in accordance with the Verizon Wireless Managed Disability Plan. Any information or documents received after 11/27/2009 will not be considered unless resubmitted as part of a formal written appeal.

If your STD claim is denied and you remain out of work for 26 weeks while maintaining your employment, you may apply for Long Term Disability (LTD) benefits by calling MetLife at 1-800-825-1923. An LTD application packet will be sent to you.

*STD Pay*

If you are deemed eligible for STD pay, your pay will generally continue through the initial application processing period (not to exceed 21 days) while MetLife is evaluating your claim. However, if your claim is either denied during that period or a determination has not been made on your claim by the end of that period, your disability pay will stop.

If your STD claim is approved, STD benefits will be paid through the normal payroll process. Your pay will be received through direct deposit or check based upon your current elections.

### Benefits Impact

|  | Unpaid FML | STD* | WC* | LOA* |
|---|---|---|---|---|
| Health & Wellness Benefits Coverage | Continues | Continues | Continues | Continues for 6 months, thereafter you can elect COBRA coverage |
| Flexible Spending Accounts Contributions -- Healthcare Spending Account (HCSA) and | Suspended until you return to a paid status | HCSA -- Deductions Continue DCSA -- Participation | Deductions Continue. | Suspended until you return to a paid status |

These procedures do not guarantee your employment for any specific period of time and do not create a contract of employment, either written, verbal or implied. Both the employee and Company have the choice of ending the employment relationship at any time for any reason with or without notice. Employees of Verizon Wireless therefore are employed on an at-will basis unless otherwise expressly stated in a written employment agreement signed by the Vice President of Human Resources and/or his or her designated representative.

| | | terminates | | |
|---|---|---|---|---|
| Dependent Care Spending Account (DCSA) | | | | |
| Group Life Insurance Coverage | Continues | Continues | Continues | Continues |
| 401(k) | Suspended until you return to a paid status | Contributions continue | Contributions continue. | Suspended until you return to a paid status |
| Vacation Accrual and Personal Day Allotment | Continues for the first 30 days | Continues 60 days. | Continues 60 days | Continues for the first 30 days |
| Short-term Incentive (STI) | Prorated after 30 days of absence | Prorated after 30 days of absence | Prorated after 30 days of absence | Prorated after 30 days of absence |
| Merit Treatment | Merit award is not prorated | Merit award is not prorated | Merit award is not prorated | Merit award is not prorated |

\* If you have FML available your STD, WC or LOA time will run concurrently with FML.

If your STD claim is denied and you have not been approved for any other authorized VzW leave, your Health and Benefits coverage will stop after 30 days.

### Additional Information

For additional information regarding STD, please consult:

* About You/HR Guidelines/Time Off
* www.vztimeoff.com
* MetLife at 1-800-826-1923
* Your local Human Resources Representative

These procedures do not guarantee your employment for any specific period of time and do not create a contract of employment, either written, verbal or implied. Both the employee and Company have the choice of ending the employment relationship at any time for any reason with or without notice. Employees of Verizon Wireless therefore are employed on an at-will basis unless otherwise expressly stated in a written employment agreement signed by the Vice President of Human Resources and/or his or her designated representative.

Any person who, knowingly and with intent to defraud any insurance company or other person files an application for insurance or a statement of claim with materially false information or conceals for the purpose of misleading, information concerning any fact material there to may be guilty of committing a fraudulent insurance act.  Please see below for special notice required by state law.

Alaska - A person who knowingly and with intent to injure, defraud or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

Arizona - For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of loss is subject to criminal and civil penalties.

Arkansas, Louisiana, Maryland, West Virginia - Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

California – For your protection California law requires the following to appear on this form:  Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

Colorado - It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of life insurance, and civil damages.  Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with respect to a settlement or award from insurance proceeds, shall be reported to the Colorado divisions of insurance within the department of regulatory agencies to the extent required by applicable law.

Delaware – Any person who knowingly and with the intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

District of Columbia. - WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person.  Penalties include imprisonment and/or fines.  In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

Florida - Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

Hawaii – For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment, or both.

Idaho – Any person who knowingly and with the intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony.

