IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PATRICIA A. TRAVERS )
)
v. ) NO. 3-12-0617
) JUDGE CAMPBELL
CELLCO PARTNERSHIP )
d/b/a VERIZON WIRELESS )

MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 20). For the reasons stated herein, the Motion is GRANTED, and Plaintiff's action is DISMISSED.

FACTS

Plaintiff Travers alleges unlawful employment practices against her former employer, Defendant Cellco Partnership d/b/a/ Verizon Wireless. Plaintiff asserts claims under the Family and Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA").[1]

Plaintiff was employed by Defendant as a senior customer service representative from May of 2008 until June of 2010. She claims that, in November of 2009, she notified Defendant that she was suffering from migraine headaches and was forced to take intermittent FMLA leave. In addition, Plaintiff states that around March of 2010, she began receiving treatment for a heart condition and took approved FMLA leave[2] from approximately April 14 - May 26, 2010 and again from June 2 - June 18, 2010.

---

[1] Plaintiff has withdrawn a claim for wrongful termination under Tennessee common law and the Tennessee Public Protection Act. Docket No. 34, n.1.

[2] FMLA requests for Defendant's employees were handled by a third-party administrator, MetLife.

Plaintiff contends that when she arrived back at work on June 21, 2010, after her FMLA leave, Defendant informed her that there was a problem with a particular telephone call she had taken, specifically the fact that she did not get supervisor approval for a rebate, and that her services were no longer needed. Plaintiff claims that the reason given for her firing was a pretext for FMLA discrimination and retaliation and disability discrimination.

Defendant argues that Plaintiff was discharged for repeatedly engaging in behavior which violated Defendant's Code of Business Conduct, including proactively waiving mail-in rebates. Defendant contends that Plaintiff was warned and disciplined for these acts before she took any FMLA leave and that the timing of her discharge was simply because she was on leave when Defendant learned of her final misconduct. Defendant denies discriminating or retaliating against Plaintiff and seeks summary judgment on all Plaintiff's claims.

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence,

2

judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

## FAMILY AND MEDICAL LEAVE ACT

The FMLA recognizes two types of claims: (1) interference claims, in which employers allegedly burden or outright deny substantive statutory rights to which their employees are entitled; and (2) retaliation claims, in which employers allegedly initiate adverse employment actions against employees for exercising their FMLA right to take leave. 29 U.S.C. § 2615(a)(1) and (2); *Romans v. Michigan Dept. of Human Services,* 668 F.3d 826, 840 (6th Cir. 2012). Here, Plaintiff has asserted both interference and retaliation claims.

<u>Interference</u>

To establish that Defendant interfered with her FMLA rights, Plaintiff must show that (1) she was an eligible employee; (2) Defendant was an employer subject to the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave Defendant notice of her intention to take FMLA leave; and (5) Defendant denied her FMLA benefits to which she was entitled. *Romans*, 668 F.3d at 840.

Plaintiff has admitted that she received all the FMLA leave to which she was entitled. Docket No. 27-7, p. 3, ¶ 10. She argues, however, that Defendant did not provide her information concerning the FMLA in a timely fashion. Plaintiff testified that Defendant had an FMLA policy that she believed was "kind of comprised together" with its short-term disability benefits (Docket No. 20-1, pp. 82-83). She also testified that during the last week of her six-week training, she was told about

3

Defendant's policies and benefits and that Defendant had a website for employees to access their benefit information online. *Id*., pp. 83-84. Plaintiff also stated that she would go to Minyarn [a performance supervisor] if she had questions about the FMLA. *Id*., p. 84.

The FMLA is not a strict-liability statute, so Plaintiff must establish that Defendant's alleged violation caused her harm. *Romans*, 668 F.3d at 842; *Ragsdale v. Wolverine World Wide, Inc.*, 122 S.Ct. 1155, 1161 (2002). As noted above, Plaintiff has admitted she received all the FMLA leave to which she was entitled. In other words, Defendant did not deny her FMLA benefits to which she was entitled. Therefore, the Court finds that Plaintiff has not demonstrated a genuine issue of material fact as to her FMLA interference claim, and that claim is dismissed.

Retaliation

To show FMLA retaliation, Plaintiff must show: (1) she engaged in an activity protected by the FMLA; (2) Defendant took an adverse employment action against her: and (3) there was a causal connection between the protected activity and the adverse employment action. *Romans*, 668 F.3d at 842. The third element is disputed here.

Plaintiff claims a causal connection between her FMLA leave and her firing based upon, among other things, certain comments of Kimberly Gibson-Harris, a manager for Defendant, at the time of Plaintiff's termination. Plaintiff asserts that Gibson-Harris said "You've missed a lot of work" and "I'm sorry for your health issues, but we need you here." Plaintiff also claims that temporal proximity can establish the causation element, since she was fired right after she returned from FMLA leave. The Sixth Circuit has held that proximity in time between the protected activity and the adverse employment action may constitute evidence of a causal connection. *Hornberger v. Tennessee*, 2013 WL 652256 at * 4 (M.D. Tenn. Feb. 21, 2013) (citing *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007)).