Indiana - A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

Kentucky - Any person who knowingly and with the intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading,  information concerning any fact material there to commits a fraudulent insurance act, which is a crime.

Verizon_Travers_000593

Case 3:12-cv-00617   Document 38-1   Filed 07/11/13   Page 93 of 112 PageID #: 1103

**Maine** - It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Minnesota** - A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire** - A person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey** - Any person who knowingly files a statement of claim containing false or misleading information is subject to criminal and civil penalties.

**New Mexico** - Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**New York** - Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceeds five thousand dollars and the stated value of the claim for each such violation.

**Ohio** - A person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing false or deceptive statement is guilty of insurance fraud.

**Oklahoma** - WARNING: Any person who knowingly and with the intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete, or misleading information is guilty of a felony.

**Oregon** – A person who knowingly and with intent to defraud an insurance company, files a claim containing false, incomplete or misleading information material to such claim, may be guilty of insurance fraud.

**Pennsylvania** - Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or a statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning a fact material there to commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico** -Any person who knowingly and with the intention to defraud includes false information in an application for insurance or file, assist or abet in the filing of a fraudulent claim to obtain payment of a loss or other benefit, or files more than one claim for the same loss or damage, commits a felony and if found guilty shall be punished for each violation with a fine of no less than five thousands dollars ($5,000), not to exceed ten thousands dollars ($10,000); or imprisoned for a fixed term of three (3) years, or both. If aggravating circumstances exist, the fixed jail term may be increased to a maximum of five (5) years; and if mitigating circumstances are present, the jail term may be reduced to a minimum of two (2) years.

**Tennessee, Virginia, Washington** - It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Texas** – Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

570911108077

Metropolitan Life Insurance Company
PO Box 14592; Lexington, KY 40511-4592
Tel 800 826-1923   Fax 800-230-9631

**MetLife®**

MetLife Disability

November 30, 2009

Patricia A Travers
713 Candlecreek Way
Antioch, TN 37013

RE: Verizon Wireless Managed Short-Term Disability Plan
Claim #: 570911108077

Dear Ms. Travers:

This letter is in reference to your claim for Short-Term Disability (STD) benefits. After conducting a complete review of your file, we have determined that we are unable to approve Short-Term Disability benefits. We have concluded that you did not meet the definition of disability as required to approve benefits under the terms of the Verizon Wireless Managed Disability Plan.

The Verizon Wireless Managed Disability Plan (SPD) states:

"An employee is considered disabled under the STD component of the Managed Disability Plan when the employee is absent from work for at least 8 full consecutive calendar days beginning with and including your first day absent from work because of a medical condition for which there is objective medical evidence that the employee cannot perform the Essential Functions of his or her job at Verizon Wireless.

In addition, the employee must:
- Be receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and
- The employee must be unable to earn more than 80% of the employee's pre-disability earnings at the employee's own job; and
- The employee must not be engaged in any other job/occupation or earns any self-employment income during the STD application process or while he or she is receiving STD benefits".

Our records indicate that your first day out of work was November 10, 2009 due to migraine headaches.

The medical information received and reviewed in making this determination consisted of a call to Dr. Jean Tan's office on November 11, 2009 . We spoke with Yolanda from Dr. Tan's office who indicated that you were treated on November 10, 2009. You were diagnosed with having depression, migraine, vitamin D and iron deficiency. Yolanda stated that Dr. Tan did not certify you out of work. Also received was an Attending Physician Statement from Dr. Tan dated November 23, 2009. Dr. Tan reported a diagnoses of migraine headaches, you were prescribed Imitrex and Elavil and you were released to return to work on November 25, 2009. Dr. Tan also noted that you were able to function under stress and in interpersonal relations with no limitations.