4

Ms. Gibson-Harris has filed a Declaration in which she denies saying anything about Plaintiff's attendance, health or leave during the termination meeting. Gibson-Harris also states that she had no part in the decision to fire Plaintiff; that is, she did not make the recommendation or the decision to discharge Plaintiff. Docket No. 23. Defendant avers that Plaintiff went on leave *after* being warned about the violations of the Code of Business Conduct and after engaging in the same behavior (proactively waiving a mail-in rebate). Defendant argues that it could not inform her of its termination decision until she returned. Given the dispute about the Gibson-Harris remarks, however, the Court finds that Plaintiff has created a genuine issue of material fact, for purposes of a *prima facie* case, as to the causation element.

Assuming that Plaintiff has met her burden to demonstrate a *prima facie* case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its action. *Romans*, 668 F.3d at 842. Defendant has articulated a legitimate, non-discriminatory reason for its decision - Plaintiff's repeated violations of the Code of Business Conduct. Repeated violations of a company's business policies constitute a lawful, non-retaliatory reason for termination. Therefore, the burden shifts to Plaintiff to show that the articulated reason is in reality a pretext to mask retaliation. *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 315 (6th Cir. 2001).

A reason cannot be pretext for retaliation unless it is shown both that the reason was false and that retaliation was the real reason. *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012). The law in this Circuit is clear that temporal proximity cannot be the sole basis for finding pretext. *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012). Plaintiff must show more than a dispute over the facts upon which the discharge was based. *Seeger*, 681 F.3d at 285. She may show pretext by demonstrating that Defendant's reason (1) has no basis in fact; (2) did not actually motivate the action; or (3) was insufficient to warrant the action. *Id*.

5

Plaintiff points to a "South Area Termination Request Form" dated June 3, 2010, which was produced by Defendant in discovery, which includes the following sentences: "The decision to terminate Patricia's employment is supported by local HR. Specifically, Patricia violated the attendance policy." Docket No. 53-1. This document is one page and states at the top "For HR Executive Director Use Only." *Id*.

The person who sent this form via e-mail (Ms. Haynes) and the person to whom it was sent (Ms. Wright) have both testified that this document was one of two documents attached to the e-mail. Docket Nos. 56-1 and 56-2. Ms. Haynes has also testified that she created the June 3, 2010 document and that her statement about attendance was a mistake. Docket No. 56-1. Moreover, both Ms. Haynes and Ms. Wright testified that they do not recommend or make termination decisions.

The second document which was attached to the e-mail, also entitled "South Area Termination Request Form," was filed with the Court by Plaintiff at Docket No. 29-3. This second document is dated May 27, 2010, is three pages long and includes much more information and much more detail concerning Plaintiff's firing. It states: "Reason for Termination: Integrity." Docket No. 29-3, p. 1. The May 27th document includes a detailed chronology of corrective action taken against Plaintiff for her COBC (Code of Business Conduct) violations. *Id.,* pp. 1-3. It was authored by Ms. Miller, the Human Resources Manager for Defendant. *Id*.

To the extent that the June 3, 2010 document appears to state that violation of the attendance policy was the reason for her termination, Plaintiff may have created a factual issue. The inquiry does not end here, however. The factual issue must be material.

Where the employer can demonstrate an honest belief in its proffered reason, the inference of pretext is not warranted. *Seeger*, 681 F.3d at 285. The Sixth Circuit has adopted the "honest belief" rule. Under this rule, an employer's proffered reason is considered honestly held where the employer

6

Case 3:12-cv-00617 Document 60 Filed 11/14/13 Page 6 of 10 PageID #: 1385

can establish it reasonably relied on particularized facts that were before it at the time the decision was made. *Id.* The key inquiry is whether the employer made a reasonably informed and considered decision before taking the adverse employment action. *Id.* If the employer held an honest belief in its proffered reason, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial or baseless. *Id.*[3]

Here, Defendant has shown that it based its decision on the particularized facts that were before it at the time. Defendant has demonstrated that Plaintiff received verbal warnings and written warnings, before and after she began her FMLA leave, concerning her failure to comply with Defendant's business policies. Defendant has also shown that, at the time of Plaintiff's firing, the decision-makers honestly believed that Plaintiff had continued to waive mail-in rebates after being repeatedly disciplined for it. The person who authored the June 3, 2010 form to which Plaintiff points was not a decision-maker. Her characterization of the reason for Plaintiff's firing is not material to this issue.[4]

Plaintiff argues with the facts underlying her firing, but the law does not require that the employer's decision-making be optimal or leave no stone unturned. *Seeger*, 681 F.3d at 285. The Court finds that Defendant made a reasonably informed and considered decision before terminating

---

[3] The Sixth Circuit has explained that it is not in the interest of justice for the courts to wade into an employer's decisionmaking process. *Donald,* 667 F.3d at 763.

[4] Plaintiff also argues that some handwritten notes produced by Defendant in discovery support her claim that the recording of the last call (for which she was terminated) was inconclusive. These notes (Docket No. 53-2) are vague, to say the least, and to the extent they are decipherable, they coincide with the typed Termination Request Form authored by Ms. Miller concerning Plaintiff's Response to her termination. Docket No. 29-3. Considered with the other evidence before the Court, these notes are insufficient to support a claim of pretext.