Although you are experiencing symptoms related to migraine headaches, the medical information received did not indicate you were certified out of work as of your first date of absence on November 10, 2009. There was no medical documentation provided to indicate any abnormal physical exam findings to support ongoing functional impairment effective November 10, 2009. There were no reports of objective testing, detailed observations or collateral information to help support the nature and severity of your problems and why you were unable to work. There was no specific information in

Verizon_Travers_000349

570911108077

regards to the intensity, frequency and duration of your symptoms as observed by a licensed health care practitioner and how these symptoms prevent you from functioning on a daily basis. There was also no medical documentation provided to indicate a severity of illness, intensity of services, signs and symptoms or restrictions and limitations that would preclude you from performing the essential duties of your job.

After consideration of the above findings, we have determined that there is no medical evidence to support any functional impairment resulting in your inability to perform the functions of your sedentary job as a Marketing Campaign Representative which requires, seldom grasping, pushing, and pulling, frequent flexing or extending wrists, occasional walking, and the ability to lift 10 pounds or less.

The information received and reviewed does not provide any assessment or description of the frequency or severity of your symptoms and does not explain how they might interfere with your ability to function in your job. Furthermore, Dr. Tan did not advise you to stop working, therefore; the information received and reviewed does not support a disability due physical impairment. As a result, your claim for Short-Term Disability benefits has been denied effective November 10, 2009.

You may appeal this decision by sending a written request for appeal to MetLife Disability, PO Box 14592, Lexington, KY 40511-4592 within 180 days after you receive this denial letter. Please include in your appeal letter the reason(s) you believe the claim was improperly denied, and submit any additional comments, documents, records or other information relating to your claim that you deem appropriate for us to give your appeal proper consideration. Upon request, MetLife will provide you with a copy of the documents, records, or other information we have that are relevant to your claim and identify any medical or vocational expert(s) whose advice was obtained in connection with your claim.

MetLife will evaluate all the information and advise you of our decision on your appeal within 45 days after we receive your written request for appeal. If there are special circumstances requiring additional time to complete our review, we may take up to an additional 45 days, but only after notifying you of the special circumstances in writing. In the event your appeal is denied in whole or in part, you will have the right to bring civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974.

If you have recent medical documentation not previously submitted which you believe may assist us in evaluating your claim for benefits, please forward this information to us for review on appeal. In particular, office visit notes from your last two office visits including results of any objective medical testing, laboratory etc., documentation relative to your functional capabilities, restrictions and/or limitations, an assessment regarding your ability to return to work and/or your return to work plans.

If you have any questions, please contact MetLife's Customer Response Center Monday through Friday from 8:00 A.M. to 11:00 P.M. Eastern Time at the toll free number above. Our Customer Response Center representatives can assist you with your claim questions.

Sincerely,

*Heather Simpson*

Heather Simpson
Case Manager
MetLife Disability

570911108077

Verizon_Travers_000351

Metropolitan Life Insurance Company
MetLife Disability, P O Box 14590, Lexington, KY 40511-4590
Phone: 1-800-526-1923     Fax: 1-800-230-9531

# MetLife™

December 1, 2009

Mrs. Patricia A. Travers                  RE: Employer: VERIZON WIRELESS
713 Candlecreek Way                     Claim #: FM0911103249
Antioch, TN 37013-0000                ID Number: 549319

Dear Mrs. Travers:

The family and medical leave of absence effective November 10, 2009 through November 24, 2009 is eligible for job protection under the Family and Medical Leave Act (FMLA) of 1993 and where applicable under state leave laws, and/or employer specific leave programs.

Our records indicate that your health care provider has certified your leave as follows:

| Schedule | Frequency | Dates |
|---|---|---|
| Continuous | | from 11/10/2009 through 11/24/2009 |

This letter reflects the approval of leave taken within the time period noted above. If applicable, you will be notified in writing of any absences not eligible for job protection under FMLA under separate cover.

We will notify you in writing if a re-certification is required as applicable or at any point that you have used up the total leave time available.

If there is a change in the length of time you are requesting for this leave of absence, contact our office immediately. If you wish to extend your leave due to a serious health condition affecting yourself or an eligible family member, and you have not exhausted your FMLA time, it is your responsibility to submit a new Health Care Provider Certification form to support any additional time beyond November 24, 2009. For your convenience, your employer provides copies of Health Care Provider Certification Forms online at www.vztimeoff.com. Failure to receive this information by December 9, 2009 may result in closure of your request for leave.

You may refer to the document titled "Your Rights under Family and Medical Leave Act of 1993", which was included in your employee packet, for details on the FMLA. You should contact your employer to determine the availability of your job status or any other leave options.

If you have questions, please contact MetLife's Customer Response Center Monday through Friday from 8:00 A.M. to 11:00 P.M. Eastern Time at the toll free number above. Our Customer Response Center representatives can assist you with your claim questions.

Sincerely,

*Joy Tolbert*
MetLife Disability

For efficient and prompt claim handling, all documents or correspondence returned to us should contain the claim number.

**Verizon_Travers_000340**

Metropolitan Life Insurance Company
MetLife Disability, P O Box 14590, Lexington, KY 40511-4590
Phone: 1-800-820-1923     Fax: 1-800-230-9531

# MetLife

December 22, 2009

Mrs. Patricia A. Travers               RE: Employer: VERIZON WIRELESS
713 Candlecreek Way                  Claim #: FM0911103249
Antioch, TN 37013-0000               ID Number: 549319

Dear Mrs. Travers:

The family and medical leave of absence effective November 10, 2009 through November 19, 2009 is eligible for job protection under the Family and Medical Leave Act (FMLA) of 1993 and where applicable under state leave laws, and/or employer specific leave programs.

Our records indicate that your health care provider has certified your leave as follows:

| Schedule | Frequency | Dates |
|---|---|---|
| Continuous | | from 11/10/2009 through 11/24/2009 |

This letter reflects the approval of leave taken within the time period noted above. If applicable, you will be notified in writing of any absences not eligible for job protection under FMLA under separate cover.

We will notify you in writing if a re-certification is required as applicable or at any point that you have used up the total leave time available.

If there is a change in the length of time you are requesting for this leave of absence, contact our office immediately. If you wish to extend your leave due to a serious health condition affecting yourself or an eligible family member, and you have not exhausted your FMLA time, it is your responsibility to submit a new Health Care Provider Certification form to support any additional time beyond November 24, 2009. For your convenience, your employer provides copies of Health Care Provider Certification Forms online at www.vztimeoff.com. Failure to receive this information by December 9, 2009 may result in closure of your request for leave.

You may refer to the document titled "Your Rights under Family and Medical Leave Act of 1993", which was included in your employee packet, for details on the FMLA. You should contact your employer to determine the availability of your job status or any other leave options.

If you have questions, please contact MetLife's Customer Response Center Monday through Friday from 8:00 A.M. to 11:00 P.M. Eastern Time at the toll free number above. Our Customer Response Center representatives can assist you with your claim questions.

Sincerely,

*Darren Pratt*
MetLife Disability

For efficient and prompt claim handling, all documents or correspondence returned to us should contain the claim number.

**Verizon_Travers_000339**

Metropolitan Life Insurance Company
MetLife Disability, P O Box 14590, Lexington, KY 40511-4590
Phone: 1-800-825-1923     Fax: 1-800-230-9531

# MetLife

January 11, 2010

Mrs. Patricia A. Travers                          RE: Employer: VERIZON WIRELESS
713 Candlecreek Way                                   Claim #: FM0911103249
Antioch, TN 37013-0000                                ID Number: 549319

Dear Mrs. Travers:

This letter is in reference to your family and medical leave of absence. Our records indicate that you have returned to work. Therefore, we have closed your claim.

If you have questions, please contact MetLife's Customer Response Center Monday through Friday from 8:00 A.M. to 11:00 P.M. Eastern Time at the toll free number above. Our Customer Response Center representatives can assist you with your claim questions.

Sincerely,

*Sherri Glinton*
MetLife Disability

For efficient and prompt claim handling, all documents or correspondence returned to us should contain the claim number.

Verizon_Travers_000338

 

**455 Duke Drive**
**Franklin, TN 37067**

## Inter-Office Memo

**Date:** June 2, 2009
**Subject: Verbal Warning – Code of Business Conduct**
**From:** Denise Gowler
**To:** Patricia Travers

This document serves as notification you are being placed on **Verbal Warning** for General Behavior/ Conduct and Business Practices in accordance with Verizon Wireless' Code of Business Conduct.

**"One of Verizon Wireless' core values is to put customers first. And in order to ensure the quality customer service we promise, the Company will continuously measure an employee's productivity and assess his/her developmental needs."**

As an employee of Verizon Wireless, you are a representative of the company and your conduct should always be professional and reflect ethical behaviors. In addition, employees must act with fundamental honesty and integrity in all Company dealings and comply with all Company policies.

In a meeting on May 18, 2009 with Denise Gowler and Patricia Travers - we reviewed the time in voice mail that was reflected in our reports. She was advised there were two days where she was in voicemail for very long periods. Patricia knew what I was referring to and told me that she had over 100 messages in her box that she had to clear out. She stated that her voice mail passcode didn't work, and that she had put in a ticket to get it reset. She was asked how long was it not working for her and she responded saying not since we moved to this building. Patricia was then asked her if she let anyone know that and she responded she did not. Denise also asked her why she didn't get her supervisor or myself involved over this duration of time, and she stated that she didn't know what to do and then later was embarrassed to say anything. Denise was advised anytime she has an issue that is not getting resolved or she is unsure of what action to take she needs to get a member of management engaged.

Denise expressed concern that she had been giving her extension out and had customers expecting a return call when she could not get the messages. Equally, upon getting the passcode reset, she should have let her supervisor know she had over 100 messages to clear out. We could have worked with EUS to get them deleted without having to retrieve each one.

Denise was able to validate the ticket she entered with IT on 3/20 with it being closed on 3/23. And was also was able to retrieve the calls to voicemail that validated the amount of calls stored and the dates of messages going back to September 2008.

This Verbal Warning will be in effect for three (3) months from the date issued. This may negatively impact your merit increase and Short-term incentive. Failure to adhere to the Code of Business Conduct Guidelines may result in further disciplinary action up to and including termination of employment.

The following expectations have been set forth for you:

- Logon at your desk at your scheduled time.
- Adhere to scheduled breaks and lunch – logging in and out for the duration of the scheduled break.
- Use of Call Work state only to perform after call work.
- Use Vmail system to retrieve messages and immediately disconnect the call.
- Use of Unavailable state only to log off.

Travers

EXHIBIT NO. 20

4/2/13   S. Delso

**Verizon_Travers_00086**

Patricia, I encourage you to consider the severity of this warning and sincerely hope that you will adhere to all company guidelines in the future. We are here to assist you at any time and hope that you will call on me or any member of management for assistance whenever in doubt about how to utilize company systems and as needed interpretation of company guidelines.

By signing below you acknowledge your understanding of this warning.

_____          06.04.09
Patricia Travers, Sr. Representative          Date

_____          06/04/09
Denise Gowler                                          Date
cc: Lori Spears, Eric Lovett, HR

**Verizon_Travers_00087**

# eScan-IT Prep Sheet

| Box | Folder | Parent | Child | | Single Page Docs | |
|---|---|---|---|---|---|---|
| ☐ | ☐ | ■ | ☐ | | Parent ☐ | Child ☐ |

Misc. Instructions

$L - 4$

eScan-IT 3.2



**455 Duke Drive
Franklin, TN 37067**

# Inter-Office Memo

**To:**      Patricia Travers

**From:**   Phillip Trank

**CC:**      Jo-David Keith, Lori Spears, HR

**Date:**    9/4/2009

**Subject:** Written Warning – Code of Business Conduct

---

This memo is to confirm our conversation on September 1, 2009 to discuss your violation of the Code of Business Conduct on August 28, 2009 with regard to Integrity.

**Our Code of Business Conduct states:**
Verizon Wireless' customers expect and deserve fair, honest and respectful service. You are accountable for your role in the delivery of that standard of service.

Verizon Wireless follows an uncompromising Consumer Clear Disclosure/Selling with Integrity Policy. Our policy requires that we fully, clearly and directly inform our customers of the terms and conditions of our services. The Policy applies in all communications with customers, such as advertising, point of sale communications through sales agents, telemarketing, Internet web sites and customer care as well as direct sales. Any attempt to deceive a customer will not be tolerated and may result in disciplinary action up to and including termination from employment. The following guidelines must be followed at all times:

All terms and conditions must be disclosed to the customer. There will be no "hidden" charges. The customer must be clearly informed of all activation fees, access fees, airtime rates, contract terms, early cancellation fees and any extra charges (including charges for included enhanced services such as Usage Control or VZ Navigator the monthly fees after an initial promotional period for which the service is free or the fee is waived and, toll charges, taxes and surcharges, and cellular long distance charges) in marketing and promotional materials.

There are strict rules regarding sales and promotions. They must be followed without exception. For example, you cannot use the word "Free" without full disclosure of all material conditions disclosed in close proximity to the word (e.g., use of New Every Two credit and Mail in Rebate requirements).

Verizon Wireless employees compete vigorously, but fairly. Our Consumer Clear Disclosure/Selling With Integrity Policy means we do not misrepresent our products and services, even if it means losing a sale. Where silence about a fact could mislead a customer, disclose the information. Communicate completely, clearly and precisely so that our customers understand the terms of our contracts.

On July 8th you were coached by Eric Lovett on an observed call regarding waiving the mail-in rebate. On this call, you proactively offered an LG 5500 for $29.00, taking the $50 Mail-in Rebate (MIR) off the retail price of $79.99 without the customer requesting to match the online price. Eric noted two

1

Travers
EXHIBIT NO. 21
4/2/13  S. Delao

**Verizon_Travers_00088**

additional calls where he had observed this behavior. Prior to this, Eric sent an email on 6/24 reminding the team not to match online prices unless the customer requests it. He also reminded the team again in a Meeting on 7/2. Eric explained that you should follow the proper process to assist customers who have not received their MIR but should not be matching online rebates proactively to fix it. You were instructed to check with a supervisor prior to matching any online prices and notified that failure to comply with the proper procedures for Mail in Rebates could result in corrective action up to and including termination.

On August 28th, a call was monitored in which you quoted a customer a phone as free after NE2 that actually required a rebate. The rebate was waived with no discussion and the order submitted for approval as a result of the customer requesting online price match. There was no discussion of online pricing on the call. Also, we did not provide full consumer disclosure and added an unnecessary promotion to the account. You were advised that if a customer has agreed to a service agreement extension there is no need to add a month free promo on the account.

- The upgrade was presented as "a free phone at no cost to you."
- The $50.00 Mail in Rebate was never presented as a call to action for the customer.

You are to refrain from these types of actions as well as other behaviors that are inappropriate and violate our Code of Business Conduct. You are expected to adhere to the following guidelines:

- You must disclose rebate pricing to all customers.

- When a customer requests a waived rebate to match online pricing, you will need to gain supervisor approval in advance. This should only be an option if the customer qualifies to purchase online or with supervisor approval in a save situation.

- You must be clear in your sale of all products and services to our customer's ensuring they understand the product and/or service and price associated with it. This includes any Mail in Rebate requirements.

- Additional save promotions should be added only in situations where they reduce churn and not added to accounts where they are not warranted.

This memo serves as a Written Warning and is notification that failure to adhere to company policy or comply with the above expectations may lead to further corrective action, up to and including termination. This Written Warning will be in effect for six (6) months from the date the warning is issued. This Written Warning may negatively impact your merit increase and Short-term Incentive.

Patricia, I encourage you to consider the severity of this warning and sincerely hope that you will adhere to all company guidelines in the future. I am here to assist you at any time and hope that you will call on me for assistance whenever in doubt about how to utilize company systems and for interpretation of company guidelines.

By signing below you acknowledge your understanding of this warning.

_____     ___09/04/09___
Patricia Travers, Sr. Representative          Date

_____     ___9/4/09___
Phillip Trank, Manager – CMO                  Date

cc: Lori Spears, Jo-David Keith, HR

● Page 2

Verizon_Travers_00089

# eScan-IT Prep Sheet

| Box | Folder | Parent | Child |
|-----|--------|--------|-------|
| ☐ | ☐ | ■ | ☐ |

## Single Page Docs

| Parent | Child |
|--------|-------|
| ☐ | ☐ |

Misc. Instructions

L – 14

eScan-IT 3.2





455 Duke Drive
Franklin, TN 37067

## Inter-Office Memo

**Date:** March 17, 2010
**Subject:** **Final Written Warning – Code of Business Conduct**
**From:** Denise Gowler
**To:** Patricia Travers

This document serves as notification you are being placed on **Final Warning** for General Behavior/ Conduct and Business Practices in accordance with Verizon Wireless' Code of Business Conduct.

**"One of Verizon Wireless' core values is to put customers first. And in order to ensure the quality customer service we promise, the Company will continuously measure an employee's productivity and assess his/her developmental needs."**

As an employee of Verizon Wireless, you are a representative of the company and your conduct should always be professional and reflect ethical behaviors. In addition, employees must act with fundamental honesty and integrity in all Company dealings and comply with all Company policies.

On March 9, 2010 you were observed on a call where the customer was adding a line of service that required a credit card for the out of pocket cost for the phone less promotional discounts. The customer could not find their credit card and offered to call back with it. Patricia offered to see if she could take care of the rebate eliminating the need for the payment. Patricia did not seek Supervisor approval based on the circumstances but removed the rebate. The account was noted as online price match and sent to Supervisor Joe McHone for approval. In reviewing this call with Pat, she stated at the time she was customer care focused, did what she felt was in the best interest of the customer and followed her heart. She also stated that she was not trying to force a close and does not often issue credits as her numbers are good and the action was not intended to pad them. She typed online price match out of habit when waiving rebates and states it was not her intent to misrepresent the order.

On March 17th, you were observed on a call where the customer had agreed to an upgrade on his equipment. In providing the customer with the full cost of the phone to be billed to his account, he disclosed that he would not be able to pay all of the charges on the next billing. After disclosing the process for payments on time and any late fees associated, the customer stated that he would pay additional to his next payment and try to clear the equipment charges as quickly as possible. You then let him know that he qualified for a free month of service and would apply a credit for $59.99 to assist with the charges to the account for the equipment. This is not the appropriate use of the Free Month promotional offer, and it is strictly to be used as a way to assist with a close when a customer qualifies. In this situation, the customer was in full agreement to upgrade the handset with a new 2 year contractual agreement.

This Final Written Warning will be in effect for three (9) months from the date issued. This may negatively impact your merit increase and Short-term incentive. Failure to adhere to the Code of Business Conduct Guidelines may result in further disciplinary action up to and including termination of employment.

You are to refrain from these types of actions, as well as other behaviors that are inappropriate and violate our Code of Business Conduct. You are expected to adhere to the following guidelines:

Travers
**EXHIBIT NO.** 30
4/2/13  S. Delos

Verizon_Travers_00048

- You must provide Full Consumer Clear Disclosure and disclose the terms and conditions (T/C's) of our service and product offerings to our customers during certain transactions:
- When an existing customer either changes Calling Plans or adds a promotion, whether the contract is extended or not
- When processing an equipment upgrade you must use the CCD Checklist on each call and repeat it verbatim as written.
- You must provide New Every Two credit use including any changes to the next NE2 amount
- You must be clear in your sale of all products and services to our customer's ensuring they understand the product and/or service and price associated with it. This includes any Mail in Rebate requirements.

Patricia, I encourage you to consider the severity of this warning and sincerely hope that you will adhere to all company guidelines in the future. We are here to assist you at any time and hope that you will call on me or any member of management for assistance whenever in doubt about how to utilize company systems and as needed interpretation of company guidelines.

By signing below you acknowledge your understanding of this warning.

_____       03·19·2010
Patricia Travers, Sr. Representative     Date

_____       3|19|10
Denise Gowler                                     Date
cc: Lori Spears, Phillip Trank, HR

Verizon_Travers_00049

# eScan-IT Prep Sheet

| Box | Folder | Parent | Child |
|-----|--------|--------|-------|
| ☐ | ☐ | ■ | ☐ |

**Single Page Docs**

| Parent | Child |
|--------|-------|
| ☐ | ☐ |

Misc. Instructions

$L - 13$

eScan-IT 3.2

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| PATRICIA A. TRAVERS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.3:12-cv-617 |
| | ) | |
| vs. | ) | Judge Campbell |
| | ) | Magistrate Judge Bryant |
| | ) | |
| CELLCO PARTNERSHIP | ) | JURY DEMAND |
| d/b/a/ VERIZON WIRELESS | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S FIRST SET OF INTERROGATORIES, REQUESTS FOR
PRODUCTION OF DOCUMENTS AND REQUESTS FOR ADMISSIONS TO
DEFENDANT CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS
INTERROGATORIES**

Pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure Plaintiff hereby

answers and objects to Defendant Cellco Partnership d/b/a Verizon Wireless's ("Verizon Wireless")

First Set of Interrogatories, Requests for Production, and Requests for Admission. Plaintiff

specifically reserves the right to supplement her responses as discovery is ongoing.

**GENERAL OBJECTIONS**

1.      Plaintiff objects generally to Defendant's instructions, definitions, and all

Interrogatories to the extent that they purport to impose obligations and/or responsibilities

exceeding those imposed by the Federal Rules of Civil Procedure.

2.      Plaintiff objects generally to all Interrogatories and Requests to the extent that

they call for information protected by the attorney-client privilege, the work product doctrine,

which constitute Plaintiff's trial preparation materials or information containing or reflecting the

TRAVERS
27
4/2/13  S. Delac

hour. Plaintiff understands that the division that she currently works for has been sold and is being taken over by a new company, Conifer Health Solutions, effective January 1, 2012. It is her understanding that she will continue to be employed by Conifer.

9.     Describe in detail the source and amount of all monies you have received since the termination of your employment with Verizon Wireless, including, but not limited to, Social Security benefits, public assistance benefits, unemployment compensation benefits, workers' compensation benefits, disability benefits, income from employment (including self-employment), investment income, gifts, monetary awards or settlements, and loans.

**ANSWER:** Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome as to scope and that it seeks information that is irrelevant. Without waiving the foregoing, Plaintiff received unemployment benefits in the amount of $275 per week until her graduation and subsequent employment in fall 2011. Pursuant to Rule 33(d) Plaintiff will provide documents in her possession concerning her earnings in 2010, 2011, and 2012, when it becomes available.

10.     Please state whether you have been unable to work or unavailable for work at any time since your separation from Verizon Wireless, whether due to illness, injury, or any other reason, and if so, describe in detail the reason(s) you were unable or unavailable for work and the dates you were unable or unavailable for work.

**ANSWER:** Plaintiff objects to this Interrogatory on the grounds that it seeks information that is irrelevant. Without waiving the foregoing, Plaintiff had inpatient surgery on March 26, 2011 and was unable to work or go to school for approximately a week.

*- Page 6 -*

11.     Other than in this case, describe in detail whether you have ever been a party to a civil or criminal lawsuit (including both past litigation and any suit that may currently be pending), bankruptcy proceeding, grievance, charge or claim of discrimination, or administrative proceeding, including, with respect to each, the names of all parties to the proceeding; in what capacity you were a participant in the proceeding; the date the proceeding was initiated; the case number, style, and name of the court or forum in which the proceeding was or is pending; the nature of the proceeding; the resolution or outcome of the proceeding; and the location of any documents related to the proceeding.

**ANSWER**: Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome as to time and scope and that it seeks information that is irrelevant. Without waiving the foregoing, in the past ten years, No.


12.     Other than in this case, state whether you have ever complained, formally or informally, of discrimination or retaliation of any kind (such as in employment, housing, or public accommodations), and for each such complaint, describe in detail the substance of the complaint, to whom you complained, and what was done in response to your complaint.

**ANSWER**: Plaintiff objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome as to time and scope and that it seeks information that is irrelevant. Without waiving the foregoing, in the past ten years, No.


13.     For the period between January 1, 2008 to the present, identify by name, title, address, and telephone number each medical professional, counselor, mental health provider, or