7

Plaintiff's employment.[5] The Court also finds that Plaintiff has failed to show that Defendant's reason was false and was really a pretext for retaliation. Therefore, Plaintiff's FMLA retaliation claim is dismissed.

## AMERICANS WITH DISABILITIES ACT[6]

Plaintiff alleges that she is a qualified individual with a disability, as that term is used in the ADA and/or she was perceived by Defendant as an individual with a disability. She claims that she was discriminated against by Defendant because of her disability and/or perceived disability.

In order to show that she is "disabled," as defined in the ADA, Plaintiff must show that (1) she has a physical or mental impairment that substantially limits one or more major life activities, or (2) she has a record of such impairment, or (3) Defendant regarded her as having such an impairment. 42 U.S.C. § 12102(1).

To make a successful ADA claim, Plaintiff must show that Defendant took an adverse action against her on the basis of disability. 42 U.S.C. § 12112(a); *Bailey v. Real Time Staffing Services, Inc.*, 2013 WL 5811647 at * 3 (6th Cir. Oct. 29, 2013). The Sixth Circuit has held that the ADA bars discrimination "because of" an employee's disability, meaning that it prohibits discrimination that is a "but for" cause of the employer's adverse decision. *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 321 (6th Cir. 2012).

---

[5] Although temporal proximity is a factor to be considered, the Court finds that Plaintiff's first day back at work was the first time Defendant's decision could be relayed to her. *See Donald*, 667 F.3d at 763.

[6] In amendments to the ADA in 2008, Congress stated that, as it relates to conduct occurring after January 1, 2009, the meaning of "disability" shall be construed in favor of broad coverage. 42 U.S.C. §12102(4)(A). In addition, the term "substantially limits" shall be construed broadly in favor of expansive coverage. 29 C.F.R. § 1630.2(j)(1)(i). Nonetheless, not every impairment will constitute a disability within the meaning of the ADA. 29 C.F.R. § 1630.2(j)(1)(ii).

8

Plaintiff claims that Defendant "regarded her" as disabled [7], the third way a person may meet the ADA definition of "disability." Under the 2008 Amendments to the ADA,[8] an individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that she has been subjected to an action prohibited under the ADA because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity. 42 U.S.C. § 12102(3).[9]

Establishing that an individual is "regarded as having such an impairment" does not, by itself, establish liability. Liability is established only when an individual proves that the employer discriminated on the basis of disability. 29 C.F.R. § 1630.2(l)(3).

Plaintiff asserts that Defendant regarded her as disabled because Defendant placed her name on what it called a "disability dashboard" when she took FMLA leave. When asked in deposition whether she thought Defendant perceived her as having a disability, Plaintiff replied: "I have no idea how they perceived me, ma'm." Docket No. 38-1, p. 196.

---

[7] Although Plaintiff's Response (Docket No. 34) argues that "there is ample evidence" that Plaintiff was disabled as defined by the ADA, Plaintiff's assertion is based upon her own conclusory statements. Plaintiff must offer some admissible evidence that she is "disabled" and some admissible evidence as to the extent of her limitations.

[8] Because the alleged conduct at issue herein came after 2008, the Court must apply these Amendments.

[9] Through the 2008 Amendments, Congress expressly rejected the idea that to be "regarded as" having a disability, the employer must perceive the individual to be substantially limited in a major life activity. *Lovell v. Champion Car Wash, LLC*, __ F.Supp. 2d __, 2013 WL 4718992 at * 5 (M.D. Tenn. Sept. 3, 2013); *Bailey v. Real Time Staffing Services, Inc.*, 2013 WL 5811647 at * 2 (6th Cir. Oct. 29, 2013). Nonetheless, some Courts have failed to recognize this change in the "regarded as" requirements. *See, e.g., Gecewicz v. Henry Ford Macomb Hospital Corp.,* 683 F.3d 316, 321 (6th Cir. 2012); *Rodriguez v. Sistema San Juan Capestrano*, 2013 WL 1489457 at * 4 (D. Puerto Rico April 11, 2013); *Torres v. Weigel Broadcasting Co.*, 852 F.Supp.2d 1106, 1112 (E.D. Wis. 2012).

9

Plaintiff has not shown that Defendant regarded her as unable to do her job or as being substantially limited in performing the tasks of a senior customer service representative. Defendant has articulated a legitimate, non-discriminatory reason for firing Plaintiff - that she failed to follow the company's Code of Business Conduct despite being warned and disciplined about such actions. Plaintiff has not argued that her failure to follow the Code was because of a disability. She has not shown that Defendant regarded her as disabled or that anything about an alleged disability led to her firing. And, for the reasons set forth above, she has not shown that Defendant's reason for firing her was pretext for discrimination.

Accordingly, for these reasons, Plaintiff's ADA claim is dismissed.

## CONCLUSION

For all these reasons, Defendant's Motion for Summary Judgment (Docket No. 20) is GRANTED, and Plaintiff's action is DISMISSED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE